UNITED STATES DISTRICT COURT
DISTRICT OF MASSACUSETTS

CONVERSE INC.,

Plaintiff,

vs.

ALON INTERNATIONAL S.A.,

Defendant.

DOCKET NO.: 04-12591-PBS

**REPLY MEMORANDUM IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND/OR ANTI-SUIT INJUNCTION**

## I. INTRODUCTION

Converse[1] moved for an ex parte temporary restraining order seeking to restrain Alon from filing suit in foreign jurisdictions such as Brazil and/or Argentina. In so doing, Converse sought to avoid a multiplicity of vexatious litigation and to compel Alon to submit the entire dispute between the parties to arbitration, as provided for in the Agreement. The Court denied Converse's Application for Ex Parte Temporary Restraining Order ("TRO Application") and issued an Order on December 22, 2004 setting the matter down for a hearing on January 6, 2005. Since the time of the Court's Order, Alon has, in fact, undertaken the very course of

[1] The abbreviations set forth in Plaintiff's Application for Ex Parte Temporary Restraining Order dated December 20, 2004, i.e. "Converse," "Alon," "Agreement," "Coopershoes," etc. will be used herein.



/32913/2/65577v1
01/06/05-SPT/

action that Converse sought to restrain. Alon has filed suit against Converse in Argentina and Brazil and obtained ex parte injunctions compelling Converse to continue to do business with Alon. And, it is crystal clear from the orders given by the Argentine and Brazilian courts that Alon submitted matters for the consideration of those courts that are squarely within the arbitration clause of the Agreement. The net result of the foreign orders is that Converse is prevented from doing business with its new licensee, Coopershoes; Converse is being coerced into continuing an unsatisfactory business relationship with Alon; and Converse is being subjected to a multiplicity of improper proceedings: an arbitration demand in an improper forum, as well as having to defending lawsuits in Argentina and Brazil.

For the reasons set forth herein, Converse is entitled to injunctive relief requiring Alon to immediately dismiss the Argentine and Brazilian litigation under penalty of contempt and to submit the entirety of the dispute between the parties to arbitration in a proper forum. In support hereof, Converse attaches the Affidavit of Adriano Martins, true and accurate copies of relevant documents including translations, and proposed pleadings of dismissal of the Brazilian and Argentine actions to be signed by Alon.

## II. BACKGROUND AND PROCEDURAL HISTORY

As discussed in the TRO Application, Converse is a worldwide manufacturer, distributor, and licensor of athletic and leisure footwear and accessories. Converse is the exclusive owner of numerous trademarks including "Converse" and "All Star." (TRO Application, Laganas Aff., ¶ 2.) Converse entered into the Agreement with Alon on



/32913/2/65577v1
01/06/05-SPT/

September 1, 2001, which expired on its own terms on December 31, 2004. Alon represented that it was in the business of developing and marketing footwear in places such as Latin America. (TRO Application, Laganas Aff., ¶¶ 3-4.) The Agreement provides that Alon is permitted to use Converse trademarks for a limited period of time, subject to numerous conditions, including the payment of substantial royalties. A crucial aspect of the Agreement is the provision forbidding sublicensing and assignment of Alon's rights thereunder. (TRO Application, Laganas Aff., ¶ 5.) Another crucial aspect of the Agreement is the provision requiring arbitration in Boston, Massachusetts.[2]

As described in Paragraph 7 of the Laganas Affidavit and Exhibits cited therein attached to the TRO Application, Alon violated the prohibition against sublicensing and assignment by entering into three related contracts with Coopershoes Cooperativa De Calcados E Componentes Joanetense LTDA ("Coopershoes"). Furthermore, in direct violation of the

---

[2] The arbitration clause of the Agreement states, *inter alia*,

> [t]he parties shall attempt to settle all controversies and disputes arising hereunder amicably, promptly and fairly. Any controversy or claim arising out of or relating directly or indirectly to this Agreement, including but not limited to transactions pursuant thereto, rights and obligations of the parties thereunder, the capacity or authority of the parties thereto, the performance or breach thereof, and the termination, renewal or non-renewal thereof, not capable of satisfactory amicable resolution within thirty (30) days after written notice sent by one party to the other setting forth with specificity any such controversy or claim, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association. The award shall be made by a single arbitrator, selected pursuant to the rules of the American Arbitration Association. The parties expressly agree that arbitration shall be held in the offices of the American Arbitration Association in Boston, Massachusetts, U.S.A., or such other locations within the Commonwealth of Massachusetts as the American Arbitration Association may direct....

(TRO Application, Laganas Aff., Exhibit A, ¶ 33, emphasis added.)

Agreement, Alon granted Coopershoes the right to market and distribute products bearing Converse trademarks ("vulcanized All Star footwear") within the Federal Republic of Brazil. (TRO Application, Laganas Aff., ¶ 8.) The arrangement between Alon and Coopershoes was such that Coopershoes in essence did the "heavy lifting" in terms of marketing and advertising products bearing Converse trademarks. (TRO Application, Laganas Aff., ¶ 9.) The advertising and marketing functions undertaken by Coopershoes are Alon's responsibility under the terms of the Agreement and cannot be delegated or assigned.

During the course of the relationship, Alon concealed from Converse through a variety of means the nature of the illegal and improper sublicensing agreements with Coopershoes. However, once Converse became aware of the true nature of the relationship between Alon and Coopershoes, it notified the Defendant of its breach of the Agreement. (TRO Application, Laganas Aff., ¶ 10.) Converse also notified Alon of its intention not to renew the Agreement. Converse further entered into negotiations with Coopershoes for the purpose of making Coopershoes a direct Converse licensee. (TRO Application, Laganas Aff., ¶ 10.) In fact, on December 17, 2004, Converse contracted with Coopershoes and as of January 1, 2005, Coopershoes is the new Converse licensee in Brazil and Argentina. (TRO Application, Laganas Aff., ¶¶ 18-19.) Simply put, Converse has terminated its business relationship with Alon.

Once Alon became aware of Converse's intention not to renew the Agreement, it countered with threats of litigation in Brazil and Argentina. Alon also filed a demand for

arbitration on December 16, 2004. (Opposition Papers, p. 7.) Since the filing of the TRO Application, the vexatious litigation that Alon threatened has, of course, come to fruition. As admitted in Defendant Alon International S.A.'s Memorandum of Law in Opposition to Plaintiff Converse Inc.'s Application for an Ex Parte Temporary Restraining Order (hereinafter "Opposition Papers"), Alon obtained ex parte injunctions in Brazil and Argentina which clearly touch on matters within the scope of the Agreement's arbitration clause. (Opposition Papers, Exhibits 3-4.)

Alon's translation of the Brazilian order states, *inter alia*,

> [i]n a request for reconsideration, the Plaintiffs attached documents that demonstrate there were abundant negotiations between the contracting parties with regard to the conditions for renewal of the Agreement, all indicating that there was no consensus on said conditions. This is important in as much as it may indicate that the Plaintiffs, in reality, were lead to feel a sense of security where there was none.

(Opposition Papers, Exhibit 3, ¶ 1.) In other words, Alon presented evidence to the Brazilian court on an ex parte basis in support of its claims that Converse somehow promised that it would renew the Agreement with Alon. Such evidence goes to the merits of the dispute and necessarily falls within the arbitration clause of the Agreement, which states that "<u>any</u> controversy or claim arising out of or <u>relating directly or indirectly to this Agreement,</u> including ... the performance or breach thereof, <u>and the termination, renewal or non-renewal thereof</u>, not capable of satisfactory amicable resolution within thirty (30) days after written notice sent by one party to the other setting forth with specificity any such controversy or

claim, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association." In fact, the Brazilian order even references the arbitration clause set forth in Paragraph 33 of the Agreement. "Plaintiffs, when asserting that the institution of an arbitration process does not waive their obligations, would like the interpretation of Clause 33 to also affect the Defendant so that Defendant will also remain bound to the obligations of the business during the arbitration proceeding." (Opposition Papers, Exhibit 3, Translation, ¶ 2.) In other words, Alon obtained an order in Brazil preventing Converse from terminating the Agreement even though disputes concerning "termination, renewal or non-renewal" are clearly subject to arbitration.

The order from the Argentine court is similar. Once again, Alon attempted to try the dispute between the parties on an ex parte basis. For example, that portion of the Argentine court's order captioned "Legal Admissibility" states,

> [o]n the one hand, [the plaintiffs stress the *automatic renewal* of the Licensing Contract as agreed under clause 2 ... as long as the sales target and minimum royalties have been surpassed (which they affirm have been amply surpassed); the opening of a licensee in the Republic of Argentina (*Alon Argentina SRL*); the alleged notice of their intent to renew the contract; the alleged silence maintained by Converse Inc.; and what they consider as insufficient evidence of the breaches alleged by the licensor who would bear the burden of proof....

(Opposition Papers, Exhibit 4, Translation p.1.) The Argentine order also quotes the arbitration clause of the Agreement. (Opposition Papers, Exhibit 4, Translation, p.2.) In granting the injunctive relief sought by Alon, the Argentine court stated that "[t]his decision is furthermore based on the fact that we cannot perceive in the case at hand that the petition for

arbitration has been accompanied by an injunctive measure that would adhere to the claim herein alleged." (Opposition Papers, Exhibit 4, Translation, p.2.) The Argentine court's decision is surprising given that: (1) Alon itself filed the demand for arbitration and thus had complete control over the relief sought in the arbitration demand, and, (2) both the International and Commercial Rules of the American Arbitration Association provide for injunctive relief in the context of arbitration. See AAA Int'l Dispute Resolution Procedures, July 1, 2003, Article 21(1) (emphasis added) ("At the request of any party, the tribunal may take whatever interim measure it deems necessary, including injunctive relief and measures for the protection and conservation of property."); AAA Commercial Arbitration Rules and Mediation Procedures, July 1, 2003, R-34(a) ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief....")

In light of the foregoing, Alon's assertion in its Opposition Papers that the Court should defer to the Argentine and Brazilian decisions because they "preserve the status quo" is badly misplaced. Alon could have sought injunctive relief as part of its arbitration demand. Alon filed the arbitration demand on December 16, 2004, well prior to the injunctions issued by the Brazilian and Argentine courts. It is readily apparent from the decisions of the Argentine and Brazilian courts that Alon represented to those courts that injunctive relief was not available in the context of arbitration. In fact, Alon never sought such relief in the arbitration demand, even though it had the ability to do so. Thus, any differences between Alon's claims in the arbitration demand and Alon's claims in the vexatious foreign lawsuits are attributable to Alon



/32913/2/65577v1
01/06/05-SPT/

itself.

In its TRO Application, Converse indicated to the Court that Alon would file suit in Brazil and/or Argentina despite the filing of the demand for arbitration. (TRO Application, pp.8-9.) These events have since taken place. The net effect of the Argentine and Brazilian injunction orders is to force Converse to continue doing business with Alon even though Converse has terminated the relationship. Notwithstanding Alon's characterizations in its Opposition Papers, Converse has been subjected to litigation and injunctive relief orders in foreign countries, while at the same time having to participate in arbitration.

It is noteworthy that in granting ex parte injunctive relief to Alon, the Argentine and Brazilian courts made no attempt whatsoever to apply the law of the Commonwealth of Massachusetts to Alon's claims for injunctive relief.[3] (The Brazilian order, for example is based in part on "the social interest of the Agreement currently expressed in the Brazilian Civil Code....") (Opposition Papers, Translation, Exhibit 4, ¶ 4.) Not only does Paragraph 33 of the Agreement require all disputes relating directly or indirectly to the Agreement to be submitted to arbitration (including claims for injunctive relief), it requires the application of Massachusetts law.

Of course, in Massachusetts, to obtain a preliminary injunction, an analysis of the moving party's claim of injury and the likelihood of success on the merits must be undertaken.

---

[3] Alon filed lengthy briefs in the Argentine and Brazilian litigation. Converse was never served with copies of these papers prior to the issuance of the foreign orders. Converse is now in possession of some of Alon's filings but has not had the opportunity to have translations made. Converse respectfully requests leave of the Court to submit translations of Alon's filings in Argentina and Brazil when they are available.

See, e.g., GTE Products Corporation v. Stewart, 610 N.E.2d 892, 894 (Ma. 1993). It is also necessary to determine whether there is a risk of irreparable harm to the moving party and balance this against the harm that granting the injunction would cause the opposing party. Id. In the absence of irreparable harm, a request for an injunction must be denied. See, e.g., Packaging Indus. Group, Inc. v. Cheney, 405 N.E.2d 106, 114 (Ma. 1980). If a moving party has an adequate remedy at law, there is no basis for a claim of irreparable harm and hence no basis for the issuance of an injunction. Id. Finally, Massachusetts does not permit the issuance of an injunction (as opposed to a TRO) without notice and an opportunity to be heard. See Mass. R. Civ. P. 65(b).

Had Alon sought injunctive relief in a proper forum—arbitration—it would face an uphill battle in obtaining such relief given that the arbitral authority would apply Massachusetts law. Even assuming that Alon's view of the world is correct and Converse improperly terminated the Agreement, it clearly has an adequate remedy at law—money damages. The existence of an adequate legal remedy precludes injunctive relief under Massachusetts law, a fact that Alon is undoubtedly well aware of. Simply put, Alon has purposefully and deliberately split its injunctive relief claims from the remainder of the claims that it asserted in its demand for arbitration and has gone "forum shopping" to find Argentine and Brazilian courts to impose orders that Alon knows it could not obtain in the arbitration proceeding. Even if such orders are theoretically possible, the arbitral authority certainly would not issue the injunctive relief on an ex parte basis.

Alon has also threatened Converse's new licensee, Coopershoes, and insists that Coopershoes must enter into another impermissible sublicensing agreement with Alon. (Martins Aff., ¶¶ 4-5) Given the foregoing, Converse respectfully requests that the Court issue an anti-suit injunction requiring Alon to dismiss the Argentine and Brazilian litigation and to submit the entire dispute between the parties to arbitration in a proper forum.[4]

## III. LAW & ARGUMENT

### A. The Legal Standard For Granting An Anti-Suit Injunction In A Case Involving A Broad-Form Arbitration Clause[5]

This case involves a dispute between two sophisticated commercial entities who agreed

---

[4] Converse initially sought a temporary restraining order in accordance with Federal Rule of Civil Procedure 65 on an ex parte basis. Rule 65(b) states that proof of irreparable harm, loss, or damage is required to obtain an ex parte temporary restraining order. Since Alon has now filed the vexatious litigation that Converse anticipated when it filed the TRO Application, the injunctive relief that Converse seeks can be characterized as an anti-suit injunction.

[5] At the outset, the Court should recognize that Alon is attempting a "slight-of-hand" in its Opposition Papers. On page 12 of its Opposition Papers and continuing thereafter, Alon suggests that the Court should presume that an anti-suit injunction is not warranted and apply "a totality of the circumstances test" to decide whether the presumption against the issuance of an anti-suit injunction is overcome. This argument is misplaced since the cases that Alon relies upon do not involve arbitration agreements, much less broad-form arbitration clauses like the one at issue in this matter.

Instead, the cases on which Along relies involve multiple litigation in the absence of agreements to arbitrate. For example, in Quaak v. Klynveld Peat Marwick Goerdeler Bedrufsrevisoren, 361 F.3d 11, 14-16 (1st Cir. 2004), the First Circuit had to decide whether the district court properly issued an anti-suit injunction to enjoin an auditing firm from pursuing Belgian litigation. The auditing firm was named as a defendant in securities fraud litigation in the United States. In response to an order compelling it to produce auditing records, the defendant brought suit in Belgium requesting that fines be imposed on persons attempting to proceed with discovery procedures in the United States litigation. Id. The First Circuit noted that in cases involving parallel litigation it was adopting a rebuttable presumption against issuing antisuit injunctions. Id. at 18. Likewise, Goldhammer v. Dunkin Donuts, Inc., 59 F.Supp.2d 248, 252-53 (D. Mass. 1999) is wholly inapplicable because it involved a decision on a motion to dismiss or stay an action pending in the District of Massachusetts due to the existence of a prior pending action in England between the parties. Alon's attempt to invoke the "totality of the circumstances" test of Quaak is especially curious given that Alon concedes that there are no parallel actions at issue. (Opposition Papers, p.3, n.4.)



/32913/2/65577v1
01/06/05-SPT/

to arbitrate all disputes arising under a contract between them. Despite the terms of the Agreement, Alon has decided that it may pick and choose the claims that are subject to arbitration. It has done so by withholding its injunctive relief claims from its arbitration demand and commencing litigation in Argentina and Brazil to obtain injunctive relief. Now, in its Opposition Papers, Alon decries the very quagmire that it has created and asserts that the Argentine and Brazilian orders are entitled to considerable deference and that principles of comity dictate against an anti-suit injunction.

**1. Where arbitration applies the court has a duty to order it.**

The Court should not apply the analysis suggested by Alon. As noted by the First Circuit, "so long as the parties are bound to arbitrate and the district court has personal jurisdiction over them, the court is under an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration and thereby enforce the New York Convention as provided in chapter 2 of the FAA...." Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003). See also Peerless Pressed Metal Corp. v. International Union of Electrical, Radio and Machine Workers, 451 F. 2d 19, 20 (1st Cir. 1971) ("A court should not refuse to order arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"). As the Second Circuit explained,

> [f]ederal policy strongly favors the enforcement of arbitration agreements. Therefore, the existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in



/32913/2/65577v1
01/06/05-SPT/

favor of coverage.

Paramedics Electromedicina Comercial, LTDA v. GE Medical Systems Information Technologies, Inc., 369 F.3d 645, 654 (2d Cir. 2004) (citations and punctuation omitted).

**2. The Quaak rule not involving an abitration clause does not apply here.**

Notably, the Paramedics decision relies upon China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33 (2d Cir. 1987) (delimiting power of federal courts to issue anti-suit injunctions but cautioning that such injunctions should be used sparingly and with restraint). The First Circuit also relied upon China Trade in the Quaak decision. See 361 F.3d at 18. While Paramedics and Quaak share a common heritage, there is no reason to believe that the First Circuit could apply the Quaak presumption against anti-suit injunctions in this case. First, the Quaak case did not involve any arbitration clause and did not purport to state a rule where an arbtitration clause applies. Second, the rule applied in the First Circuit and nationally is that arbitration is to be compelled as long as the dispute is within the terms of the arbitration clause. Peerless Pressed, at 20, citing, United Steelworkers of America v. Warrier & Gulf Navigation Co., 363 U.S. 574, 582-583 (1960).

Rather than starting with a presumption against an anti-suit injunctions, the correct analysis begins with a presumption in favor of arbitrability. The analysis then proceeds to the threshold questions of whether the parties are the same in both matters and whether resolution of the case before the enjoining court is dispositive of the action to be enjoined. Paramedics,

369 F.3d at 652. "Once past this threshold, courts are directed to consider a number of additional factors, including whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum." Id. See also China Trade, 837 F.2d at 37 (anti-suit injunction may be appropriate when a party seeks to evade important policies of the forum by litigating before a foreign court.

**3. The restrictions of the arbitration clause are not overcome by the rules of the American Arbitration Association.**

On pages 17-18 of its Opposition Papers, Alon claims that under the rules of the American Arbitration Association, it is entitled to injunctive relief from any court with jurisdiction over the dispute prior to the appointment of the arbitrator. This argument ignores four important points: (1) both the International and Commercial Rules for arbitration permit the arbitral authority to issue injunctive relief; (2) the language allowing suits for injunctive relief in the American Arbitration Association rules is directory and not mandatory; (3) the Agreement does not permit suits for injunctive relief related to the Agreement because such claims must be arbitrated; and (4) Alon never even attempted to obtain injunctive relief in the context of the arbitration proceeding.

The arguments that Alon attempts parallel those in Ever-Gotesco Resources and Holdings, Inc. v. Pricesmart, Inc., 192 F.Supp.2d 1040 (S.D. Cal. 2002). In Ever-Gostesco, the plaintiff sought to avoid a broad-form arbitration clause by seeking injunctive relief pending arbitration. Id. at 1042. Like the applicable rules in this case, the arbitration rules in

Ever-Gotesco permitted the parties to seek injunctive relief. Id. at 1043. In deciding whether the injunctive relief claims fell within the scope of the arbitration clause, the court applied the familiar standard that "factual allegations need only touch matters covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." Id. (citations omitted). The court rejected the plaintiff's attempt to label the injunctive relief sought as outside the arbitration agreement and held that the plaintiff's claims fell within the scope of the arbitration clause. Id. The court also rejected the plaintiff's argument that because no arbitration tribunal had been constituted, no body had the power to provide provisional relief. Id. at 1044. In rejecting the plaintiff's arguments the court noted,

> [i]t is one thing to apply to a court to preserve the status quo until a duly constituted arbitrator can act; but it is quite another thing to consciously avoid taking steps that would give the arbitrator the ability to act and, instead to apply to another court for relief. Given the modern preference for international arbitration, such bootstraps are no longer fashionable.

Id. (citing Al Nawasi Trading Co. v. BP Amoco Corp., 191 F.R.D. 57, 59 (S.D.N.Y. 2000)). Finally, the court noted that the plaintiff could seek injunctive relief in the context of the arbitration proceeding under the applicable rules. See also Al Nawasi, 191 F.R.D. at 58 (tactical evasion of arbitration proceeding disfavored).

Here, Alon is clearly attempting similar "bootstrap" claims and the Court should reject its arguments. While purporting to invoke the mechanism of arbitration, Alon has also engaged in a tactical evasion of arbitration proceeding by submitting to foreign courts certain aspects of the dispute between the parties that are subject to arbitration.

**B. An Anti-Suit Injunction Is Warranted On The Facts Of This Case.**

As an initial matter, Alon concedes that the parties before the Argentine and Brazilian courts are the same as the parties before the arbitral forum and before this Court. (Opposition Papers, p. 13.) Alon, however, attempts to argue that the claims in the Argentine and Brazilian actions "do not involve the same issues as those before the Arbitral Tribunal." (Opposition Papers, p. 14.)

It is hard to conceive of a more disengenuous argument. Alon and Alon alone framed the issues in the foreign litigation and in the demand for arbitration. Alon determined the relief that it sought in its arbitration demand (no claim for injunctive relief was made) and Alon's filings in Argentina and Brazil were ex parte. Alon essentially invites the Court to allow Alon to avoid arbitration of its claims for injunctive relief because it has purposefully chosen to split its claims. Alon relies upon Quaak for the proposition that "unless the parallel suits involve the same parties and issues, courts ordinarily go no further and refuse the issuance of an international anti-suit injunction." (Opposition Papers, p.15.) If that were the applicable standard, a party seeking to enforce an arbitration clause would be virtually precluded from obtaining an anti-suit injunction. A party seeking to avoid arbitration and maintain litigation could avoid an anti-suit injunction simply by requesting alternate relief.

In the context of broad-form arbitration clauses, the threshold question is not whether the claims in arbitration and in litigation are the same because applying such a rule would allow a party to avoid arbitration with impunity. As discussed in § III.A. supra, the initial

analysis for an anti-suit injunction in the context of a broad-form arbitration clause presumes arbitrability and focuses on whether the parties are the same and resolution before the enjoining court is dispositive of the action to be enjoined. See Paramedics, 369 F.3d at 652. These factors are met in this case.

The existence of a broad-form agreement to arbitrate creates a presumption of arbitrability "which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Peerless Pressed, 369 F.3d at 653 (citations and punctuation omitted). Also, where a broad-form agreement applies "only an express exlcusion of a particular grievance from arbitration . . . will overcome the strong presumption of arbitrability . . ." North Ferry Co. v. Local 333, United Marine Division, International Longshoremen's Association, 338 F. Supp. 2d 430, 433 (E.D.N.Y. 2004). Moreover, "[i]f the allegations underlying the claims touch matters covered by the parties agreements, then those claims must be arbitrated." Paramedics, at 654. The labels that parties attach to their claims are unimportant. See Smith/Enron Cogeneration Ltd Partnership, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2d Cir. 1999) (citations and quotations omitted) (affirming antisuit injunction and noting that claims that "touch matters" within an arbitration agreement must be arbitrated "whatever the legal labels attached to them"). The First Circuit has likewise rejected the argument that legal labels have any effect on the arbitrability of a dispute. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 622

n.9 (1985) (discussing with approval the First Circuit's holding).

Here, the arbitration clause clearly states that <u>any</u> claim arising out of or relating directly or indirectly to the Agreement is subject to arbitration. It is equally clear that the claims that Alon brought in the Argentine and Brazilian lawsuits "touch matters" covered by the arbitration provision of the Agreement. The net effect of the Argentine and Brazilian injunctions is to require Converse to continue doing business with Alon. The orders construe clauses of the Agreement, including the arbitration clause (¶33) and the renewal provisions (¶¶2, 15), apply Brazilian and Argentine substantive law (in spite of the choice of law clause specifying Massachusetts law), and order that the Agreement remain in force pending arbitration. These orders relate to the "rights an obligations of the parties . . the performance or breach thereof, and the termination, renewal or non-renewal" of the Agreement, which the Agreement states specifically are subject to arbitration. Thus, Alon's attempts to characterize the Argentine and Brazilian lawsuits as "not interdictory," as "preserving the status quo," and that said suits do not interfere with the jurisdiction of the arbitrator, are well wide of the mark. (Opposition Papers, pp.15-16.) These self-serving characterizations are not entitled to any deference whatsoever; the relevant inquiry is whether the suits "touch matters" covered by the arbitration clause of the Agreement. Even a cursory review of the translations of the Argentine and Brazilian orders attached to Alon's Opposition Papers shows that the issues submitted to those courts "touch matters" covered by the arbitration clause. Moreover, the Brazilian and Argentine lawsuits do not preserve the status quo since Converse had already



/32913/2/65577v1
01/06/05-SPT/

informed Alon that it was not renewing the Agreement and Converse had already contracted with Coopershoes prior to the issuance of the Argentine and Brazilian orders.

**C. Issues of comity and equity favor issuance of anti-suit injunction.**

**1. Comity favors issuance of the injunction.**

Comity protects important national policies and preserves the authority of the domestic forum. Paramedics, at 654. As discussed above, there is a fundamental federal policy favoring the arbitration of disputes, particularly those of an international character, and, the refusal to submit the entirity of a dipuste to arbitration implicates the fundamental federal policy favoring arbitration. See, e.g., Paramedics, 369 F.3d at 653-54. In this case, the American Arbitration Association Rules specifically provide that injunctive relief can be issued by the arbitral authority. (Refer to p. 7 supra.) Seeking such relief would be perfectly consistent with the Agreement and comport with the rules of the arbitral authority. Alon, however, purposefully sought to avoid seeking injunctive relief from the arbitral authority by filing suit in Argentina and in Brazil. It seems highly plausible that it did so because the arbitral authority would be highly unlikely to grant injunctive relief forcing Converse to continue to do business with Alon.

This not only amounts to forum shopping, it is a blatant tactic to avoid the authority of the arbitral authority. Paramedics instructs that tactics to evade arbitration (in whatever forum they may take) implicate fundamental federal policy considerations and can justify the imposition of an antisuit injunction. 369 F.3d at 654. The mere fact that Alon has decided to



/32913/2/65577v1
01/06/05-SPT/

pick and choose the claims that it seeks to submit to arbitration while holding as its "ace in the hole" the Argentine and Brazilian injunctions does not amount to the submission of the entirety of the dispute between the parties to arbitration—which the Agreement specifically requires.

The Brazilian and Argentine courts have also issued orders directly construing the provisions of the Agreement. Alon may now argue before the arbitrator that the arbitrator is subject to collateral estoppel and must follow the decisions of the foreign court construing the Agreement. However, under Massachusetts law construction of the terms of the arbitration clause falls solely within the purview of the arbitrator.

**2. Equity favors issuance of the anti-suit injunction.**

Alon agrees, Opposition Papers, p. 11, that Converse need not show irreprable harm. However, Converse and Coopershoes are being greatly harmed by the conduct of Alon. First, as shown by the Affidavit of Adriano Martins, Alon is demanding now that Coopershoes enter into a new contract with Alon and threatening to bring action barring Coopershoes from using the Converse brands is Brazil – in spite of the fact that Coopershoes has no contract now with Alon! The business of Coopershoes is at risk, including the jobs of its 1,200 employees. Its ability to pay royalties to Converse under its contract with Converse is at risk. And the ability of Converse to do business in and receive royalties from the markets of Brazil and Argentina is also at risk.

Moreover, Alon never exhausted its option under the rules of the American Arbitration Asscociation of seeking injunctive relief, if warranted. Alon has that remedy right now. An

order by this Court favoring Converse would still allow Alon to seek injunctive relief from the AAA.

**D. The Proper Remedy is an Order requiring Alon to Dismiss the Foreign Actions.**

As in Paramedics, at 649, the proper remedy here is an order that Alon execute pleadings appropriate under the law of Brazil and Argentina to dismiss with prejudice the actionsn now pending in those jurisdictions. Forms for such pleadings prepared by lawyers for Converse in those jurisdictions are enclosed with the Gilleran Aff. as exhibits 8 and 9. Also, as in Paramedics, at 649, Alon should suffer a monetary sanction for any delay in executing and filing the pleadings for dismissal of the Brazilian and Argentine actions. That compensatory sanction should be in the amount of the daily loss of royalties being suffered by Converse, which is $18,000.00. Second Affidavit of Chris Laganas.

## IV. CONCLUSION

For all of the foregoing reasons, Converse respectfully requests that the Court issue an anti-suit injunction and other related relief.

**CONVERSE INC.**
By its attorneys,

[s] Michael C. Gilleran

Michael C. Gilleran, Esq. (BBO #192210)
PEPE & HAZARD LLP
225 Franklin Street
Boston, Massachusetts 02110
(617) 748-5500
Fax: (617) 748-5555

DATED: January 6, 2005



/32913/2/65577v1
01/06/05-SPT/