# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Docket No.: 12591-PBS

CONVERSE, INC.,

         **Plaintiff,**

v

ALON INTERNATIONAL, S.A.,

         **Defendant.**

## THIRD AFFIDAVIT OF ROBERTO SZERER

I, Roberto Szerer, being of lawful age, state as follows:

1.    I am Co-President of Alon International, S.A. ("Alon"). I have been Co-President of Alon since December 1997 and make this declaration based upon my personal knowledge.

2.    Alon is a corporation duly registered and organized under the laws of the Republic of Panama, and has its official office at Calle 53 Urbanizacion Obarrio, Torre Swiss Bank, Piso 16, Panama, Republica de Panama.

3.    On March 17, 2005, the National Court of the First Instance No. 22, Clerks Office No. 44, of the City of Buenos Aires, Argentina issued to Alon a *status quo* injunction for a period of sixty (60) days. A true and correct copy of said injunction is attached hereto as Exhibit "1."

4.    On March 18, 2005, the Supreme Court of the State of Rio Grande do Sul, Brazil issued to Alon a *status quo* injunction pending the arbitration between the parties. A true and correct copy of said injunction is attached hereto as Exhibit "2."

5.    Despite the Brazilian and Argentine *status quo* injunctions currently prohibiting it from doing so, and despite the pending arbitration between the parties, Converse has sought to

destroy the *status quo* between the parties. Among other things, Converse has ordered Cooperativa De Calcados E Componentes Joanetense LTDA ("Coopershoes") to withhold payments currently owed to Alon. Alon has repeatedly requested that Converse cease doing so, to no avail. For example, on March 2, 2005, Alon wrote:

> [P]ayment from Coopershoes to Alon for the January sales was due on February 28, 2004. To date, Alon has not received said payment. It is Alon's understanding from Coopershoes that Converse has directed Coopershoes to withhold its currently owing payment to Alon. Alon has now reviewed the contract signed between Converse and Coopershoes, and is astonished to find that the contract directs Coopershoes to pay Converse money which is rightfully due and payable to Alon. This course of conduct is outrageous and highly inappropriate. Moreover, this is in <u>direct conflict</u> with what you stated in your February 1, 2005 letter.

> Please be advised that Converse's interference in the contractual relationship between Alon and Coopershoes not only disrupts the pre-arbitration *status quo* between the parties but is also a continuing and ongoing tort in Brazil and elsewhere.

Emphasis in original.

6.      On March 24, 2005, Alon again asked Converse that it live up to its obligations and obey the Foreign Injunctions. Specifically, Alon wrote:

> Pursuant to [the March 18, 2005 Brazilian] Order, the Licensing Agreement continues in effect pending a final resolution of the parties' dispute in the arbitration. Accordingly, Converse must refrain and cease and desist from undertaking actions in Brazil contrary to Alon's existing rights, contractual and otherwise.

> Alon is aware that Converse has been interfering with Alon's existing contractual rights and relationships in Brazil, including interfering with payments rightfully due and owing to Alon. Please be advised that said behavior has always been and continues to be in direct and flagrant violation of Alon's contractual rights as well as of the terms of the injunction currently in place in Brazil.

>               .....

> In accordance with the above-mentioned [Foreign Injunctions] and Alon's renewal of the Licensing Agreement, Alon will continue to function within the terms of the Licensing Agreement and expects Converse to do the same. Moreover, Alon expects that Converse will cooperate and act in good faith with

respect to the removal of the funds that have been paid by Coopershoes into the court registry in Porto Alegre. Any behavior by Converse to the contrary is in direct violation of the Licensing Agreement currently in place between the parties.

A true and correct copy of this letter is attached hereto as Exhibit "3."

7.    Alon's requests for Converse's compliance with the Foreign Injunctions have gone unheeded. Under the threat of future retaliation by Converse, Coopershoes has followed Converse's mandates, and currently owes Alon over $300,000.00 for sales through January and half of February 2005 alone. Indeed, Coopershoes has informed Alon that it is withholding its payments to Alon, and will continue to do so, at Converse's express instruction. This income is essential to Alon's continued well-being, if not to its very existence.

I declare under penalties of perjury pursuant to 28 U.S.C. § 1746 and ALM GL ch. 268, § 1 that the foregoing is true and correct.

Executed on this 28 day of March 2005.

Roberto Szerer
*Co-President of Alon International, S.A.*

# EXHIBIT "1"

*Judicial Branch of the Nation*

87,571/04            Alon International S.A. et al. versus Converse Inc. regarding
                     preventive measure

Court Number 22      Clerk's Office Number 44

Buenos Aires, March 17, 2005

    WHEREAS:

    1.  On page 332, the petitioners appealed the decision on pages 329/31, which partially granted the preventive measure, as set forth on pages 403/10 of the appellate brief [*memoria*].

    2.  The decision of the [court] *a quo* is challenged inasmuch as the preventive measures were ordered for sixty days and not for the period requested in the initial brief. Furthermore, it goes against the decision because it set an excessive bond.

    3.  (a) The propriety of the preventive measures depends upon the credibility of the right being proved and the danger of the delay.  This [danger] calls for the probability that the final legal protection expected by the petitioner from the judgment to be issued cannot indeed be carried out because, as a result of the passage of time, the effects of the decision may be ineffective.

    The examination of the concurrence of the danger of the delay asks for an attentive appraisal of the compromised reality in order to properly establish whether the consequences resulting from the acts that are sought to be avoided may render the recognition of the right at issue less effective in a subsequent judgment (CSIN [dated] July 11, 1996, "in re": "Milano against the National Government").

    Now then, the circumstance of the temporary measure having been ordered for a period of sixty days and not for the greater [amount of] time requested does not provide a sufficient argument upon which to base the appeal because the appellant did not prove that such decision is causing it a current injury.

    In such context, the potential affectation of the right claimed on the record is not sufficient because it merely becomes conjectural and is currently insufficient upon which to base the referenced appeal.

    (b) The challenge at issue regarding the amount of the bond set by the lower court is also not consistent because the amounts involved in the licensing agreements [that are] the basis for this action were not clearly determined.  Furthermore, the amounts expressed in the appellate brief [*memoria*] are not substantially related to those set forth in the preliminary brief, which is the reason why the Court is lacking certain elements that would allow it to modify the extension of the bond granted by the [court] *a quo*.

(c) As regards the calculation of the period of duration for the measures ordered in the court documents, this [period] shall begin from the time at which this [decision] becomes final. This is the correct interpretation that must be followed.

Finally, obstacles are not noted so that the measures ordered by the [court] *a quo* may be served by means other than by letters rogatory [*exhorto diplomático*], as long as they are carried out in a credible way that ensures the opposing party's right to a defense.

4. The appeal on page 332 is partially granted, and the decision set forth on pages 3219/31 is modified as described herein. [The court file] shall be returned, and the [court] *a quo* shall be responsible for providing notice [of this decision to the parties].


[*signature*]

ANA I. PIAGGI


[*signature*]

GOMEZ ALONSO


[*signature*]

ENRIQUE M. BUTTY


2



# Saccani Legal and Business Translations

STATE OF FLORIDA              )
                              )
COUNTY OF MIAMI-DADE          )

I, the undersigned, Zel Saccani of Saccani Legal and Business Translations, being duly sworn, hereby declare and state that I am fluent in the Spanish and English languages and have rendered a complete and accurate English translation of the attached Spanish-language document.

By: _____

    Zel Saccani
    President

Sworn to and subscribed before me this __21__ day of __March__ , 2005.

_____
Notary's Signature

☑    Personally known to me.

☐    Produced identification.

> Official Notary Seal
> Ariel Silva
> Notary Public Seal of Florida
> Commission No. DD123323
> My Commission Exp. June 9, 2006

If so, type of identification produced:_____

1172 South Dixie Highway, PMB 473
Coral Gables, Florida 33146
zelsaccani@aol.com

Tel: (305) 860-1462
Fax: (305) 667-4151
http://www.zeltran.com

420

*Poder Judicial de la Nación*

87.571/04          Alon International S.A. y otro c/ Converse Inc. s/ medida
precautoria
Juzgado n° 22        Secretaría n° 44

Buenos Aires,     17    de marzo de 2005.-

    Y VISTOS:

        1. Apelaron las accionantes a fs. 332 la resolución de fs. 329/31, que estimó parcialmente la pretensión cautelar; su memoria corre a fs. 403/10.

        2. Se critica la decisión de la *a quo* por cuanto las medidas cautelares fueron dispuestas por sesenta días y no por el plazo solicitado en el escrito inicial. Además, se alza contra la resolución por cuanto fijó una caución real excesiva.

        3. (a) La procedencia de las medidas cautelares se encuentra condicionada a que se acredite verosimilitud del derecho y el peligro en la demora; éste exige la probabilidad de que la tutela jurídica definitiva que el peticionario aguarda de la sentencia por pronunciarse, no pueda en los hechos realizarse porque a raíz del transcurso del tiempo los efectos del fallo final resulten inoperantes.

        El examen de la concurrencia del peligro en la demora pide una apreciación atenta de la realidad comprometida, con el objeto de establecer cabalmente si las secuelas que lleguen a producir los hechos que se pretenden evitar puedan restar eficacia al reconocimiento del derecho en juego, operado por una posterior sentencia (CSJN, 11-7-96, "in re": "Milano c/ Estado Nacional").

        Ahora bien, la circunstancia de que la protección cautelar se hubiese dispuesto por el término de sesenta días y no por el mayor tiempo solicitado, no resulta suficiente argumento para fundar la apelación; pues la recurrente no acreditó que esa decisión le causa agravio actual.

        En ese contexto, no basta la potencial afectación del derecho que

421

*Poder Judicial de la Nación*

motivó la pretensión de autos; pues ello deviene meramente conjetural y -actualmente- resulta insuficiente para fundar el recurso de apelación deducido.

(b) La crítica en punto al monto de la caución real fijada en la anterior instancia tampoco resulta consistente, pues los montos involucrados en los contratos de licencia base de esta acción no fueron claramente determinados. Además, las sumas expresadas en la memoria no guardan debida relación con las indicadas en el escrito liminar, razón por la cual la Sala carece de elementos ciertos que permitan modificar la extensión de la caución acordada por la *a quo*.

(c) En cuanto al cómputo del plazo de duración de las medidas dispuestas en autos, éste comenzará a partir de que la presente quede firme; tal es la recta interpretación que cabe asumir en la especie.

Finalmente, no se advierten óbices para que las medidas dispuestas por la *a quo* puedan notificarse mediante otras vías distintas al exhorto diplomático, en la medida en que resulten efectuadas por medio fehaciente que asegure el derecho de defensa de la contraparte.

4. Se estima parcialmente la apelación de fs. 332 y se modifica, con el alcance que fluye de la presente, la resolución de fs. 3219/31. Devuélvase, encomendándole al *a-quo* las notificaciones.

ANA I. PIAGGI

GÓMEZ ALONSO DE

ENRIQUE M. BUTTY

# EXHIBIT "2"

State of Rio Grande Do Sul
JUDICIAL BRANCH
Court of Justice

MBB
Number 70011180023
2005/Civil

### CIVIL PROCEDURE: ADVANCED PROTECTION [*ANTECIPAÇÃO DE TUTELA*] REVOCATION OF THE JUDGMENT. EFFECTS OF THE APPEAL. ADVANCED PROTECTION BY THE COURT WHILE THE APPEAL IS PENDING. POSSIBILITY [OF GRANTING ADVANCED PROTECTION].

If the judge chooses in [his] own judgment to revoke advanced protection, a possible appeal's dual effect will not suspend revocation.

However, nothing shall prevent the court from granting advanced protection because it may be granted or revoked at any time, as long as the requirements of Article 273 of the [Brazilian] Code of Civil Procedure are met. A hypothesis [set forth] in the court record verifies the presence of a credible right alleged and the danger of irreparable damage. Advanced protection is granted for the appeal.

### INTERLOCUTORY APPEAL

| | |
|---|---|
| INTERLOCUTORY APPEAL [*AGRAVO DE INSTRUMENTO*] | NINTH CIVIL DIVISION |
| Number 70011180023 | PORTO ALEGRE DISTRICT |
| AIB SERVICOS E COMERCIO LTDA. | APPELLANT |
| ALON BRASIL COMERCIO E DISTRIBUICAO DE CALCADOS LTDA. | APPELLANT |
| ALON INTERNATIONAL | APPELLANT |
| CONVERSE INC. | APPELLEE |

1

## DECISION BY A SINGLE JUDGE

Whereas:

The appellants seek to maintain (while the filed appeal of the judgment is pending) the effects of advanced protection preliminarily granted and subsequently revoked in the judgment based on the argument that granting the suspending effect [*efeito suspensivo*] would lead to suspension of the revocation ordered in the judgment.

Teori Albino Zavascki, in his [scholarly] work regarding advanced protection[1], expressly disagrees with the appellants' thesis and refers to the "severe requirements for granting advanced [protection which] make [us] assume that, if they are observed as they should be, cases of revocation [of judgments] shall be infrequent.  Furthermore, when [such cases] occur, effectiveness shall be immediate because an interlocutory appeal [*agravo*] will not have a suspending effect.  **The same thing shall occur if the revocation shall result (either expressly or implicitly) from a judgment dismissing the case without reaching the merits or deeming the request to be unfounded.  Here, the appeal, even with its suspending event, shall not in and of itself *suspend* the revocation."** (emphasis added)

SERGIO BERMUDES, whose position is a bit different, nonetheless reaches the same conclusion for this case by arguing that if the appeal only results in remanding the case [*efeito devolutivo*], the judgment shall prevail over and substitute for [advanced] protection.  **If the appeal produces a dual effect, the judgment in and of itself does not revoke advanced protection, unless the judge so decides in his own judgment or separately, as he is allowed [to do] or [pursuant to] §4[2].**

In the case at issue, as is seen, the judge expressly revoked advanced protection and, when subsequently challenged by the party, reaffirmed that, regardless of the appeal's suspending effect, advanced protection would not prevail.

However, nothing stops this court from granting advanced protection because it can be granted or revoked at any time, as long as the requirements of article 273 of the [Brazilian] Code of Civil Procedure are met.

According to Teori Albino Zavascki[3], if it is proved that an advanced measure is absolutely necessary in order to avoid the danger of irreparable damage to the affirmed right and the judge finds [such danger] to be credible, it would be illogical and contrary to the [legal] system to deny such a request just because the trial court has issued a judgment.

---

[1] 2nd edition, Sao Paulo, Saraiva, 1999, page 101.
[2] *A reforma do Código de Processo Civil* [Amendment of the Code of Civil Procedure], Rio de Janeiro, Forense, 1995, page 30.
[3] Op. cit., page 119.

2

And this is the adequate solution for the case because the appellants' allegation is credible and there is a danger of irreparable damage.

In fact, the appellants are not seeking to flee the arbitration panel they freely elected, in agreement with the appellees in the contract entered into, as competent to determine termination of the contract. On the contrary, they seek to have the arbitration clause be declared effective which, according to them, provides that only the arbitration panel may declare the contract rescinded and as long as that does not happen, the defendant shall be required to abide by the contract's terms.

On the other hand, the breach of contractual rights can bring about severe consequences for the defendant companies' financial health, including [the creation of] unwanted social effects that must therefore be avoided.

For these reasons, I grant the appeal approving the advanced protection sought by the plaintiffs [*autores*], and order the defendant to cease and desist from any act that may violate the plaintiffs' contractual rights set forth in the Licensing Agreement signed by the parties.

It shall be urgently communicated.

It shall be ordered.

Porto Alegre, March 18, 2005

[*signature*]

DESA MARILENE BONZANINI BERNARDI

3



# Saccani Legal and Business Translations

STATE OF FLORIDA                    )
                                    )
COUNTY OF MIAMI-DADE                )


I, the undersigned, Zel Saccani of Saccani Legal and Business Translations, being duly sworn, hereby declare and state that I am fluent in the Portuguese and English languages and have rendered a complete and accurate English translation to the best of my ability of the attached Portuguese-language document.


By: _____
        Zel Saccani


Sworn to and subscribed before me this __23__ day of __March__, 2005.


_____
Notary's Signature


☑    Personally known to me.

☐    Produced identification.

> Official Notary Seal
> Ariel Silva
> Notary Public Seal of Florida
> Commission No. DD123323
> My Commission Exp. June 9, 2006


If so, type of identification produced:_____


1172 South Dixie Highway, PMB 473          Tel: (305) 860-1462
Coral Gables, Florida 33146                Fax: (305) 667-4151
zelsaccani@aol.com                         http://www.zeltran.com



ESTADO DO RIO GRANDE DO SUL
**PODER JUDICIÁRIO**
TRIBUNAL DE JUSTIÇA



MBB
Nº 70011180023
2005/CÍVEL

**PROCESSUAL CIVIL. ANTECIPAÇÃO DE TUTELA. REVOGAÇÃO EM SENTENÇA. EFEITOS DA APELAÇÃO. ANTECIPAÇÃO DA TUTELA PELO TRIBUNAL, QUANDO EM CURSO APELAÇÃO. POSSIBILIDADE.**

Se o juiz, na própria sentença, decide pela revogação da antecipação de tutela, eventual apelação recebida no duplo efeito não terá o condão de suspender a revogação.

Nada impede, contudo, que o Tribunal conceda a antecipação de tutela, já que esta pode ser deferida ou revogada a qualquer tempo, desde que presentes os requisitos do art. 273 do CPC. Hipótese dos autos em que verifica a presença da verossimilhança do direito alegado e o perigo de dano irreparável. Antecipação de Tutela deferida na apelação.

**AGRAVO PROVIDO DE PLANO.**

| | |
|---|---|
| AGRAVO DE INSTRUMENTO | NONA CÂMARA CÍVEL |
| Nº 70011180023 | COMARCA DE PORTO ALEGRE |
| AIB SERVIÇOS E COMERCIO LTDA | AGRAVANTE |
| ALON BRASIL COMERCIO E DISTRIBUICAO DE CALCADOS LTDA | AGRAVANTE |
| ALON INTERNATIONAL S A | AGRAVANTE |
| CONVERSE INC | AGRAVADO |

# DECISÃO MONOCRÁTICA

Vistos.

Buscam os agravantes a manutenção - na pendência de julgamento da apelação interposta - dos efeitos da antecipação de tutela



ESTADO DO RIO GRANDE DO SUL
**PODER JUDICIÁRIO**
TRIBUNAL DE JUSTIÇA



MBB
Nº 70011180023
2005/CÍVEL

argumento de que o recebimento do recurso também no efeito suspensivo, motivaria a suspensão da revogação determinada em sentença.

Teori Albino Zavascki, em sua obra 'Antecipação da Tutela[1], discorda expressamente da tese dos agravantes, referindo que "as severas exigências para a concessão da antecipação fazem supor que, se observadas como devem, serão infreqüentes os casos de revogação. Porém, quando ocorrer, a eficácia será imediata, pois o recurso de agravo não terá efeito suspensivo. O mesmo se dará se a revogação provier – expressa ou implicitamente – da sentença que extinguir o processo sem exame de mérito, ou que julgar improcedente o pedido. Aqui, o recurso de apelação, mesmo com efeito suspensivo, não terá, por si só, o condão de suspender a revogação" (grifei).

SÉRGIO BERMUDES, com posição um pouco diversa, alcança, contudo, a mesma solução para o presente caso, ao argumentar que se a apelação só produzir o efeito devolutivo, a sentença prevalece sobre a tutela substituindo-a. Se a apelação produzir o duplo efeito, a sentença, só por si, não revoga a tutela antecipada, ao menos que o juiz assim decida, na própria sentença ou em separado, como lhe permite o §4º[2].

No caso vertente, como se vê, o juiz expressamente revogou a antecipação de tutela e, posteriormente, provocado pela parte reafirmou que, independente do efeito suspensivo atribuído ao recurso, a antecipação de tutela não preponderaria.

Nada impede, contudo, que o Tribunal conceda a antecipação de tutela, já que esta pode ser deferida ou revogada a qualquer tempo, desde que presentes os requisitos do art. 273 do CPC.



ESTADO DO RIO GRANDE DO SUL
**PODER JUDICIÁRIO**
TRIBUNAL DE JUSTIÇA



MBB
Nº 70011180023
2005/CÍVEL

Como refere Teori Albino Zavascki[3], se ficar evidenciado que a medida antecipatória é indispensável para afastar perigo de dano irreparável ao direito afirmado e tido pelo julgador como verossímil, seria ilógico e contrário ao sistema negar a sua concessão, apenas pela razão de já ter sido proferida sentença em primeiro grau.

E esta é a solução adequada ao caso, já que é verossimilhante a alegação dos agravantes e há perigo de danos irreparáveis.

De fato, não pretendem os agravantes fugir ao juízo arbitral que livremente elegeram, em concordância com os agravados, no contrato celebrado, como competente para determinar a rescisão contratual. Ao revés, pretendem ver declarada a eficácia desta cláusula arbitral que determina, segundo eles, que apenas o juízo arbitral pode declarar rescindido o contrato e que enquanto isso não ocorrer, seja a parte ré compelida ao cumprimento das estipulações contratuais.

Por outro lado, a violação dos direitos contratuais pode trazer severas consequências para a saúde financeira das empresas rés, inclusive com reflexos sociais não desejados e que devem, por isso, ser evitados.

Por tais razões, dou provimento ao recurso para deferir a antecipação da tutela postulada pelos autores, determinando que se abstenha a parte ré da prática de qualquer ato que viole os direitos contratuais das autoras especificados no Contrato de Licenciamento firmado entre as partes.

Comunique-se com urgência.

Intime-se.

Porto Alegre, 18 de março de 2005.

DESA. MARILENE BONZANINI BERNARDI,

concedida liminarmente e posteriormente revogada em sentença, sob o

1

[1] 2ª ed., São Paulo: Saraiva, 1999, p., 101
[2] A reforma do Código de Processo Civil, Rio de Janeiro, Forense, 1995, p. 30.

2

[3] Op. cit., p. 119.

3

# EXHIBIT "3"

# ASTIGARRAGA DAVIS

701 Brickell Avenue • 16th Floor
Miami, Florida 33131-2847

March 24, 2005

*Via Facsimile and Certified U.S. Mail*

Michael C. Gilleran, Esq.
Pepe & Hazard, LLP
225 Franklin Street, 16th Floor
Boston, Massachusetts 02110-2804

RE:   **Manufacturing, Distribution and Licensing Agreement between Converse, Inc. ("Converse") and ALON International S.A ("Alon") dated as of September 1, 2001 (as amended, the "Agreement")**

Dear Mr. Gilleran:

Alon hereby gives notice to Converse that it has obtained an Order granting a status quo injunction from the Supreme Court of the State of Rio Grande do Sul, Brazil (*Tribunal de Justiça, Estado do Rio Grande do Sul*). A copy of the Brazilian Order dated March 18, 2005 is attached hereto.

Pursuant to said Order, the Licensing Agreement continues in effect pending a final resolution of the parties' dispute in the arbitration. Accordingly, Converse must refrain and cease and desist from undertaking actions in Brazil contrary to Alon's existing rights, contractual and otherwise.

Alon is aware that Converse has been interfering with Alon's existing contractual rights and relationships in Brazil, including interfering with payments rightfully due and owing to Alon. Please be advised that said behavior has always been and continues to be in direct and flagrant violation of Alon's contractual rights as well as of the terms of the injunction currently in place in Brazil.

Alon also hereby gives notice to Converse that it has obtained an Order granting an extension of the Argentine injunction from the National Court of the First Instance No. 22, Clerks Office No. 44, of the City of Buenos Aires, Argentina (*Juzgado Nacional de Primera Instancia No. 22, Secretaria No. 43 de la Ciudad de Buenos Aires, Argentina*). Copies of the Argentine Orders dated December 30, 2004 and March 17, 2005 are attached hereto.

March 24, 2005
Page 2 of 2

Pursuant to said Order, the Licensing Agreement continues in effect for an additional period of sixty days. Accordingly, Converse must refrain and cease and desist from undertaking actions in Argentina against Alon's existing contractual rights.

Alon is aware that Converse has previously contacted and interfered with Alon's business contacts and relationships in Argentina. Please be advised that said behavior has always been and continues to be in direct and flagrant violation of Alon's existing contractual rights as well as of the injunction currently in place in Argentina.

Pursuant to paragraph III(b) of the Licensing Agreement and in accordance with your letter dated February 15, 2005, Alon hereby formally requests approval for the use of Indular Manufacturas S.A. ("Indular") as a factory to produce the Converse shoes and related products in Argentina. Indular's corporate office is located at Av. Roque Saenz Peña 832, Diagonal Norte, 3er Piso, Buenos Aires Argentina. Indular's production facility is located at Olavarria 636 Codigo Postal 7540, Coronel Suarez, Buenos Aires, Argentina. The Indular factory was formerly owned and opperated by Gatic, S.A., to which Converse has previously given its approval for the production of the Converse products. As Alon has repeatedly re-iterated in the past, Alon remains willing to discuss with Converse how it would like to proceed on this point and invites such a discussion, as the benefits will inure to Converse whether it wins or loses in the arbitration. In this regard, if there is any other information you may need, please do not hesitate to let us know.

In accordance with the above-mentioned Orders and Alon's renewal of the Licensing Agreement, Alon will continue to function within the terms of the Licensing Agreement and expects Converse to do the same. Moreover, Alon expects that Converse will cooperate and act in good faith with respect to the removal of the funds that have been paid by Coopershoes into the court registry in Porto Alegre. Any behavior by Converse to the contrary is in direct violation of the Licensing Agreement currently in place between the parties.

Respectfully,

ASTIGARRAGA DAVIS

Edward H. Davis, Jr.

cc:    Donaldo G. Smith Sanchez (Estudio Bunge, Buenos Aires, Argentina)
       Alberto J. Bunge (Estudio Bunge, Buenos Aires, Argentina)
       Otto Lobo (Stroeter & Royster Advogados, Rio de Janeiro, Brazil)
       Francisco Rosito (Lippert E Cia Advogados, Porto Alegre, Brazil)
       Richard A. Johnston (Wilmer Hale Cutler and Pickering, Boston, Massachusetts)
       Alon International, S.A.

F:\WDOX\CLIENTS\10077\1001\00045401.DOC

 ESTADO DO RIO GRANDE DO SUL
**PODER JUDICIÁRIO**
TRIBUNAL DE JUSTIÇA



MBB
Nº 70011180023
2005/CÍVEL

PROCESSUAL CIVIL. ANTECIPAÇÃO DE TUTELA.
REVOGAÇÃO EM SENTENÇA. EFEITOS DA
APELAÇÃO. ANTECIPAÇÃO DA TUTELA PELO
TRIBUNAL, QUANDO EM CURSO APELAÇÃO.
POSSIBILIDADE.

Se o juiz, na própria sentença, decide pela revogação da
antecipação de tutela, eventual apelação recebida no
duplo efeito não terá o condão de suspender a
revogação.

Nada impede, contudo, que o Tribunal conceda a
antecipação de tutela, já que esta pode ser deferida ou
revogada a qualquer tempo, desde que presentes os
requisitos do art. 273 do CPC. Hipótese dos autos em
que verifica a presença da verossimilhança do direito
alegado e o perigo de dano irreparável. Antecipação de
Tutela deferida na apelação.

**AGRAVO PROVIDO DE PLANO.**

| | |
|---|---|
| AGRAVO DE INSTRUMENTO | NONA CÂMARA CÍVEL |
| Nº 70011180023 | COMARCA DE PORTO ALEGRE |
| AIB SERVICOS E COMERCIO LTDA | AGRAVANTE |
| ALON BRASIL COMERCIO E DISTRIBUICAO DE CALCADOS LTDA | AGRAVANTE |
| ALON INTERNATIONAL S A | AGRAVANTE |
| CONVERSE INC | AGRAVADO |

# DECISÃO MONOCRÁTICA

Vistos.

Buscam os agravantes a manutenção - na pendência de
julgamento da apelação interposta - dos efeitos da antecipação de tutela



ESTADO DO RIO GRANDE DO SUL
**PODER JUDICIÁRIO**
TRIBUNAL DE JUSTIÇA



MBB
Nº 70011180023
2005/CÍVEL

argumento de que o recebimento do recurso também no efeito suspensivo, motivaria a suspensão da revogação determinada em sentença.

Teori Albino Zavascki, em sua obra "Antecipação da Tutela[1], discorda expressamente da tese dos agravantes, referindo que "as severas exigências para a concessão da antecipação fazem supor que, se observadas como devem, serão infreqüentes os casos de revogação. Porém, quando ocorrer, a eficácia será imediata, pois o recurso de agravo não terá efeito suspensivo. O mesmo se dará se a revogação provier – expressa ou implicitamente – da sentença que extinguir o processo sem exame de mérito, ou que julgar improcedente o pedido. Aqui, o recurso de apelação, mesmo com efeito suspensivo, não terá, por si só, o condão de *suspender* a revogação" (grifei).

SÉRGIO BERMUDES, com posição um pouco diversa, alcança, contudo, a mesma solução para o presente caso, ao argumentar que se a apelação só produzir o efeito devolutivo, a sentença prevalece sobre a tutela substituindo-a. Se a apelação produzir o duplo efeito, a sentença, só por si, não revoga a tutela antecipada, ao menos que o juiz assim decida, na própria sentença ou em separado, como lhe permite o §4º[2].

No caso vertente, como se vê, o juiz expressamente revogou a antecipação de tutela e, posteriormente, provocado pela parte reafirmou que, independente do efeito suspensivo atribuído ao recurso, a antecipação de tutela não preponderaria.

Nada impede, contudo, que o Tribunal conceda a antecipação de tutela, já que esta pode ser deferida ou revogada a qualquer tempo, desde que presentes os requisitos do art. 273 do CPC.



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO
TRIBUNAL DE JUSTIÇA



MBB
Nº 70011180023
2005/CÍVEL

Como refere Teori Albino Zavascki[3], se ficar evidenciado que a medida antecipatória é indispensável para afastar perigo de dano irreparável ao direito afirmado e tido pelo julgador como verossímil, seria ilógico e contrário ao sistema negar a sua concessão, apenas pela razão de já ter sido proferida sentença em primeiro grau.

E esta é a solução adequada ao caso, já que é verossimilhante a alegação dos agravantes e há perigo de danos irreparáveis.

De fato, não pretendem os agravantes fugir ao juízo arbitral que livremente elegeram, em concordância com os agravados, no contrato celebrado, como competente para determinar a rescisão contratual. Ao revés, pretendem ver declarada a eficácia desta cláusula arbitral que determina, segundo eles, que apenas o juízo arbitral pode declarar rescindido o contrato e que enquanto isso não ocorrer, seja a parte ré compelida ao cumprimento das estipulações contratuais.

Por outro lado, a violação dos direitos contratuais pode trazer severas conseqüências para a saúde financeira das empresas rés, inclusive com reflexos sociais não desejados e que devem, por isso, ser evitados.

Por tais razões, dou provimento ao recurso para deferir a antecipação da tutela postulada pelos autores, determinando que se abstenha a parte ré da prática de qualquer ato que viole os direitos contratuais das autoras especificados no Contrato de Licenciamento firmado entre as partes.

Comunique-se com urgência.

Intime-se.

Porto Alegre, 18 de março de 2005.

DESA. MARILENE BONZANINI BERNARDI,

concedida liminarmente e posteriormente revogada em sentença, sob o

1

[1] 2ª ed., São Paulo: Saraiva, 1999, p., 101
[2] *A reforma do Código de Processo Civil,* Rio de Janeiro, Forense, 1995, p. 30.

2

[3] Op. cit., p. 110.

3

420

*Poder Judicial de la Nación*

87.571/04        Alon International S.A. y otro c/ Converse Inc. s/ medida
precautoria
Juzgado n° 22        Secretaría n° 44

Buenos Aires,        17        de marzo de 2005.-

      Y VISTOS:

          1. Apelaron las accionantes a fs. 332 la resolución de fs. 329/31, que estimó parcialmente la pretensión cautelar; su memoria corre a fs. 403/10.

          2. Se critica la decisión de la *a quo* por cuanto las medidas cautelares fueron dispuestas por sesenta días y no por el plazo solicitado en el escrito inicial. Además, se alza contra la resolución por cuanto fijó una caución real excesiva.

          3. (a) La procedencia de las medidas cautelares se encuentra condicionada a que se acredite verosimilitud del derecho y el peligro en la demora; éste exige la probabilidad de que la tutela jurídica definitiva que el peticionario aguarda de la sentencia por pronunciarse, no pueda en los hechos realizarse porque a raíz del transcurso del tiempo los efectos del fallo final resulten inoperantes.

          El examen de la concurrencia del peligro en la demora pide una apreciación atenta de la realidad comprometida, con el objeto de establecer cabalmente si las secuelas que lleguen a producir los hechos que se pretenden evitar puedan restar eficacia al reconocimiento del derecho en juego, operado por una posterior sentencia (CSJN, 11-7-96, "in re": "Milano c/ Estado Nacional").

          Ahora bien, la circunstancia de que la protección cautelar se hubiese dispuesto por el término de sesenta días y no por el mayor tiempo solicitado, no resulta suficiente argumento para fundar la apelación; pues la recurrente no acreditó que esa decisión le causa agravio actual.

          En ese contexto, no basta la potencial afectación del derecho que

421

*Poder Judicial de la Nación*

motivó la pretensión de autos; pues ello deviene meramente conjetural y -actualmente- resulta insuficiente para fundar el recurso de apelación deducido.

(b) La crítica en punto al monto de la caución real fijada en la anterior instancia tampoco resulta consistente, pues los montos involucrados en los contratos de licencia base de esta acción no fueron claramente determinados. Además, las sumas expresadas en la memoria no guardan debida relación con las indicadas en el escrito liminar, razón por la cual la Sala carece de elementos ciertos que permitan modificar la extensión de la caución acordada por el *a quo*.

(c) En cuanto al cómputo del plazo de duración de las medidas dispuestas en autos, éste comenzará a partir de que la presente quede firme; tal es la recta interpretación que cabe asumir en la especie.

Finalmente, no se advierten óbices para que las medidas dispuestas por la *a quo* puedan notificarse mediante otras vías distintas al exhorto diplomático, en la medida en que resulten efectuadas por medio fehaciente que asegure el derecho de defensa de la contraparte.

4. Se estima parcialmente la apelación de fs. 332 y se modifica, con el alcance que fluye de la presente, la resolución de fs. 3219/31. Devuélvase, encomendándole al *a-quo* las notificaciones.

ANA I. PIAGGI

GÓMEZ ALONSO DE DÍAZ CORDERO

ENRIQUE M. BUTTY

329

Poder Judicial de la Nación

045062 ALON INTERNATIONAL SA Y OTRO C/ CONVERSE INC. S/ MEDIDA PRECAUTORIA
Auto sobre la medida cautelar

Buenos Aires,    30    de diciembre de 2004.-

A mérito del poder acompañado a fs 321/6, cabe tener a los iniciantes por parte en lo que a la firma *Alon International SA* refiere, así como presentados por el art 48 CProc por la firma *Alon Argentina SRL*. Téngaselos por domiciliados. **Notifíquese.**

Peticionan los presentantes una medida cautelar -que puede calificarse de modo liminar como de "no innovar"- para que la firma *Converse Inc.* (con domicilio en *One High Street, North Andover, Masscchussets, 01845, Estados Unidos*), a) respete y garantice los derechos de las actoras con relación a los derechos patrimoniales sobre ciertas marcas propiedad de la demandada y, b) se abstenga de otorgar a terceros licencia para fabricar o comercializar los productos comprometidos con dichas marcas, todo ello en el marco de los contratos celebrados y el el área de la República Argentina.

Relatan los antecedentes contractuales que vinculan a las partes, así como el intercambio epistolar habido con relación a la renovación de los términos del acuerdo y a los supuestos incumplimientos imputados como causal denegatoria. Me remito a los hechos vertidos en el apartado III de la presentación en despacho, *brevitatis causae*.

Ahora bien, las actoras abonan su pedido en base al análisis de los siguientes aspectos, a saber:

*Verosimilitud del derecho*

Por un lado, destacan la *renovación automática* del Contrato de Licencia pactada en la cláusula 2 (ver traducción a fs 87 vlta), siempre que se superaran las ventas y regalías mínimas (lo que afirma estaría ampliamente superado); la apertura de una licenciataria en la República Argentina (*Alon Argentina SRL*); la alegada notificación de la voluntad de renovar el contrato; el supuesto silencio guardado por Converse Inc.; y lo que estiman es una insuficiente prueba de los incumplimientos atribuidos por la licenciante cuya carga le correspondería (los que son rebatidos a su juicio en la pieza inicial).

Asimismo, da cuenta del inicio del procedimiento Arbitral (previsto

PABLO GAR
SECRETARIO

en el contrato) con el objeto de zanjar la controversia.

*Peligro en la demora.*

Estaría configurado a partir del próximo vencimiento del Contrato de Licencia (31/12/04) y, a partir de allí, la supuesta pretensión de privar y/o restringir a *Alon International* y *Alon Argentina SRL* el uso de las marcas licenciadas.

Hechas estas consideraciones, cabe expedirse en torno a la procedencia de la medida solicitada.

Comenzaré señalando que la cautelar en cuestión tiene como finalidad explícita, la de impedir que la situación de hecho o de derecho vigente a éste momento se altere de manera tal que afecte la eventual ejecución o cumplimiento de la sentencia a dictarse por el Tribunal Arbitral (ante el que ya se ha solicitado su intervención). Así, repárese en que la actora y la demandada mantienen una relación negocial (a juzgar por los dichos de la iniciante) que gira en torno al uso de una licencia de varias marcas propiedad de la accionada, sobre la que planearon la vinculación de que da cuenta el contrato anejo como anexo I.

Y en dicha estipulación se pactó expresamente la competencia *arbitral* a los fines de dirimir las controversias que pudieren generarse entre partes. La cláusula 33 traducida a fs 99 da cuenta de la voluntad puesta de manifiesto en tal sentido, comprometiendo "...*cualquier controversia o reclamo que surja del presente contrato, directa o indirectamente relacionado...*".

El sentido categórico de la expresión "...*cualquier controversia...*" parece dejar un escaso espacio para admitir, en la jurisdicción ordinaria, el tratamiento de conflictos derivados de la relación negocial sin que ello importe un detrimento de la competencia arbitral, máxime si -como ocurre en la especie- ha sido pactada bajo la legislación de un estado extranjero cuyo imperio rige -en principio- dicho acto (art 8 Cód. Civil).

Sin embargo, y en tanto se ha acreditado sumariamente el inicio de la instancia arbitral (v fs 301/19), razones de prudencia y el peligro en la demora que se evidencia en grado sumo ante la inminencia del anuncio de Converse Inc., justifican adoptar un criterio de preservación del estado de cosas, mas limitado en el tiempo, y ello con el objeto de que las interesadas puedan solicitar la tutela de sus derechos por ante el órgano arbitral. Tal decisión encuentra fundamento además en el hecho que no se aprecia en la causa que el pedido de intervención arbitral haya sido acompañado de una medida precautoria que



se ajuste a la pretensión aquí insinuada.

Por lo demás, lo acotado del plazo por el que será otorgada la medida encuentra sustento en que podría darse un supuesto de superposición de jurisdicciones (la arbitral y la jurisdiccional) pudiendo las actoras, dentro del mismo, solicitar por ante el tribunal arbitral aquello que estimen menester.

En consecuencia, habré de acceder a la pretensión cautelar requerida en el punto II, apartados a) y b) del escrito inicial, más por el término de 60 días corridos contados a partir del presente, plazo dentro del cual habrán de solicitar las interesadas, de estimado así conveniente, las medidas que estimen convenientes por ante el Tribunal Arbitral que entiende en la disputa, ello bajo caución real a prestar a satisfacción del juzgado hasta la suma de u$s 300.000.-

Lo que así decido.

**Notifíquese mediante exhorto diplomático.**

*Margarita R. Braga*

*Juez*

PABLO GAR...
...