UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONVERSE INC., | ) |
| Plaintiff, | ) DOCKET NO.: 04-12591-PBS |
| vs. | ) |
| ALON INTERNATIONAL S.A., | ) |
| Defendant. | ) |

### CONVERSE'S EMERGENCY MOTION TO CONTINUE STATUS QUO ORDER, CLARIFY THAT STATUS QUO ORDER DOES NOT STAY ARBITRATION, AND COMPEL ALON TO PARTICIPATE IN ARBITRATION

#### Emergency Relief Sought

Plaintiff Converse Inc. ("Converse") hereby moves this Court for an emergency order to (1) continue the order issued by Judge Tauro on Friday, May 27th requiring the parties to "maintain the status quo with respect to all aspects of this case until Judge Saris returns, or further order of this court" ("Status Quo Order"), until a new arbitrator is officially appointed in the arbitration and issues a ruling on Converse's motion pending in arbitration entitled Motion to Preserve Damages Remedy and Rationalize Litigation (the "Arbitration Motion")[1], and (2) to clarify for the International Center for Dispute Resolution ("ICDR") administering the arbitration between the parties that the Status Quo Order is not an order staying continued arbitration and appointment of a new arbitrator, contrary to the ICDR's express fear stated to counsel for Converse, which has caused the ICDR to delay official appointment of a new

---

[1] Converse filed the Arbitration Motion in the arbitration on May 3, 2005 and it was scheduled to be heard

1

arbitrator.

## Immediate Background

On Friday, May 27th Judge Tauro, acting as the emergency judge in this matter, in the absence of Judge Saris, issued the Status Quo Order. He issued such an order in response to two emergency motions filed by Converse. In one of those two emergency motions, entitled Converse's Emergency Motion to Protect Arbitrator Authority to Preserve Damages Remedy, Converse sought an order enjoining Alon from seeking further orders to obtain funds in an interpleader-type action pending before a Brazilian court until a new arbitrator is appointed in the arbitration proceeding between the parties styled as, <u>Alon International, S.A v. Converse Inc.</u>, International Center for Dispute Resolution ("ICDR"), Case No. 50 133 T 00579 04, and the new arbitrator has had a chance to hear and decide Converse's pending Arbitration Motion. The interpleader-type action in Brazil, had been filed by Coopershoes Cooperative ("Coopershoes"), a Brazilian company that engages in all aspects of the product development, manufacturing, advertising and sales of Converse-trademarked and licensed shoe products in Brazil. Converse claims that Coopershoes is its lawful licensee in Brazil and that Alon's prior rights in Brazil as Converse's licensee expired on December 31, 2004 without any renewal contract, and that Alon was also properly terminated as Converse's licensee for breaching the anti-sublicensing clauses in the contract  Alon claims that its licensing rights with Converse automatically continued after December 31, 2004 and that Coopershoes, instead, is its lawful sublicensee and/or distributor of Converse-trademarked and licensed products. Coopershoes manufactures shoes and generates monthly sales of Converse products with a value in the range of $2.5-$3.0 million, and owes monthly royalties on those sales in the range of $300,000-

---

on May 24th, the day that arbitrator was removed as arbitrator by the ICDR.

$500,000 either to Converse in full, or to Alon with Alon remitting part back to Converse. Alon's second emergency motion, entitled Converse's Emergency Motion to Enforce the Interim Final Arbitration Order Pending Appointment and Decision by a new Arbitrator, sought to enforce a Standstill Order of the previous arbitrator enjoining Alon from appointing or threatening to appoint a new manufacturer/and or sublicense in Brazil other than Coopershoes as a way of forcing Coopershoes to make the contested royalty payments directly to Alon and not into the interpleader, pending a decision by the arbitrator on the Arbitration Motion. The regular payment by Coopershoes of royalties into the interpleader action was due to be made by Coopershoes on Monday, May 30th.

Converse filed the two emergency motions in response to an effort by Alon in the Brazil interpleader action to prevent Coopershoes from making any more payments into the interpleader, and thus to preclude the ability of the arbitrator to decide the Arbitration Motion. The Arbitration Motion, filed by Converse in the arbitration on May 3rd, sought an order preserving its damages remedy by having the arbitrator take control of those funds (which now total in excess of $1.6 million). Converse further asked in the Arbitration Motion that the arbitrator preserve those funds and then disburse them at the conclusion of the case after the arbitrator makes the ultimate decision about who the owner is of the funds.

Converse learned on Tuesday, May 24th, while the Arbitration Motion was pending and about to heard by then Arbitrator Theroux, that Alon had taken action in an interpleader proceeding in Porto Alegre, Brazil to prevent any more contested royalty payments from being paid by Coopershoes into that interpleader and to force Coopershoes to make those contested royalty payments directly to Alon. Alon's counsel, Mr. Astigarraga, sent an email to

Converse's counsel stating in part that "we have recently been informed that the Brazilian judge in Porto Alegre presiding over the interpleader deposits has held that such deposits are no longer authorized." Converse has now obtained a copy of the Brazilian court order. The action by the Porto Alegre judge was not sua sponte, but was taken by the judge in response to some ex parte pleading filed by Alon, a copy of which is attached as Ex. A. Alon's motion was filed on May 16, 2005 (date shown by court stamp on page 1, and near the bottom of the last page), after Converse filed the Arbitration Motion on the same subject with the arbitrator on May 3, 2005, and thus appears to be a blatant effort to interfere with, preempt and moot a decision by the arbitrator on Converse's Arbitration Motion. However, Converse has learned that Alon in its motion to the interpleader court not only sought an order barring Coopershoes from making any future royalty payments into the interpleader, but also asking the interpleader to order that all the contested interpleader payments (of approximately $1.6 million) be given directly to Alon. Converse's counsel believes that Alon will file a further motion with the Brazilian interpleader court before the new arbitrator can hear and decide the Arbitration Motion.

The reason why the emergency motions had to be filed in this court and not in the pending arbitration before the ICDR was because of a brief gap in the arbitration proceeding where there is no appointed arbitrator. On Friday, May 20, 2005, Alon sent to the ICDR an email stating that "[w]e are informed that Nike, Converse's parent, is a client of Baker & McKenzie," the law firm of Mr. Theroux. Mr. Theroux responded by an email Sunday night, May 22, 2005, saying that while he had retired as a partner from Baker & MeKenzie in 2002, had discontinued doing any work for clients of Baker & McKenzie, and currently only served

in a "part-time advisory role as Senior Counsel to the Firm", Baker & McKenzie did represent Converse's parent company, Nike. Arbitrator Theroux further stated he had done no work for Nike and found himself to be impartial. Nonetheless, he offered to withdraw as arbitrator.

On Tuesday morning, May 24th, the day Converse's Arbitration Motion was to be heard by Mr. Theroux, the ICDR issued an order removing Mr. Theroux as the arbitrator and suspending the arbitration proceedings, including the hearing on the Arbitrator Motion, "until the appointment of the new Arbitrator".

On that same day, May 24th, the ICDR indicated to Christine Parise, one of the counsel for Converse, that it had already invited the next arbitrator to serve and that the new arbitrator was to be from the list of 29 proposed arbitrators already ranked by both Converse and Alon. Alon opposed this procedure and wanted to start the selection process over again, causing a few days delay by the ICDR. Late on Thursday, May 26th, the ICDR sent a notice to Converse and Alon, that "the ICDR has determined that we will proceed with the list method for the appointment of the Arbitrator to serve in this matter. At this stage the Arbitration may proceed."

On Friday morning, May 27th Judge Tauro, in response to Converse's two emergency motions, issued the Status Quo Order. Counsel for Alon immediately sent the Status Quo Order to the ICDR asking the ICDR to expedite the appointment process for the new arbitrator so that the matter could leave the jurisdiction of this Court, return to the jurisdiction of the ICDR, and so the new arbitrator could hear and decide the Arbitration Motion as expeditiously as possible. On Friday morning, after Converse's counsel had sent the Status Quo Order to the ICDR, the ICDR contacted counsel for Converse asking if the Status Quo Order was also an

overall stay of any action by the ICDR even barring the ICDR from appointing a new arbitrator. Converse's counsel responded in the negative, stating that the only relief sought in the emergency motions had nothing to do with the staying the arbitration or preventing the appointment of a new arbitrator. The ICDR then sent an email to Alon asking for Alon's comments about the Status Quo Order. The ICDR in its email gave Alon until Wednesday, June 1st to respond. Since the ICDR's email to Alon did not explain the immediate ICDR issue, which was that the ICDR was asking if Alon considered the Status Quo Order to be a stay of the arbitration and prevented appointment of a new arbitrator, counsel for Converse sent an email to Alon's Boston counsel explaining the reason for the ICDR's inquiry about the purpose of the Status Quo Order. Converse's counsel, in its Friday afternoon email, also asked Alon's counsel to communicate to the ICDR that day, or first thing, Tuesday, May 31, that he did not understand the Status Quo Order as a stay of the arbitration or as a bar to appointment of a new arbitrator by the ICDR.

Instead, Alon's counsel, very late on Friday sent a letter to this Court requesting a hearing on Converse's two emergency motions on Wednesday, June 1st or later.

Also, on Friday, Coopershoes in Brazil, in response to the Status Quo Order, sent an email to Messrs. Durchfort and Szerer of Alon asking them whether, in light of the Status Quo Order, Coopershoes should pay the disputed May 30th royalty payment into court or pay it directly to Alon. Alon responded with an email refusing to respond to the question whether it was entitled to receive the royalty payment from Coopershoes. On Monday, May 30th, Coopershoes sent another email to Alon, saying essentially that Coopershoes again demands from Alon a "yes" or "no" answer as to whether Alon says it is entitled to direct payment of

the royalty payment scheduled to be made by Coopershoes on May 30th. Converse's Boston counsel does not yet know Alon's response to this email.

On Monday, May 30th, Alon's counsel responded to the Friday, May 27th inquiry about the Status Quo Order. In this email Alon says, among other things, that "Alon does not regard that Order as staying this arbitration" and that "we disagree with Converse's communication but agree that the ICDR should proceed to appoint a new arbitrator promptly."

Converse fears that that Alon's request for a hearing on Converse's two emergency motions sometime on or after June 1st, during a time after one of two possible end-points of the Status Quo Order (return of Judge Saris), is a blatant effort to create a lapse in the current Status Quo Order so that Alon can obtain the interpleader funds. If Alon obtains the interpleader funds it will be able to preempt or moot any decision by a new arbitrator on the Arbitration Motion, which deals with the same subject of the disposition of the interpleader funds. Converse also fears that Alon wants to end the Status Quo Order on a rush basis, before a new arbitrator can consider and rule on the Arbitration Motion, so that any action by a new arbitrator on the Arbitration Motion will be mooted or preempted.

### Underlying Claims between the Parties

A brief statement of the underlying disputes and claims between the parties is attached as an appendix to this motion.

### Argument

**1.    This Court is required to send the matter back to arbitration immediately and should do so while at the same time (1) clarifying that the Status Quo Order is not a stay of the arbitration, and (2) protecting the ability of the new arbitrator to decide the Arbitration Order by continuing the Status Quo Order until the new arbitrator rules on the Arbitration Motion.**

a. **The duty of a court, where an arbitration is pending, is to move the matter as quickly as possible out of court and into or back to the arbitration proceeding.**

The United States Supreme Court, in interpreting the Federal Arbitation Act, 9 U.S.C. § 1, et seq. (which governs the arbitration here), stated that the national policy expressed in the FAA of "rapid and unobstructed enforcement of arbitration agreements", required courts "to move the parties to an arbitrable dispute out of court and into arbitration as quickly as possible." Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. 1, 22-23 (1983). Where the arbitration is expected to resume in the next day or two, at most, all motions that might have a final effect on the parties damages remedy belong there. As one United States District Court has held: "It is one thing to apply to a court to preserve the status quo until a duly appointed arbitrator can act; but is quite another to consciously avoid taking steps that would give the arbitrator the ability to act and, instead to apply to another court for relief. Given the modern preference for international arbitration such bootstraps are no longer fashionable." Al Nawasi Trading Co. v. BP Amoco Corp., 191 F.R.D. 57, 59 (S.D.N.Y. 2000).

Converse filed the emergency motions in court simply to protect the status quo during the expected very short period of a lack of an appointed arbitrator. The ICDR is ready to appoint a new abitrator and resume the arbitration, but for its confusion about whether the Status Quo Order stays the arbitration and prevents the ICDR from appointing a new abitrator. A new arbitrator clearly has the power to decide the disposition of the Arbitration Motion, of the interpleader funds and of the continued royalty payments (Coopershoes has no interest in the funds or the payments, which it owes either to Converse or to Alon).

This Court, despite the efforts of Alon to keep the matter in court, should order the parties to proceed with arbitration, clarify that Status Quo Order does not act as a stay upon the arbitrtion before the ICDR, and does not prevent the ICDR from appointing a new arbitrator immediately (as it clearly intended to do before issuance of the Status Quo Order).

> b. **The Court should order that the Status Quo Order continues in force until the newly appointed arbitrator has had a chance to hear Converse's Arbitration Motion and issue a ruling on that motion.**

An appointed arbitrator, has the power to order interim measures, including preliminary injunctions,[2] and its decisions on even preliminary matters cannot be disturbed by courts except under the most limited circumstances. Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1022-23 (9th Cir. 1991) (affirming an interim arbitration order pursuant to the AAA Commercial Arbitration Rules requiring a party to place a sum of money in escrow pending the arbitrator's decision concerning the validity of certain agreements). An arbitrator also has the power to issue interim orders preserving the status quo ante, thus protecting the arbitrator's ability to preserve the damages remedy of both parties. Pacific Reinsurance, at 1022-23: "[t]emporary equitable relief in arbitration may be essential to preserve assets or enforce performance which, if not preserved or enforced, may render a final award meaningless."; Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F. 3d 1373, 1380 (6th Cir. 1995) (approving issuance of status quo injunctions by courts in those situations

---

[2] The International Rules governing the arbitration between Converse and Alon clearly provide that both Converse and Alon can apply to the arbitrator for "interim measures" including injunctive relief. Rule 21(1) of the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules"): "At the request of any party, the Tribunal may take whatever inerim measures it deems necessary, including injunctive relief and measures for the protection or conservation of property." See also Simula, Inc. v. Simula Automotive Safety Devices, Inc., 175 F. 3d 716, 726 (9th Cir. 1999) ("[b]ecause the district court correctly concluded that all of Simula's claims were arbitrable and the ICC arbitral tribunal is authorized to grant the equivalent of an injunction *pendente lite*, it would have been inappropriate for the district court to grant preliminary injunctive relief.").

9

where withholding relief would render the arbitration process a "hollow formality" because a later arbitral award "could not return the parties substantially to the status quo ante."). However, Alon is doing everything possible to preempt and moot a decision by a new arbitrator on Converse's Arbitration Motion.

Alon wants to prevent preservation of the status quo so that the Status Quo Order will lapse and Alon can then alter the status quo in Brazil. Alon would alter the status quo by compelling Coopershoes to pay Alon the contested royalty payments due on May 30th of about $300,000, and also by applying to the Brazilian interpleader, again on an ex parte basis, for an order awarding it the balance of the funds already held in interpleader of about $1.6 million. All the relief which both Converse and Alon seek with respect to the contested interpleader funds could be granted in the arbitration, and Converse (not Alon) has sought such relief by means of its Arbitration Motion.

### Certification

Pursuant to Local Rule 7.1(A)(2), counsel for Converse has this morning requested Alon's assent to this motion. Counsel for Converse has not yet received a response. Converse has no reason, given Alon's actions as shown herein, that such assent will be forthcoming.

### Conclusion

Based on the foregoing arguments and authorities, Converse respectfully requests that Converse's current motion be allowed in all respects and that the Court grant Converse the following relief:

(1)  Order that the Order issued by Judge Tauro on May 27, 2005 requiring the parties to "maintain the status quo with respect to all aspects of this case until Judge Saris

returns, or further order of this court" ("Status Quo Order"), be continued until the a new arbitrator is officially appointed in <u>Alon International, S.A v. Converse Inc.</u>, International Dispute Resolution Center ("ICDR"), Case No. 50 133 T 00579 04, and rules on Converse's Motion to Preserve Damages Remedy and Rationalize Litigation (the "Arbitration Motion");

(2) Order that the Order of Judge Tauro of May 27, 2005 is clarified for the International Center for Dispute Resolution administering the arbitration between the parties, such that the Order is not an order staying continued arbitration or the appointment of a new arbitrator in <u>Alon International, S.A v. Converse Inc.</u>, International Center for Dispute Resolution ("ICDR"), Case No. 50 133 T 00579 04; and

(3) Order such other and further relief for Converse as this Court deems just and equitable.

          **CONVERSE INC.**
          By its attorneys,

          _/s/ Michael C. Gilleran
          Michael C. Gilleran, Esq. (BBO #192210)
          PEPE & HAZARD LLP
          225 Franklin Street
          Boston, Massachusetts 02110
          (617) 748-5500

DATED: May 31, 2005

### Certificate of Service

    I hereby certify that I have today served the above motion upon counsel for the opposing party by electronic means.

          _/s/ Michael C. Gilleran

DATED: May 31, 2005

## Appendix: Claims and Proceedings in the Arbitration

The arbitration pending before the ICDR concerns claims by Converse that it rightfully terminated and let expire on December 31, 2004 its contract with Alon, its licensee in Brazil, Argentina, Uruguay, and Paraguay. As part of its basis for terminating Alon, Converse says that Alon, without permission, violated the anti-sublicensing clauses in the contract between Converse and Alon, and engaged a Brazilian entity as its sublicense, called Coopershoes Cooperative De Calvados E Components Joan tense LTDA ("Cooper shoes"). Converse believes the evidence is that Alon granted a prohibited contractual sublicense to Coopershoes such that Coopershoes had the right use and sell Converse's trademarks, use and sell Converse's licensed products, and Coopershoes was conducting the product development, marketing, advertising, and sales of Converse's licensed products while also paying Alon royalty payments consisting of a percentage of Coopershoes' net sales. Alon contests whether it engaged in sublicensing and whether its contract with Converse expired of its own terms on December 31, 2004. Alon also alleges that it is entitled to damages from Converse consisting of what it claims is its share of the royalties from the territory for some number of years in the future, which damages Alon now says amount to $21 million.

On or about December 16, 2004 Converse entered into a licensing agreement with Coopershoes to appoint Coopershoes as its licensee in the territory, which agreement became effective on January 1, 2005. Alon, in December 2004, long before an arbitrator was appointed in the arbitration on April 6, 2005, sought and obtained various injunctions against Coopershoes and Converse in Brazil. Coopershoes filed two interpleader actions in Porto Alegre, Brazil, which were both granted, allowing it to pay the monthly royalties after

13

December 31, 2004 claimed by both Converse and Alon. The amount of funds thus far deposited by Coopershoes into the interpleader actions is approximately $1.6 million, with new monthly deposits by Coopershoes scheduled in the amounts of $300,000 to $500,000. However, as noted above, a new order of the interpleader court on May 23rd prevents Coopershoes from making any future royalty payments into the interpleader court.

The procedural posture of the arbitration is that Alon has filed its Statement of Claim and Amended Statement of Claim. Converse has filed its Answers to both of these along with its Counterclaims. Document production has been order which was to be exchanged today, but may be delayed. A schedule for "memorials" of the parties (written statements of all direct an rebuttal testimony) is set to commence in September with the final hearing set for the week of October 24, 2005.

MCG/32913/2/568662v1
05/28/05-BOS/

# EXHIBIT A

**LIPPERT & CIA.**
ADVOGADOS

EXMO. SR. DR. JUIZ DE DIREITO DA 12ª VARA CÍVEL DA COMARCA DE PORTO ALEGRE - RS

PROCESSO Nº 10522673493

12ª CARTÓRIO CÍVEL
RECEBIDO
16 MAIO 2005

AIB SERVIÇOS E COMÉRCIO LTDA. ("AIB") e ALON INTERNATIONAL S.A. ("ALON"), qualificadas nos autos da AÇÃO DE CONSIGNAÇÃO EM PAGAMENTO que lhes move COOPERSHOES – COOPERATIVA DE CALÇADOS E COMPONENTES JOANETENSE LTDA. ("Coopershoes"), vêm dizer e requerer o que segue:

I

DA NECESSIDADE DA APRECIAÇÃO, EM CARÁTER DE URGÊNCIA, DA PRELIMINAR DE AUSÊNCIA DE INTERESSE SUPERVENIENTE – INEXISTÊNCIA DE DÚVIDAS QUANTO AO CREDOR

A suposta dúvida que ampara o alegado direito de consignar da autora residiria nas ações judicial (ação declaratória) e extrajudicial (arbitragem) que hoje envolvem as rés. Todavia, as ré demonstraram, indubitavelmente, em sua peça contestatória que não há o fundamento alegado para a propositura da ação e que o presente Juízo não é o competente para a apreciação da presente ação e, em razão disto, juntamente com a contestação, foi ofertada a necessária exceção de incompetência.

Av. Padre Cacique, 320/Bloco B - 5º andar - CEP 90810-240
Porto Alegre - RS - Brasil - Fone: (51) 3231.7988 - Fax: (51) 3231.7989
E-mail: lippert@lippert.com.br
www.lippert.com.br

# LIPPERT
# & CIA.
### ADVOGADOS

Conforme restou demonstrado no curso da peça contestatória há fatos **SUFICIENTES PARA O CORRETO DESLINDE DA PRESENTE DEMANDA**, que devem ser analisados <u>**COM URGÊNCIA**</u> para que seja impedida a Coopershoes de realizar novos depósitos judiciais, <u>**permitindo-se que os valores depositados sejam levantados imediatamente**</u> pelas rés Alon e AIB.

<u>**REITERA-SE QUE NÃO MAIS SUBSISTE A PRETENSA "DÚVIDA" ACERCA DO CREDOR DOS VALORES DEPOSITADOS JUDICIALMENTE PELA AUTORA, A QUAL SE VALE DO PODER JUDICIÁRIO PARA, A CADA 15 DIAS, DEIXAR DE ADIMPLIR SUA OBRIGAÇÃO CONTRATUAL. COM TAL MANOBRA, FRISE-SE, BUSCA A AUTORA VALER-SE DO PODER JUDICIÁRIO PARA COAGIR A LEGÍTIMA CREDORA, CAUSANDO-LHE GRAVOSOS PREJUÍZOS !!!**</u>

Em primeiro lugar, resta esclarecer que **NÃO HÁ DÚVIDA QUANTO A EFICÁCIA DA DECISÃO JUDICIAL QUE MANTÉM O CONTRATO ENTRE AS RÉS EM VIGOR**: nos autos da ação movida pelas rés Alon e AIB em face da Converse, INC., **FOI JULGADO EM 20.04.05 AGRAVO INTERNO DA CONVERSE, INC., ATRAVÉS DO QUAL PRETENDIA CASSAR A DECISÃO QUE MANTEVE OS EFEITOS DO CONTRATO DE LICENCIAMENTO ASSINADO ENTRE AS PARTES, TENDO SIDO RESTABELECIDA UMA MULTA DIÁRIA PARA CASO DE DESCUMPRIMENTO DA DECISÃO, NO VALOR DE R$ 50.000,00.**

O Contrato de Licenciamento assinado entre as partes rés, mantido em vigor pelo Tribunal de Justiça do Estado do Rio Grande do Sul, prevê expressamente a **exclusividade** das rés Alon e AIB para a representação das marcas licenciadas.

Na referida decisão que manteve a decisão monocrática já apresentada à este D. Juízo, resta clara e evidente **A OBRIGAÇÃO DA CONVERSE DE NÃO CONTRATAR COM A COOPERSHOES. A Coopershoes tem** conhecimento desta decisão.

Sendo assim, não há como se falar em dúvida quanto a aplicabilidade do contrato de licenciamento assinado entre as partes rés, e os efeitos que geram em relação à Autora: DE PAGAMENTO ÀS RÉS ALON E AIB.

**AINDA, AS RÉS ALON E AIB MOVERAM AÇÃO PERANTE A COMARCA DA CAPITAL DO ESTADO DO RIO DE JANEIRO, ATRAVÉS DA QUAL FOI PROFERIDA DECISÃO LIMINAR QUE PROÍBE A COOPERSHOES DE MANTER QUALQUER RELAÇÃO CONTRATUAL COM A RÉ CONVERSE, INC., ALÉM DE SER OBRIGADA A SOMENTE PRODUZIR OS CALÇADOS MEDIANTE PAGAMENTO DE ROYALTIES PARA ÀS RÉS ALON E AIB.**

Av. Padre Cacique, 320/Bloco B - 5º andar - CEP 90810-240
Porto Alegre - RS - Brasil - Fone: (51) 3231.7988 - Fax: (51) 3231.7989
E-mail: lippert@lippert.com.br
www.lippert.com.br

# LIPPERT & CIA.
### ADVOGADOS

3

Conforme demonstrado em Exceção de Incompetência, a mencionada ação teve citação válida anterior à da presente ação, valendo portanto a regra da prevenção, prevista no art. 219 do CPC.

Mesmo se assim não fosse, naquela ação movida no Rio de Janeiro, a decisão trata, entre tantos pedidos, de objeto não alcançado na presente ação; qual seja, **DA OBRIGAÇÃO DA AUTORA COOPERSHOES DE NÃO ADIMPLIR QUALQUER OBRIGAÇÃO DIRETAMENTE COM A CONVERSE, INC.**

Sendo assim, temos a seguinte situação: de um lado a Converse, Inc está obrigada a não contratar com a Coopershoes, por decisão do Tribunal de Justiça de Porto Alegre, e de outro, está a Coopershoes obrigada a não adimplir qualquer obrigação diretamente à Converse, Inc., por decisão judicial da 8ª Vara Empresarial da Comarca da Capital do Estado do Rio de Janeiro. Ainda, em ambas as decisões, está prevista uma multa diária no valor de R$ 50.000,00 (cinquenta mil reais), em caso de descumprimento.

Diante do acima exporto, obrigatória é a conclusão de que não há mais dúvida autorizadora dos depósitos judiciais nos autos da presente ação.

## II

### DOS REQUERIMENTOS

Assim, pelos motivos acima expostos, reiteram as rés os pedidos formulados na exceção de incompetência e em sua peça contestatória, requerendo:

A) Seja a autora impedida de efetuar novos depósitos em juízo;
B) A imediata análise da preliminar de perda de interesse superveniente (ausência de dúvida face à decisão do TJRS);
C) O imediato levantamento pela **AIB SERVIÇOS E COMÉRCIO LTDA.** ("AIB") e **ALON INTERNATIONAL S.A.** ("ALON") do montante depositado em juízo pela autora.

Nestes termos, pedem deferimento.

Porto Alegre, 16 de maio de 2005

OTTO EDUARDO FONSECA LOBO
OAB/RJ Nº 88.050

FABIO LUIS DE LUCA
OAB/RS 56.159

Av. Padre Cacique, 320/Bloco B - 5º andar - CEP 90810-240
Porto Alegre - RS - Brasil - Fone: (51) 3231.7988 - Fax: (51) 3231.7989
E-mail: lippert@lippert.com.br
www.lippert.com.br