IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO.: 12591-PBS

|  |  |
|---|---|
| CONVERSE, INC., | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| ALON INTERNATIONAL, S.A., | : |
|  | : |
| Defendant. | : |

**MEMORANDUM OF LAW OF ALON INTERNATIONAL, S.A. IN
OPPOSITION TO CONVERSE'S FIFTH EMERGENCY MOTION FOR
ANTI-SUIT INJUNCTION (STYLED AS "MOTION TO CONTINUE STATUS
QUO ORDER, CLARIFY THAT STATUS QUO ORDER DOES NOT STAY
ARBITRATION, AND COMPEL ALON TO PARTICIPATE IN ARBITRATION")**

## I.    Introduction

Alon International, S.A. ("Alon") submits this response to Converse, Inc.'s ("Converse")

Emergency Motion to Continue Status Quo Order, Clarify That Status Quo Order Does Not Stay

Arbitration, And Compel Alon to Participate in Arbitration ("Motion") which Converse filed

early yesterday.  The response also replies to Converse's "Emergency Motion to Enforce the

Interim Final Arbitration Order Pending Appointment and Decision and by the Arbitrator,"

which Converse filed on May 27, 2005 as well as to "Converse's Emergency Motion to Protect

Arbitration Authority to Presence Converse's Damages Remedy, which Converse filed on

May 25, 2005.[1]

It appears from developments in the half day since Converse filed this most recent

emergency motion that events may have muted Converse's loud entreaties to the Court for

---

[1] Because Converse has filed three similar emergency motions in the space of three business days, this
memorandum necessarily repeats some of the facts and arguments in Alon's opposition to the first of those motions.
Alon requests the Court's indulgence as to any redundancies.

immediate relief. For one thing, the international division of the American Arbitration

Association ("ICDR") has accepted Alon's statements that Judge Tauro's May 27, 2005 *status*

*quo* order does not stay the pending arbitration between the parties. Thus, there is no dispute that

the arbitration will proceed. Second, it appears that a Brazilian court ruling yesterday prompted

by Converse may have affected the financial relationship between the parties in a direction

favorable to Converse at a time precisely when Converse is seeking to prevent recourse to the

Brazilian courts by Alon.

Under the circumstances, Alon submits that the Court should vacate as moot the *status*

*quo* order which Judge Tauro entered pending the return of Judge Saris, deny Converse's three

pending "emergency" anti-suit injunction motions, leave the parties free to pursue injunctive

remedies in Brazil in aid of a pending arbitration between them, and confirm that the Contract

between the parties remains in place pending arbitration.

## II.    Background Facts

The pertinent facts are as follows:

- Converse granted Alon an exclusive contract to manufacture and market Converse brand shoes in Brazil, Argentina and elsewhere in Latin America (the "Contract").
- The Contract, effective beginning September 1, 2001, provided for an initial term through December 31, 2004, and granted <u>Alon</u> an option to renew it for a 3-year term.
- Coopershoes is the Brazilian company that physically manufactured and distributed the shoes for Alon, with Converse's full knowledge and approval.
- Alon has a separate contract with Coopershoes (the manufacturer/distributor), to which Converse is not a party.
- Alon contends it validly exercised the renewal option of its Contract, and therefore that the Contract is still in force through December 31, 2007.
- Converse disputes that contention and asserts instead that it validly terminated its Contract with Alon so that the Contract is not in effect.
- Until November 30, 2004, when the dispute erupted, Alon had used Coopershoes to make and sell the shoes, and would receive payment from Coopershoes and then pay Converse.

- 2 -

- On December 16, 2004, two weeks before the beginning of a new three year term with Alon, Converse entered into a Manufacturing, Distribution and Licensing Agreement with Coopershoes, thus attempting to cut Alon out of the market it had created.

- Alon noticed an arbitration with the ICDR to resolve the dispute over Converse's attempted termination of the Contract.

- Since Converse contracted with Coopershoes and cut out Alon, Coopershoes continues to make and sell shoes for Alon and generate revenues that are accumulating.

- Coopershoes has not paid Alon pursuant to the terms of the parties' contract.

## III.     The *Status Quo* Injunctions In Brazil Pending Against Converse and Coopershoes

In aid of the arbitration it command in the United States, Alon filed actions in the national courts of Brazil seeking to obtain *status quo* injunctions against Converse and Coopershoes prohibiting them from taking actions contrary to Alon's rights under their respective separate agreements pending the outcome of the arbitration. (Lobo ¶ 3-4, 18-24).[2] Alon commenced the Brazilian injunction action against Converse on or about December 21, 2004, and the injunction action against Coopershoes on or about March 31, 2005.

### A.     Injunctions Against Converse

On December 22, 2004, the Brazilian court in the 19th State Court of Porto Alegre, State of Rio Grande do Sul, Brazil entered a *status quo* injunction against Converse (the "Converse Injunction"). The injunction orders that that the parties continue to perform their contract until the termination of the arbitration proceedings already initiated, and enjoins Converse from entering into any contractual arrangements in Brazil contrary to the Contract. (Lobo Decl. ¶ 4).

---

[2] As with the Memorandum filed by Alon on May 27, 2005, the exhibit references in this Memorandum are to the exhibits to the memorandum that Alon filed in the arbitration in connection with a similar motion by Converse, namely Alon International's Memorandum of Law In Opposition to Emergency Motion of Converse to Preserve its Damages Remedy and Rationalize the Litigation. These exhibits submitted to this Court are attached to the May 27 Memorandum.

On February 24, 2005, while the judge who had originally entered the injunction was on vacation, Converse obtained an *ex parte* order from a temporary judge substituting for the original judge. (Lobo Decl. ¶ 5).

Alon appealed the *ex parte* order over-turning the Converse Injunction to the Supreme Court of the State of Rio Grande do Sul (*Tribunal de Justicia, Estado Do Rio Grande Do Sul*). (Lobo Decl. ¶ 6). On March 18, 2005, a judge of the 3d Chamber of the Supreme Court of the Rio Grande do Sul re-instated the Converse Injunction pending completion of the parties' arbitration and ordering, in pertinent part:

. . .

> . . . I uphold the appeal, to grant the advancement of protection sought by the plaintiffs, determining that the <u>defendant [Converse] refrain from practicing any act which violates the contractual right of the plaintiffs specified in the Licensing Agreement signed between the parties.</u>

(Emphasis added) (Lobo Decl. ¶ 7).

Converse then appealed the Converse Injunction again to the remaining judges of this 3d chamber of the Supreme Court of the State of Rio Grande do Sul. (Lobo Decl. ¶ 8).

On April 20, 2005, a three-judge panel of that Court unanimously affirmed in all respects the original Converse Injunction maintaining the validity of the Contract between the parties pending arbitration, as set forth above. (Lobo Decl. ¶¶ 8-9).

Converse did not disclose this key ruling to this Court or to the arbitral tribunal in its Emergency Motion to Preserve Damages and Rationalize Litigation. (Lobo Decl. ¶ 11).[3]

Converse's motion would have this Court overturn that ruling of a foreign court by permitting Converse to take actions directly in violation of the "the contractual right of the

---

[3] Converse's only mention of it is buried at the bottom of the second page of Exhibit I to Exhibit A to Converse's Motion to Preserve Damages and Rationalize Litigation.

- 4 -

plaintiffs specified in the Licensing Agreement signed between the parties," namely by

precluding Alon from receiving its monies from Coopershoes during the arbitration.

### B.     The Coopershoes Injunction

As noted, Alon has its own contract with Coopershoes. Although the Converse

Injunction entitled Alon to receive its payments during the pendency of this arbitration, Converse

evidently, and in violation of the Converse Injunction, asserted that its Contract with Alon was

terminated and demanded that Coopershoes pay Alon's monies directly to Converse. Thus

Coopershoes, which is now cooperating fully with Converse, has refused to pay Alon and, as

discussed below, has "interpleaded" the monies into a Brazilian court instead.

Faced with Converse's breach of the Contract and its interference with Coopershoes, as

well as Coopershoes' collaboration with Converse, Alon filed suit against Coopershoes in the

Eighth Business Court of Rio De Janeiro (*Ottava Vara Empresarial de Comarca Da Capital Do*

*Estado Do Rio De Janeiro*) seeking an order to direct Coopershoes to comply with the terms of

its contract with Alon including paying Alon its royalties. (Lobo Decl. ¶ 18).

By Order dated April 5, 2005, that court issued an injunction in favor of Alon and against

Coopershoes entitling Alon to its payment from Coopershoes pending the outcome of arbitration

("Coopershoes Injunction"). (Lobo Decl. ¶ 18).

The Brazilian court ruled that Coopershoes must:

- cease and desist from taking any acts which are violative of Alon's contractual rights under the agreements signed with Coopershoes;
- cease and desist from acting under any obligation to Converse;
- produce the Converse products solely for Alon and make payment directly to Alon; and
- deliver sales reports and follow up of production directly to Alon.

In the event of non-compliance, Coopershoes faces a daily fine of fifty thousand (50,000)

reals. (Lobo Decl. ¶ 20).

- 5 -

In granting the Coopershoes Injunction, the court recognized that the Supreme Court of Rio Grande do Sul had issued a *status quo* injunction in favor of Alon "that shall remain in effect [for the period in which] arbitration in the United States is pending." The court further recognized that Coopershoes "had assumed the obligation of paying [Alon]," that Coopershoes "continues to produce tennis shoes [using] the brand [names] licensed by [Alon]," and that Coopershoes has not paid Alon its fees "for three consecutive months, [which] endangers [Alon's] economic viability and may require [Alon] to shut down their operations in Brazil." (Lobo Decl. ¶ 21; Coopershoes Injunction pp. 2, 3).

To date, Coopershoes continues to refuse to pay Alon or to perform in accordance with the terms of the parties' contract, even though Alon has continued to work in good faith under the terms of its agreements with both Converse and Coopershoes and in accordance with the Converse Injunction and Coopershoes Injunction.

Given Coopershoes' continuing defiance of the injunction, Alon filed a request in the Eighth Business Court of Rio De Janeiro seeking to compel Coopershoes to comply with the Coopershoes Injunction. (Lobo Decl. ¶ 23).

### C.     Coopershoes' Interpleader

On March 4, 2005, before entry of the Coopershoes Injunction, Coopershoes filed a permissive interpleader action with the Twelfth Civil Court of Porto Alegre to deposit the money it owed Alon into a judicial escrow account. (Lobo Decl. ¶ 12). By Order dated March 10, 2005, the court allowed Coopershoes to deposit money it owed to Alon into a judicial escrow account. (Lobo Decl. ¶ 12).

It is important to note that this deposit was made during the brief window during which Converse improperly set aside the Converse Injunction by obtaining an *ex parte* order from the interim judge while the assigned judge was on vacation. As previously noted, on March 18,

- 6 -

2005, the Supreme Court of Porto Alegre immediately re-issued a *status quo* injunction in favor of Alon ordering the continued validity of the Contract between Alon and Converse pending completion of this arbitration. (Lobo Decl. ¶ 6).

On April 1, 2005, while Converse's appeal of the Converse Injunction was pending, Coopershoes again applied to the Twelfth Civil Court of Porto Alegre for permission to make a second deposit of royalties owed to Alon into a judicial escrow account. (Lobo Decl. ¶ 14). By Order dated April 4, 2005, that court, despite the decision by the Judge of the 3d Chamber of Supreme Court of Rio Grande do Sul ordering the continued observance of the Contract, again allowed Coopershoes to deposit funds owed to Alon into a judicial escrow account. (Lobo Decl. ¶ 14). The second interpleader deposit was allowed before entry of the Coopershoes Injunction and before the full 3-Judge panel of the 3d chamber of the Supreme Court of the State of Rio Grande do Sul affirmed the decision of the single Judge. (Lobo Decl. ¶ 15).[4]

On or about May 20, 2005, the interpleader court held that Coopershoes should no longer deposit any more monies in the interpleader account and Coopershoes should abide by the decision of the Rio Court, which enjoined Coopershoes and directed it to comply with its contract with Alon.

As this memorandum was being prepared, Alon learned from Converse's American counsel that yesterday Coopershoes, almost certainly in collaboration with Converse, appealed the interpleader court's May 20, 2005, order prohibiting future deposits to the State Supreme Court Judge in Porte Alegre. Alon further is informed that yesterday the State Supreme Court

---

[4] As recently as May 6, 2005, Coopershoes, again *ex parte* and without permission, deposited additional royalty payments owed to Alon in the interpleader court. The amount of Alon's royalties unlawfully deposited into the interpleader court now total approximately $1,600,000.00 as of May 16, 2005.

Judge suspended the effect of the May 20, 2005 order pending a decision on the merits by the three-judge panel of the State Supreme Court.[5]

**Even with the suspension of the May 20, 2005 decision, there is no court anywhere presently authorizing Coopershoes to do anything other than perform its contract with Alon (and therefore pay Alon), the Rio trial court expressly orders Coopershoes to perform its contract with Alon and directly pay Alon, and three courts order Converse to abide by its Contract with Alon and not interfere with its Coopershoes contract (two in Brazil and one in Argentina).[6]**

## IV.     The History of This Litigation

Despite these facts, Converse seeks to have this Court intervene in the decisions of the Brazilian courts and to direct that the monies due Alon may be interpleaded, and permit Converse, under this Court's sanction, to defy the Brazilian injunctions requiring it to respect Alon's contracts with it and Coopershoes. These are decisions that are properly left to the courts of Brazil.

As the following procedural history of this American litigation between Alon and Converse shows, this motion is Converse's **fifth** motion for an **anti-suit injunction**.[7] As set forth above, Alon has obtained several injunctions in Brazil and Argentina to preserve the *status quo* between the parties by allowing Alon to continue as Converse's distributor in these countries pending arbitration of the dispute as to whether Converse improperly terminated Alon. Based on the number of anti-suit injunction motions which Converse has filed in this Court, it is evident

---

[5] Alon's counsel has not yet seen a copy of the order purported issued yesterday. Alon suspects that Coopershoes relied on Converse's erroneous letter interpretation of Judge Tauro's Status Quo Order, as set forth above, to assist Coopershoes in suspending the May 20th order. Alon has requested a copy of the Coopershoes' filings in that case and will submit relevant pleadings to this Court as soon as it receives them.
[6] The Court in Argentina issued an injunction against Converse. However, as Converse has succeeded in shutting off most of Alon's cash flow, Alon was unable to post the bond required to sustain the injunction and the injunction in Argentina lapsed.
[7] Converse addressed one of the five motions to the Arbitrator but then sought essentially the same relief from this Court.

that Converse's only purpose in commencing and maintaining this action has been to use it as a means for attempting to negate court rulings in other countries.

### A.     First Motion for Anti-Suit Injunction

On December 21, 2004, Converse filed in this Court a so-called "Application for Ex Parte Temporary Restraining Order" under Rule 65 of the Federal Rules of Civil Procedure, requesting, among other things, that Alon immediately "dismiss with prejudice actions []  pending" in Brazil and Argentina.  By naming it an "Ex Parte Temporary Restraining Order" Converse sought apparently to lead the Court into applying the lesser injunction standard applicable to Rule 65 motions, as opposed to the much higher standard applicable to anti-suit injunctions, as adopted by the First Circuit Court of Appeals in Quaak v. Klynveld Peat Marwick Goerdeler Bedrufsrevisoren, 361 F.3d 11, 89 (1st Cir. 2004) (foreign anti-suit injunctions are to be issued sparingly and only in the rarest of cases).

By Order dated January 13, 2005, this Court properly construed Converse's "application for a temporary restraining order pursuant to Fed. R. Civ. P. 65(b)" "as a request for an anti-suit injunction."  In denying Converse relief, the Court held that anti-suit injunctions "raise considerations of international comity. . . a doctrine that counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of comity."  The Court's reasoning was instructive:

> Here, the foreign courts maintained the status quo pending the arbitration . . .
> These foreign injunctions pending arbitration are not only reasonable, but also
> consistent with the strong policy in favor of resolving disputes via arbitration.
>
> In light of the fact that Converse has failed to demonstrate the likelihood of
> success, irreparable harm, or harm to third-party entities, and in light of the
> principles of international comity, I DENY the application for an anti-suit
> injunction.

## B.    Second Motion for Anti-Suit Injunction

Undeterred, on May 3, 2005, Converse filed in the Arbitration an "Emergency Motion for An Expedited Decision on a Preliminary Injunction" against Alon, as well as a so-called "Motion to Preserve its Damages Remedy and Rationalize Litigation" (collectively, "Arbitration Motion for Anti-Suit Injunction"). This motion to the arbitrator sought essentially the same relief which this Court had denied by its Order of January 13, 2005. On May 5, 2005, Arbitrator Theroux, who since has been removed due to a conflict of interest,[8] gave Alon only 24 hours to respond to Converse's emergency request. With both of Alon's primary counsel traveling in Europe, Alon protested to Arbitrator Theroux that 24 hours did not provide Alon with an adequate opportunity to analyze Converse's papers and respond meaningfully. On May 6, 2005, without any briefing on the merits of Converse's request, and without allowing oral argument, Arbitrator Theroux

---

[8] The ICDR removed Arbitrator Theroux because he had a substantial conflict of interest. On May 20, 2005, Alon wrote to Mr. Theroux to inquire about a conflict of interest based on information Alon learned that Theroux's law firm represented Converse's 100% owner, Nike. While Converse has sought to minimize the fact that it failed to disclose the obvious conflict to Alon early in the case, Arbitrator Theroux confirmed that his law firm represents Nike at multiple offices throughout the world. Arbitrator Theroux stated:

> Mindful of my obligation as an arbitrator for absolute impartiality, and my duty to ensure that no circumstances exist that could create or contribute to any appearance of a want of impartiality on my part, I do very much understand and appreciate the concerns of your client, Alon International, S.A., the Claimant in this arbitration, over the fact that **Nike, Inc., the parent company of the Respondent Converse, Inc. in this arbitration, is a client of Baker & McKenzie.**

Incredibly, Converse sought to retain Arbitrator Theroux by arguing to the ICDR that Mr. Theroux was a "retired partner." Converse's efforts to distance Mr. Theroux from Baker & McKenzie were groundless. The Baker & McKenzie website describes Mr. Theroux:

> Mr. Theroux **is actively involved** on behalf of Baker & McKenzie clients in projects in China, India and Russia. He opened Baker & McKenzie's Beijing Office (1980-1) and the Firm's Shanghai Office (1985). He was instrumental in the establishment of Baker & McKenzie's Moscow office, and **is involved with the Firm's plans for offices in India**.

Also:

> Eugene Theroux **specializes** in international commercial transactions. During his 32 years with Baker & McKenzie, Mr. Theroux **has devoted** much of his practice to the People's Republic of China, the Russian Federation and India. He **has represented** American companies in China, on a wide variety of transactions and investments, since his first visit there in 1972.

(Emphasis added.)

- 10 -

granted Converse's request, signed the order drafted by Converse, and restrained Alon from

terminating Coopershoes.  Arbitrator Theroux's May 6, 2005 Order enjoined Alon from

terminating Coopershoes even though:

- Converse misrepresented the facts;
- Alon had no opportunity to contest Converse's factual allegations;
- Converse was under a Brazil court injunction not to interfere with Alon's contract with Coopershoes;
- Coopershoes is not a party to the Arbitration;
- Coopershoes was breaching its obligations to Alon under its contract;
- Coopershoes was under a Brazil court injunction to perform its contract with Alon but was defying that injunction; and
- Converse simultaneously was trying to prohibit Alon from <u>terminating</u> Coopershoes, while at the same time trying to stop Alon from <u>collecting</u> payments from Coopershoes under the same Coopershoes contract.

Despite its disguised title (to "preserve damages and rationalize litigation"), the Second

Motion for Anti-Suit Injunction essentially was a request by Converse for the same type of

anti-suit injunction against the courts of Brazil and Argentina that this Court already had denied.

By asking Arbitrator Theroux to "supercede" the "interim final orders" of the foreign tribunals,

the motion sought to allow Converse to "work with Coopershoes under a license agreement"

(which could happen only in contravention of the foreign court orders), and prohibit Alon from

terminating Coopershoes, engaging another manufacturer or receiving payments from

Coopershoes (which Brazilian court orders permitted).  Thus, the Second Motion for Anti-Suit

Injunction actually sought to have the Arbitrator interfere with the jurisdiction and rulings of the

Brazilian courts, enjoin Alon from proceeding with the lawsuits in Brazil, and in particular

prevent Alon from enforcing its rights under the Brazilian injunctions against Converse and

Coopershoes.  The May 6, 2005 Order, in essence a short term anti-suit injunction, was supposed

to expire on May 24th, the day that the Arbitrator was scheduled to consider Converse's Second Motion for Anti-Suit Injunction on its merits. That never happened.

On May 24, 2005, before the scheduled hearing, the ICDR recognized the clear conflict of interest of Arbitrator Theroux and removed him, leaving the status of his May 6, 2005 Order uncertain. With the Order set to expire on May 24, Converse sought to enforce the Order in this Court, even though on its face it was a temporary, provisional, non-final order that Converse had obtained without a hearing from a disqualified arbitrator.

## C.     Third Motion for Anti-Suit Injunction

On the evening of May 25, 2005, the day following Mr. Theroux's removal, Converse filed a motion in this Court seeking – on an emergency basis – another anti-suit injunction (again disguised as one to preserve Converse's damages remedy) that in effect would abrogate the orders of several Brazilian courts. Called "Converse's Emergency Motion to Protect Arbitrator Authority to Preserve Converse's Damages Remedy," this motion sought to:

- override a direct order of a Brazilian court ordering Converse to perform the terms of its Contract with Alon during the pendency of the arbitration;

- override a direct order of a Brazilian court ordering it not to interfere with Alon's contract with a third party in Brazil, Coopershoes, during the pendency of the arbitration;

- obtain an anti-suit injunction previously denied by this Court (on the grounds that "These [Brazilian] foreign injunctions pending arbitration are not only reasonable, but also consistent with the strong policy in favor of resolving disputes pending arbitration");

- obtain an anti-suit injunction to enjoin Alon from prosecuting litigation against a third party (Coopershoes) under a contract to which Converse is not a party;

- essentially countermand a ruling of a Brazilian court that has rejected a third party's (Coopershoes') efforts to "interplead" monies; and

- deprive Alon of its source of funds needed to pay its operating expenses, including its taxes under Brazilian law, all as part of a broader litigation strategy to strangle Alon into submission.

- 12 -

Due to the unavailability of Judge Saris during the week of May 23, 2005, Converse sought to have its third motion for anti-suit injunction heard before Judge Tauro at 9:00 a.m. on the following morning – May 26 – again giving Alon mere hours to respond. Alon worked through the night of May 25 and filed a memorandum of law in opposition to Converse's Third Motion for Anti-Suit Injunction by approximately noon on May 26. As explained by Alon in its memorandum in opposition to that third motion, Converse did not and could not meet the stringent standard for obtaining an anti-suit injunction against the courts of Brazil.

### D.    Fourth Motion for Anti-Suit Injunction

On the morning of May 26, 2005, Converse filed another emergency motion entitled "Emergency Motion to Enforce the Interim Final Arbitration Order Pending Appointment and Decision by New Arbitrator." This motion sought to uphold Arbitrator Theroux's May 6, 2005 provisional anti-suit injunction. In this motion Converse admitted for the first time that the relief it obtained from the Arbitrator was an anti-suit injunction.

While Alon was preparing its formal response to Converse's fourth motion for anti-suit injunction, Judge Tauro entered the "Status Quo Order" at approximately 1:00 p.m. on May 27, 2005. Judge Tauro was aware that Judge Saris, to whom this case had been assigned last year, was returning to the Court the following business day. The Order provided as follows: "The Parties shall maintain the *status quo* with respect to all aspects of this case until Judge Saris returns, or further order of this Court."

Converse immediately put its own spin on Judge Tauro's Order and disingenuously advised Alon, the ICDR, and Coopershoes that Judge Tauro had held the following:

1. Alon is barred from interfering with or filing any action in the interpleader action in Brazil in connection with the Coopershoes' royalty payments that were paid into the interpleader until today's date "until Judge Saris returns, or further order of this court";

- 13 -

2. Alon is barred from receiving any future royalty payments "until Judge Saris returns, or further order of this court"; and

3. Alon is barred from violating the Arbitration Order executed by Mr. Theroux which prohibits Alon form terminating Coopershoes and/or appointing an alternative manufacturer, distributor or sublicensee, or threatening Coopershoes with any of these acts.

Incredibly, Converse wrote that Judge Tauro's one sentence order "beyond all doubt" includes these conditions. (Copies of Converse's correspondence to Alon and Coopershoes are attached as Exhibits "A" and "B" hereto.) As a result of Converse's legally unsupported interpretation of Judge Tauro's stop-gap order, Alon requested late on May 27, 2005, that this Court schedule a prompt hearing to resolve the situation with respect to foreign court orders affecting the parties.

## E.    Fifth Motion for Anti-Suit Injunction

On May 31, 2005, Converse filed its fifth emergency motion for an anti-suit injunction disguised as an "Emergency Motion to Continue Status Quo Order, Clarify That Status Quo Order Does Not Stay Arbitration, And Compel Alon to Participate in Arbitration." With this motion, Converse seeks an order: (1) clarifying that the Status Quo Order is not a stay of the arbitration;[9] and (2) protecting the ability of the new arbitrator to decide the Arbitration Order by continuing the Status Quo Order until the new arbitrator rules on the Arbitration Motion.

Thus, Converse's fifth motion in effect attempts to convert Judge Tauro's bridge order (designed to last only until Judge Saris' return) into a longer and more substantive order granting Converse an anti-suit injunction. Converse is repeating the ploy it utilized with Judge Tauro, when it sought to convert the Arbitrator's short term order (designed to last only until May 24, 2005) into a longer and stronger order.

---

[9] Alon confirmed to ICDR that the Order does not stay the arbitration (See Exhibit C attached hereto). Converse has now advised Alon that Converse has withdrawn this first request.

As shown below, Judge Tauro could not have intended such a result as Converse has not and cannot meet the standard for obtaining an anti-suit injunction under the law. Rather, at most, it appears Judge Tauro merely wanted the parties to leave everything in place pending Judge Saris' availability. At the moment immediately before Judge Tauro entered his order, Alon was entitled to receive royalty payments from Coopershoes pursuant to the decision of the national courts of Brazil. Converse since has asserted that preserving the *status quo* actually meant eliminating Alon's existing entitlement to payments.

At bottom, the issue raised by **all** of Converse's motions is the same. Multiple courts in Brazil and Argentina, after evaluating the facts, have ruled that the Contract between the parties should be honored while Alon and Converse are arbitrating their dispute over Converse's attempted termination of the Contract, and specifically that Alon is entitled to collect the sales proceeds from its shoe sales during the arbitration. Through its many motions Converse is asking this Court to overturn those Court rulings and hold that instead of Alon being paid for its performance under the contract pending arbitration, the payments for Alon's performance should be held in escrow.

For reasons set forth below, Converse's motions must be denied.

## V.    ARGUMENT

### A.    Applicable Law

Each of Converse's five "emergency" motions seeks an anti-suit injunction. Although Converse's first motion sought a temporary restraining order under Rules 65, this Court properly construed it as an anti-suit injunction because it sought to interfere with and enjoin Alon's participation in foreign status quo proceedings. Converse then sought essentially the same relief before Arbitrator Theroux who, instead of deciding the motion on its merits, entered a preliminary anti-suit injunction pending the May 24, 2005 hearing, which never took place. In

- 15 -

addition, Converse's three emergency motions filed in the past week with this Court, two before Judge Tauro and the one filed today, all seek essentially to interfere with decisions of foreign tribunals.

As demonstrated below, all of Converse's pending motions should be denied for the same reason: Converse has failed to meet the standard for obtaining an anti-suit injunction under prevailing law. Similarly, to the extent that Converse has "interpreted" Judge Tauro's order as granting an anti-suit injunction, this Court should clarify that it does not.

**B.    This Court Should Grant Comity to the Decisions of The National Courts of Brazil.**

As noted, the injunctions sought by Converse would directly conflict with national court orders of Brazil. The equitable principles of *res judicata*, collateral estoppel, and international comity all are relevant as a result of the extensive procedural history of this dispute in foreign tribunals and should properly be considered. See e.g., Telephone Workers Union of New Jersey, Local 827, International Brotherhood of Electrical Workers v. New Jersey Bell Tel. Co., 584 F.2d 31, 33 (3d Cir.1978). While *res judicata* in the context of international law does not operate in the "rigid" sense as it does to domestic judgments, the equitable principles underlying the doctrine are nonetheless applicable to the consideration of granting comity.

This Court has held that "[i]nternational comity is a doctrine that counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." Goldhammer v. Dunkin' Donuts, Inc., 59 F. Supp. 2d 248, 251 (D.Mass. 1999) (Saris, J.).

Courts generally evaluate three factors in determining whether to grant international comity: "(1) whether the foreign court was competent and used 'proceedings consistent with civilized jurisprudence,' (2) whether the judgment was rendered by fraud, and (3) whether the

- 16 -

foreign judgment was prejudicial because it violated American public policy notions of what is decent and just." See e.g., Ungaro-Benages v. Dresdner Bank AG, 379 F.3d 1227, 1238 (11th Cir. 2004).

In its various motions, Converse has not and cannot establish any one factor as grounds why this Court should refuse to grant comity to the decisions of the Brazilian courts. Converse does not allege that the courts of Brazil lacked competence to enter the injunctions at issue. Nor can it because Converse obtained complete due process throughout the proceedings of the Converse Injunction, which were devoid of any fraud or impropriety whatsoever. Moreover, Converse cannot establish that the foreign injunctions were prejudicial and violated American policy. Indeed, this Court, after studying the Brazilian injunctions on Converse's temporary restraining order under Rule 65 held; "[t]hese foreign injunctions pending arbitration are not only reasonable, but also consistent with the strong policy in favor of resolving disputes via arbitration."

The Brazilian injunctions should not be disturbed or abrogated in any manner. The injunctions and relief sought by Converse here in its various forms would directly undermine and contravene such orders.

## C.   Converse Has Failed to Meet Its Burden Of Proof To Obtain A Foreign Anti-Suit Injunction And, Therefore, Its Motion Must Be Denied.

The relief that Converse seeks in various forms is admittedly an anti-suit injunction, Converse previously sought an order in this Court enjoining Alon from participating in the foreign proceedings and, once the foreign injunctions issued, requiring it to dismiss them with prejudice. (Application for *Ex Parte* Restraining Order, pp. 1,5; Reply in support thereof [pp. 2, 15-20]). Although Converse is trying to give its various motions different names, they are not very distinct because the relief they ultimately seek invariably seeks to prevent Alon from

- 17 -

pursuing foreign court decisions. For example, by asking this Court to "restrain[] and enjoin[] [Alon] from filing or seeking any further order(s) from the [Brazil court] to obtain any of the funds deposited in an interpleader-type action pending before the [Brazil] Civil Court . . .," and "order that Alon . . . deposit those funds" into a registry of this Court or the AAA, Converse actually is seeking to have this Court issue a countermanding order that would invade the jurisdiction of the Brazilian courts and their rulings and orders and that would enjoin Alon from enforcing its rights under the Converse and Coopershoes Injunctions.

An anti-suit injunction "is an instrument by which a court of one jurisdiction seeks to restrain the conduct of litigation in another jurisdiction" and to "affect the course and significance of litigation abroad."[10] As the D.C. Circuit in the seminal case of Laker Airways explained:

> [T]he central precept of comity teaches that, when possible, the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations. The interests of both forums are advanced – the foreign court because its laws and policies have been vindicated; the domestic country because international cooperation and ties have been strengthened. The rule of law is also encouraged, which benefits all nations.

731 F.2d at 937; see also Goldhammer v. Dunkin' Donuts, Inc., 59 F. Supp. 2d at 251 (D.Mass. 1999) (Saris, J.) ("International comity is a doctrine that counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law"); and also Compagnie des Bauxites de Guinea v. Insurance Co. of N. America, 651 F.2d 877, 887 (3d Cir. 1981) (noting presumption against issuance of anti-suit injunction because there is "no difference between addressing an injunction to the parties and addressing it to the foreign court itself"); Stonington

---

[10] George A. Berman, The Use of Anti-suit Injunctions in International Litigation,, 28 Colum. J. Transnat'l L. 589, 590 (1990).

US1DOCS 5134049v1

<u>Partners, Inc. v. Lernout & Hauspie Speech Products, N.V.</u>, 310 F.3d 118, 125 (3d Cir. 2002) ("enjoining a party from resorting to a foreign court is equivalent to enjoining foreign proceedings").

The First Circuit in <u>Quaak v. Klynveld Peat Marwick Goerdeler Bedrufsrevisoren</u>, 361 F.3d 11, 19 (1st Cir. 2004), recently enunciated a clear test for the issuance of an international anti-suit injunction. <u>*Only after a threshold showing that the parties and issues are the same*</u>, can a court proceed to consider the issuance of an anti-suit injunction. Once the movant makes the threshold showing, the court should consider all of the facts and circumstances in determining whether an injunction is proper. <u>Id.</u>

In this analysis, there exists a presumption <u>against</u> the issuance of an order that has an effect on a foreign judicial proceeding or judgment. <u>Id.</u>  Considerations of international comity are to be given substantial weight. <u>Id.</u>  Comity thus dictates that foreign anti-suit injunctions be issued sparingly and only in the rarest of cases. <u>Id.</u>; <u>see also</u> <u>Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc.</u>, 412 F.2d 577, 578 (1st Cir.1969) ("[r]estraining a party from pursuing an action in a court of foreign jurisdiction involves delicate questions of comity and therefore 'requires that such action be taken only with care and great restraint"); <u>Laker Airways</u>, 731 F.2d at 927.[11]

This presumption may only be rebutted by the facts particular to each case, such as, for instance, the nature of the two actions (i.e. whether they are merely parallel or whether the foreign action is more properly classified as interdictory), the posture of the proceedings in the two countries, the conduct of the parties (including their good faith), the importance of the policies at stake in the litigation, and the extent to which the foreign action has the potential to

---

[11] <u>See</u> <u>also</u> <u>China Trade & Dev. Co. v. M.V. Choong Yong</u>, 837 F.2d 33, 35-36 (2d Cir. 1987) ("anti-foreign-suit injunction should be 'used sparingly', and should be granted 'only with care and great restraint'"); <u>Stonington Partners, Inc</u>, 310 F.3d at 125-126 ("The power to enjoin a foreign action should be exercised only in rare cases, and must be premised on a thorough analysis of the interests at stake").

undermine the forum court's ability to reach a just and speedy result. Quaak, 361 F.3d at 19.

Converse has not – and cannot – meet the rigorous Quaak threshold and secondary requirements for a foreign anti-suit injunction.

### D.     Converse Cannot Meet the Threshold Showing of the Same Parties and Issues.

As noted above, Converse is avoiding participation in the Coopershoes interpleader, despite being a party and in constant direct contact with the plaintiff in that case, Coopershoes.[12]

On that account alone, Converse's petition fails since there in no identity between this action and the parties that are parties to the interpleader action that Converse is trying to enjoin. Under the applicable law, the Court may not enjoin that Brazil interpleader litigation (that is, enter an Order prohibiting Alon from petitioning the Brazil court for relief).

As the First Circuit held in Quaak, "unless [the parallel suits involve the same parties and issues], courts ordinarily should go no further and refuse issuance of an international anti-suit injunction. Quaak, 361 F.3d at 18 (internal citations omitted). "If—and only if – this threshold condition is satisfied should the court proceed to consider all the facts and circumstances in order to decide whether an injunction is proper." Id. Because Converse cannot show the identity of parties, this Court's inquiry ends and Converse's motion for anti-suit injunction must be denied.

### E.     Converse Cannot Establish Sufficient Other Facts That Overcome the Presumption Mandating Deference to the National Courts of Brazil.

Beyond that, Converse cannot establish the sufficient other facts and circumstances required by Quaak to overcome the presumption against the issuance of an order that has the effect of undermining a foreign judicial order or judgment.

#### 1.     The Foreign Injunctions Do Not Interfere With the Jurisdiction of the Tribunal.

---

[12] In fact, Converse and Coopershoes have entered into a Manufacturing, Licensing, and Distribution Agreement dated December 16, 2004, which remains in violation of the Converse Injunction in Brazil.

- 20 -

When a foreign court has not attempted to interfere in a proceeding before a domestic tribunal or sought to prevent the domestic tribunal from exercising its jurisdiction over the case, an anti-suit injunction should not be issued. See e.g. Quaak, 361 F.3d at 17 (citing Laker Airways, 731 F.2d at 926-27); China Trade, 837 F.2d at 37 (international anti-suit injunction was not justified where the foreign litigation did not threaten the domestic court's jurisdiction). In accordance with the "fundamental corollary" to the principle of concurrent jurisdiction stated in Laker Airways: "parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." Laker Airways, 731 F.2d at 926-27.

The Brazil interpleader does not interfere with this Court's or the arbitrator's jurisdiction to decide the merits of the claims brought before it, nor the relief that the arbitrator can grant (an award for damages, specific performance, etc.). The Brazilian courts have expressly declared that the injunctions remain in place (and therefore that the payments should be made to Alon) only during the pendency of the arbitration. Such rulings in no way impede the effectiveness of this arbitrator's ultimate ruling on the merits.

Thus, Alon does not seek to "hijack" the arbitrator's jurisdiction or authority over this dispute. To the contrary, Alon addresses a wholeheartedly to the arbitral process, as it is Alon that initiated arbitration. Here, the purpose for initiating the injunctions in Brazil was to preserve the status quo and contractual rights of the parties pending the outcome of arbitration and to provide the Court with the opportunity to render a meaningful arbitral award. Again, both Brazilian injunctions declare that the agreements signed between Alon and Converse and Coopershoes should be observed until the outcome of this Arbitration.

In contrast, if this Court were to grant the anti-suit injunctions sought by Converse, even on a temporary basis, it would be a direct interference with the jurisdiction of the Brazilian courts that have ruled that Alon is entitled to have the two contracts honored during the arbitration and not to have the money interpleaded, but rather paid directly to Alon. The relief requested by Converse is in direct contravention of such orders.[13]

> **2.    The Brazilian Injunctions Promote, Not Undermine, the Strong Federal Public Policy In Favor Of Arbitration.**

The Brazilian injunctions, which are the basis of the Brazilian order that Converse is attacking here denying Coopershoes' petition to interplead its payment to Alon, are *status quo* injunctions that promote the strong public policy favoring arbitration because the District Court already has considered the injunctions and held that they do. Order p. 2 (**"These [Brazilian] foreign injunctions pending arbitration are not only reasonable, but also consistent with the strong policy in favor of resolving disputes pending arbitration"**) (emphasis added).

> **F.    Pursuant To The Contract, The Law, And Common Sense *Status Quo* Means That The Contract Remains In Effect and Both Converse and Alon Are Entitled to Payments Earned Under the Agreement.**

There is no "irreparable" harm to Converse if Alon is paid the monies that Coopershoes owes it. Converse's only claimed risk is that if it ultimately wins the arbitration, then Alon will be unable to pay back that amount.

The inability to collect a money judgment does not constitute irreparable harm under the law. A damages remedy is not rendered inadequate because of the ultimate uncollectability of the judgment. See e.g. CVD, Inc. v. Raytheon Co., 1981 WL 2162, 2 (D.Mass. 1981) (denying defendant's request for an order authorizing the deposit of amounts due under the licensing

---

[13] The AAA/ICDR's International Rules expressly contemplate that parties shall be free to seek relief from courts during the pendency of an arbitration and that such relief is in no way in violation of an arbitral agreement: "A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." Article 21(3).

- 22 -

agreement into an escrow account to collect upon any judgment rendered in their favor and holding: "the mere possibility that defendant will not be able to collect a judgment is not the type of irreparable harm required by Rule 65 to support an injunction").

Second, Converse's premise assumes that if Converse wins the arbitration ultimately and the arbitrator orders that the Contract between Converse and Alon is terminated as of December 31, 2004, Alon would be required to disgorge the monies it earned for its performance under the agreement during the pendency of the arbitration. This argument is a red-herring. Alon has been granted the right under the Brazilian court decisions to have that Contract observed during the pendency of the arbitration, and Converse is receiving the benefit of Alon's performance; namely shoe sales, (and increasing shoe sales at that): As such, Converse never will be entitled to Alon's pro rata share of these monies.

By obstructing Alon's right to the monies, Alon is being thwarted by Converse from performing further, and is has long been the law that a party cannot prevent another from rendering its performance and then complain that it breached. See United States v. Peck, 102 U.S. 64 (1880) (where defendant is prevented from performing his part of the contract by the conduct of plaintiff, the other party to the contract, the former cannot be held liable for its nonperformance); Amoco Oil Co. v. Gomez, 125 F. Supp. 2d 492, 498 (S.D. Fla. 2000) ("[h]e who prevents a thing being done cannot avail himself of the nonperformance which he has occasioned."); Nitram, Inc. v. Cretan Life, 599 F.2d 1359, 1371 (5th Cir. 1979) ("If one party to a contract prevents or makes impossible performance by the other party, the latter's failure to perform will be excused and the offending party will not be permitted to recover damages for nonperformance").

- 23 -

G.    **The Law Supports Maintaining the *Status Quo* Pending the Outcome of Arbitration As Defined by the Brazilian Courts.**

Converse claims that "*status quo*" actually means preserving Converse's damages remedy by requiring Alon to deposit into an escrow or registry monies that Coopershoes has been paying Alon for three years. This argument makes no sense. As multiple courts have ruled in this case, *status quo* means "the 'last peaceable uncontested status existing between the parties before the dispute developed." Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 961 (D.C. Cir. 2005); American Hospital Ass'n v. Harris, 625 F.2d 1328, 1332 (7th Cir. 1980) ("the *status quo* is considered to be the last uncontested status, which preceded the lawsuit"); Matos ex rel. Matos v. Clinton School Dist., 367 F.3d 68, 72 (1st cir. 2004) (defining status quo as "freezing an existing situation"); Doe v. Weld, 954 F. Supp. 425, 429 (D. Mass. 1996) (Saris, J.) (same).

Converse cannot dispute that the last peaceable, uncontested moment between Converse and Alon was November 29, 2004, the day before Converse attempted to wrongfully terminate the Contract and alleged pre-textual grounds for termination. At that moment, Alon was receiving its payments from Coopershoes and paying Converse its share of those proceeds.

The same is true for the period preceding Judge Tauro's order. The status of the parties immediately before Judge Tauro entered his Status Quo Order was as follows: the interpleader court in Porto Alegre had ordered that Coopershoes could no longer deposit Alon's funds into the registry of the Court and pursuant to the Coopershoes' Injunction those funds had to be paid **directly** to Alon.

The bottom line here is that Converse will equate the *status quo* with whatever is advantageous to Converse at any given time. That is why Alon requests this Court to direct that the *status quo* order is vacated as moot and specify that Alon is entitled to have the Contract remain in place pending arbitration as the Brazilian courts have directed.

- 24 -

## CONCLUSION

It is important to bear in mind that Converse is seeking to have this Court *take away* a right that Alon already has been granted by several courts of law – to be paid the monies due from Coopershoes – and to *alter* the status quo in a manner inconsistent with a prior decision of this Court, the courts of Brazil, and common sense.

In conclusion, the Court should vacate Judge Tauro's May 27, 2005 order as moot, deny Converse's three pending motions for an anti-suit injunction, decline to interfere with litigation involving the parties in Brazil and state that the Contract remains in place pursuant to Brazilian court orders.

Respectfully submitted,

ASTIGARRAGA DAVIS
Jose I. Astigarraga
Edward H. Davis, Jr. (admitted pro hac vice);
Paul A. Capua
M. Cristina Cárdenas
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

*Counsel for Defendant Alon International, S.A.*

/s/ Richard A. Johnston
WILMER CUTLER PICKERING
HALE AND DORR, LLP
Richard A. Johnston, BBO #253420
Cynthia D. Vreeland, BBO #635143
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (305) 372-8202

*Counsel for Defendant Alon International, S.A.*

- 25 -

# EXHIBIT "A"

# PEPE&HAZARD LLP

### A BUSINESS LAW FIRM

225 FRANKLIN STREET, 16TH FLOOR
BOSTON, MASSACHUSETTS 02110-2804
617.748.5500 FACSIMILE: 617.748.5555

May 27, 2005

### Via Facsimile

Richard A. Johnston, Esq
Wilmer Cutler Pickering Hale and Door
60 State Street
Boston, Massachusetts 02109

Jose I. Astigarraga, Esq.
Astigarraga Davis
701 Brickell Avenue
Miami, Florida 33131-2847

Dear Messrs. Johnston and Astigarraga,

We are receipt of the Order of Judge Tauro, dated May 27, 2005, of the United States District Court for the District of Massachusetts directing the parties to "maintain the status quo with respect to all aspects of this case until Judge Saris returns, or further order of this court." We would like to make clear that Converse understands this Order to effectuate three conditions:

1. Alon is barred from interfering with or filing any action in the interpleader action in Brazil in connection with Coopershoes' royalty payments that were paid into the interpleader until today's date "until Judge Saris returns, or further order of this court";

2. Alon is barred from receiving any future royalty payments "until Judge Saris returns, or further order of this court"; and

3. Alon is barred from violating the Arbitration Order executed by Mr. Theroux which prohibits Alon from terminating Coopershoes and/or appointing an alternative manufacturer, distributor or sublicensee, or threatening Coopershoes with any of these acts.

It is beyond all doubt that the *status quo* includes the conditions as articulated in points 1, 2 and 3. Any attempt to violate these conditions will result in Alon's contempt of the Court Order and Converse will seek the enforcement of this Order if necessary.

PEPE&HAZARD LLP

We anticipate your cooperation in maintaining the *status quo* as ordered.

Sincerely,

Michael C. Gilleran,
Counsel for Converse Inc.

# EXHIBIT "B"

**From:** Gringo [mailto:gringo@coopershoes.com.br]
**Sent:** Friday, May 27, 2005 11:52 AM
**To:** R Durchfort; rs@alonainternational.com
**Cc:** paulo@coopershoes.com.br; Adriano Martins
**Subject:** Pagamentos

Prezados Ronald e Roberto,

Como é de conhecimento de V.Sas., segundo ordem proferida pelo Juízo da 12ª Vara Cível de
Porto Alegre, nos autos da ação consignatória nº 552267349-3, a Coopershoes deve cessar a
continuidade de depósitos consignatórios feitos naquela ação e passar a efetuar pagamentos de
royalties diretamente a V.Sas..

Ocorre que, nesta data, fomos informados pela Converse de que existe decisão liminar nos EUA
impedindo V.Sas. de receber pagamentos diretos de royalties e determinando a manutenção do
*status quo*, em que os pagamentos da Coopershoes eram feitos em juízo.

Nesse sentido, considerando que no próximo dia 30 vence parcela de pagamento de royalties,
gostaríamos que V.Sas. nos confirmassem ainda hoje como devemos proceder a respeito,
especificando se devemos, ou não, efetuar o pagamento diretamente a V.Sas..

Aguardamos seu retorno a respeito.

Atenciosamente,
Coopershoes
Gringo

---

**From:** Gringo [mailto:gringo@coopershoes.com.br]
**Sent:** Friday, May 27, 2005 11:52 AM
**To:** R Durchfort; rs@alonainternational.com
**Cc:** paulo@coopershoes.com.br; Adriano Martins
**Subject:** Pagamentos

Dear Ronald and Roberto,

It occurs that, on this date, we were informed by Converse that an injunction exists in the US
impeding you to receive direct payments from royalties and determining the maintenance of the
status quo, in which the payments of Coopershoes were made in the judicial account.

In this regard, considering that the next 30th is the due date for the royalty payment we would
like that you confirm to us still today how we must proceed specifying if we must or not   make
the payment directly the you.

We wait your answer in this regard.

Sincerely,
Coopershoes
Gringo

**From:** Gringo [mailto:gringo@coopershoes.com.br]
**Sent:** Friday, May 27, 2005 2:41 PM
**To:** R Durchfort; Adriano Martins; paulo@coopershoes.com.br
**Cc:** rs@alonainternational.com; R Durchfort
**Subject:** Re: Pagamentos

Ronald, boa tarde.

A informação que recebi foi verbal, dos advogados brasileiros da Converse ( Demarest e Almeida ). Disseram que foi " concedida uma liminar nos E U A , determinando que as partes mantivessem o *status quo*, não fazendo qualquer alteração quanto ao pagamento de royalties em Juízo".
Gostaria que me confirmasse sobre este assunto.
Um grande abraço
Gringo

**From:** Gringo [mailto:gringo@coopershoes.com.br]
**Sent:** Friday, May 27, 2005 2:41 PM
**To:** R Durchfort; Adriano Martins; paulo@coopershoes.com.br
**Cc:** rs@alonainternational.com; R Durchfort
**Subject:** Re: Pagamentos

Ronald, good afternoon.

The information I received was verbal from Converse's Brazilian lawyers (Demarest and Almeida). They said that "an injunction was issued in the U.S. determining that the parties maintain *status quo*, not making any alteration regarding the payment of royalties to the Court". I would like that you confirmed this issue.
Warm regards,
Gringo

# EXHIBIT "C"

**Cristina Cardenas**

| | |
|---|---|
| **From:** | Jose Astigarraga |
| **Sent:** | Monday, May 30, 2005 5:00 PM |
| **To:** | 'Karen Ponce' |
| **Cc:** | 'Gilleran, Michael'; Cristina Cardenas; Edward Davis; Paul Capua; 'Parise, Christine N.' |
| **Subject:** | RE: Alon International, S.A. v. Converse, Inc: (Arbitration # 50 133 T 00579 04) |

Dear Ms. Ponce:

By email of Friday's date, you asked the Claimant Alon to comment on the communication of earlier that day from Converse's counsel, Ms. Parise, regarding developments in the U.S. Court. I later received an email communication from Mr. Gilleran, Converse's other counsel, indicating that you had asked him whether the Court's status quo Order stayed the arbitration and requesting that Alon comment to you on that point.

Although you have provided Alon until the close of business on Tuesday, we are responding early in the interest of advancing this matter.

We confirm that the US Court has entered the Order provided to you. Alon does not regard that Order as staying this arbitration.

Alon disagrees with the self-serving revisionist history that Converse has set forth in its Friday email purportedly recounting what has happened.

Given that Converse itself contends the Order does not stay the arbitration, there was no bona fide reason that Converse sent you the Order.

Plainly, Converse's ploy is a transparent effort to affect the views of the incoming arbitrator through Converse's self-serving declarations in the email.

Alon has not sought to change the status quo. Alon has at all times complied with the order of the initial arbitrator prohibiting it from terminating Coopershoes, even though that order was entered by an arbitrator that had an undisclosed conflict of interest and was entered without oral argument.

Converse is taking advantage of the hiatus between arbitrators that it itself caused by failing to disclose the clear conflict of interest that existed. Its latest efforts in the U.S. court are simply a continuation of Converse's campaign to delay, for as long as it can, the payment to Alon of monies that the courts of Brazil have ordered Coopershoes to pay to Alon under its Contract.

It is Converse that through its actions in the ICDR and the US court is violating the Brazilian court injunctions that order it to perform its contract with Alon and that is interfering with Alon's contract with Coopershoes.

Accordingly, we disagree with Converse's communication, but agree that the ICDR should proceed to appoint the new arbitrator promptly.

Nothing herein is intended to waive any rights or defenses of Alon.

As an aside, I note that Converse did not copy Mr. Davis, nor anyone else from the Astigarraga Davis law firm on their email to you. I ask that all future communications be addressed to myself, Mr. Davis, Mr. Capua and Ms. Cardenas, although I am the lead counsel on this matter. For everyone's convenience, they are all copied on this email. We presume there is no one else that Converse would like copied since they did not copy them.

Thank you.

José I. Astigarraga
Astigarraga Davis
701 Brickell Avenue
16th Floor
Miami, Florida 33131

1