# PEPE&HAZARD LLP

A BUSINESS LAW FIRM

225 FRANKLIN STREET, 16TH FLOOR
BOSTON, MASSACHUSETTS 02110-2804
617.748.5500  FACSIMILE: 617.748.5555

DAVID P. RUSSMAN
Attorney At Law
Direct: 617.748.5571
drussman@pepehazard.com

June 10, 2005

Clerk's Office, Civil
United States District Court
1 Courthouse Way
Boston, MA 02210

   Re: *Converse, Inc., vs. Alon International S.A.*
     U.S. District Court, Docket No. 2004-12591-PBS

Dear Sir or Madam:

   In regard to the above-referenced matter, enclosed please find for filing and docketing:

    1. Converse Inc.'s Motion to Correct Transcript, along with exhibits (including an
     Affidavit of Michael C. Gilleran, Esq.)

   While this matter does not constitute an emergency, there is time pressure in that Converse believes that Alon will take the incorrect transcript and, based upon the errors in it, attempt to gain an advantage in the South American litigation. Accordingly, we respectfully request that the Motion be acted upon as soon as possible.

   Thank you for your attention in this matter.

        Very truly yours,

        David P. Russman

Enclosures
Cc: Counsel of Record (via electronic means)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CONVERSE INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-12591-PBS |
| | ) | |
| vs. | ) | |
| | ) | |
| ALON INTERNATIONAL S.A., | ) | |
| | ) | |
| Defendant. | ) | |

**CONVERSE INC.'S MOTION TO CORRECT TRANSCRIPT**

Now comes the Plaintiff, Converse, Inc. ("Converse") and respectfully files this *Motion*, which seeks to correct the transcript from the June 1, 2005 hearing before this Court (the "Hearing").

The transcript was prepared by the Official Court Reporter, Valerie A. O'Hara. After Ms. O'Hara circulated a draft of the transcript, on or about June 8, 2005, counsel for the defendant, Alon International S.A. ("Alon") emailed her stating that there were some errors, and requesting that Ms. O'Hara correct those errors. Thereafter, counsel for Converse stated that it did not object to the corrections as requested by Alon. (A true and accurate copy of those emails is attached hereto as Exhibit A.)

Counsel for Converse also stated to Ms. O'Hara that there was another error in the transcript, at page 13, lines 24-25. Those lines contain an exchange between Converse's counsel, Michael Gilleran, Esq., and the Court relative to whether the motions that were before the Court constituted an emergency. In response to the Court's statements that the pending motions were not an emergency, Mr. Gilleran stated respectfully that they indeed

were. However, the exchange, as transcribed and reflected in the transcript, shows Mr. Gilleran stating that it was NOT an emergency.

> The Court:  . . . No more emergency motions. Emergency is when someone is about to be taken off of life support, evicted from their home.
>
> Mr. Astigarraga:  Judge, we didn't file it.
>
> The Court:  I know you didn't, I'm looking at you.
>
> Mr. Gilleran: *Your Honor, it wasn't an emergency.*
>
> The Court:  It was not an emergency.
>
> Mr. Gilleran:  We hear you.

Specifically, what Mr. Gilleran said, and what the italicized language should reflect, was, "Your Honor, it was an emergency." (A true and accurate copy of the transcript is attached hereto as Exhibit B.)  (See also the Affidavit of Michael Gilleran, Esq., attached hereto as Exhibit C.)

Counsel for Converse brought the error to Ms. O'Hara's attention, but counsel for Alon refused to agree to the correction. (See emails attached hereto as Exhibit A.)

The correction is necessary because without it, the transcript reads as if Converse, through counsel, is admitting to knowingly labeling motions "Emergency" when none exists. Alon will certainly take that language and highlight it to the South American courts, in an effort to gain a tactical advantage based upon a typo.  Further, admitting to knowingly labeling motions "Emergency" when none exists would arguably amount to an ethical violation by counsel, which of course is not the case.  Finally, the fact that the Court, in response to Mr. Gilleran's statement, insisted "It was not an emergency" confirms that Mr. Gilleran stood by his belief that it was in fact an emergency.

2

## Certification

Pursuant to Local Rule 7.1(A)(2), counsel for Converse has conferred with counsel for Alon in an effort to resolve the issues contained in this Motion. Counsel for Alon stated that he would respond to Converse's request by 12:00 p.m. on June 10, 2005. Counsel for Alon has failed to respond.

**Wherefore**, Converse respectfully requests that this Honorable Court order that the transcript be corrected to reflect what was said at the hearing, namely that Mr. Gilleran stated at page 13, line 24 of the transcript, "Your Honor, it was an emergency."

Respectfully submitted,
**CONVERSE INC.**
By its attorneys,

/s/ David P. Russman

Michael C. Gilleran (BBO# 192210)
David P. Russman (BBO# 567796)
Christine N. Parise (BBO# pending)
PEPE & HAZARD LLP
225 Franklin Street
Boston, Massachusetts 02110
(617) 748-5500

Dated: June 10, 2005

DPR/32913/2/568919v1
06/10/05-BOS/

## Certificate of Service

I hereby certify that I have today served the above motion upon counsel for the opposing party by electronic means.

/s/ David P. Russman

_____

DATED:  June 10, 2005

DPR/32913/2/568919v1
06/10/05-BOS/

**Exhibit A**

**Russman, David**

| | |
|---|---|
| **From:** | valerieohara@comcast.net |
| **Sent:** | Wednesday, June 08, 2005 8:47 AM |
| **To:** | Russman, David |
| **Cc:** | Parise, Christine N.; Gilleran, Michael |

**Subject:** Corrections to Transcript of Converse v. Alon

The firm of Astigarraga Davis had requested that I make these changes, so I did and I am e-mailing you a new transcript with the changes. I will send you a copy in the mail.

1.  On page 4 / line 8, I would go with whatever your notes indicate, however, the term "government arbitration" is not really contextually applicable to this case.

2.  On page 4 / line 20, it should be spelled "Porto Alegre" and not "Puerto Allegra."

3.  On page 5 / line 15, again, I would go with your notes on this. However, the actual amount in deposit is around 1.6 million and not 6.1 million.

4.  On page 5 / line 20, it should be "Mr. Theroux" and not "Mr. Tabu."

5.  On page 6 / line 1, it should be "Mr. Theroux" and not "Mr. Thereau."

6.  On page 9 / line 14, the correct legal term is "irreparable harm" and not "irreputable harm."

7.  Finally, the word "order" is capitalized in some instances while it is not in others.  For example, on page 6 / lines 5-8, the same order is both capitalized and un-    capitalized.  I don't know what is your standard procedure in this regard, but I perhaps there should be some sort of uniformity.

Thank you,
Valerie O'Hara
617-737-2346

## Russman, David

| | |
|---|---|
| **From:** | Jose Astigarraga [jastigarraga@astidavis.com] |
| **Sent:** | Friday, June 10, 2005 11:29 AM |
| **To:** | Russman, David |
| **Cc:** | Gilleran, Michael; Parise, Christine N.; Cristina Cardenas; richard.johnston@wilmerhale.com; valerieohara@comcast.net; Paul Capua; Edward Davis |
| **Subject:** | RE: Corrections to Transcript of Converse v. Alon |

Mr. Russman:

This responds to your inquiry regarding the transcript.

As I indicated, I affirmatively heard Mr. Gilleran's statement as reported by Ms. O'Hara in the transcript currently.

Accordingly, Alon cannot agree to change the transcript to read the way you want.

In the interest of resolving this, Alon has no objection to the following modifications (see lines 23 and 24 below), assuming it is acceptable to Ms. O'Hara:

21    MR. ASTIGARRAGA: Judge, we didn't file it.

22    THE COURT: I know you didn't, I'm looking at

23    you [Mr. Gilleran].

24    MR. GILLERAN: Your Honor, it [inaudible] an

25    emergency.

While we are in the process of correcting the record, I ask that you agree to correct the Electronic Clerk's Notes that you have cited. Specifically, they currently read: "Counsel inform the Court that the pending issues are moot." I ask that you consent to the clarification of such statement to say "Converse counsel inform the Court that the pending issues are moot." As you know I disagreed that the matter was moot, and as written, the entry is unclear.

Finally, we are counsel of record. We request that you simultaneously serve us with any papers you might file.

### Jose Astigarraga

PS to Ms. O'Hara: I did not realize that you had circulated a revised transcript, because Ms. Cárdenas of our office has been in court and only she received it. I haven't seen the revised version yet, but will look at it promptly in case we have any other observations. If you could copy me on any communications with our firm, I'd appreciate it. Many thanks. Have a good weekend. Jose

José I. Astigarraga
Astigarraga Davis
701 Brickell Avenue
16th Floor
Miami, Florida 33131
Tel: 305-372-8282
Fax: 305-372-8202
Email: jia@astidavis.com

-----Original Message-----
**From:** Russman, David [mailto:DRussman@PepeHazard.com]
**Sent:** Thursday, June 09, 2005 4:15 PM
**To:** Jose Astigarraga; valerieohara@comcast.net
**Cc:** Gilleran, Michael; Parise, Christine N.; Cristina Cardenas;
richard.johnston@wilmerhale.com
**Subject:** RE: Corrections to Transcript of Converse v. Alon

Valerie,

Mr. Astigarraga and I just spoke about this issue. I explained to Mr. Astigarraga that when Mr. Gilleran's statement is read in context, it is clear that he said "it was an emergency." Nonetheless, Mr. Astigarraga stated that he would review the exchange again and that he would get back to me tomorrow morning as to whether we can resolve our disagreement. If we cannot resolve it amicably, we will file a Motion with Judge Saris.

Thank you.

David Russman

-----Original Message-----
**From:** Jose Astigarraga [mailto:jastigarraga@astidavis.com]
**Sent:** Thursday, June 09, 2005 3:38 PM
**To:** valerieohara@comcast.net
**Cc:** Gilleran, Michael; Parise, Christine N.; Cristina Cardenas;
richard.johnston@wilmerhale.com; Russman, David
**Subject:** RE: Corrections to Transcript of Converse v. Alon

Dear Valerie: Please note that we object to the change proposed by Mr. Russman.

1.   In reference to page 13: we disagree that Mr. Gilleran said "Your Honor, we believed it was an emergency." That change should not be made.

2.   For what it's worth, I heard it the same way you did.

3.   At this point, I don't know how to resolve it other than for you to verify and rely on your notes.

Many thanks.  Jose

José I. Astigarraga
Astigarraga Davis
701 Brickell Avenue
16th Floor
Miami, Florida 33131
Tel: 305-372-8282
Fax: 305-372-8202
Email: jia@astidavis.com

-----Original Message-----
**From:** Russman, David [mailto:DRussman@PepeHazard.com]
**Sent:** Wednesday, June 08, 2005 10:26 AM
**To:** valerieohara@comcast.net
**Cc:** Gilleran, Michael; Parise, Christine N.; Cristina Cardenas; Jose
Astigarraga; richard.johnston@wilmerhale.com
**Subject:** RE: Corrections to Transcript of Converse v. Alon

Thank you, Valerie,

In light of the innocuousness of the changes, we are ok with the revised transcript that you just forwarded.

However, we noticed a different typo.  On page 13, line 24, Mr. Gilleran stated, "Your Honor, it was an emergency", as opposed to it "wasn't" an emergency.  In fact, my memory is that the full sentence that Mr. Gilleran stated was, "Your Honor, we believed it was an emergency."

Thank you.

David Russman

**Exhibit B**

CONVER~1

1

```
1                      IN THE UNITED STATES DISTRICT COURT
2                      FOR THE DISTRICT OF MASSACHUSETTS
3
4    CONVERSE, INC.,              )  C.A. No. 04-12591-PBS
5                 PLAINTIFF       )  Courtroom No. 19
6    VS.                          )  One Courthouse Way
7    ALON INTERNATIONAL S.A.,     )  Boston, MA  02210
8                 DEFENDANT       )
9
10                          JUNE 1, 2005
11                           2:05 p.m.
12
13
14
15                 BEFORE THE HONORABLE PATTI B. SARIS
16                 UNITED STATES DISTRICT COURT JUDGE
17
18
19
20
21
22
23
24                      Valerie A. O'Hara
25                    Official Court Reporter
```

CONVER~1

2

```
 1   A P P E A R A N C E S:

 2       Pepe & Hazard, LLP, by MICHAEL C. GILLERAN, ESQ.,
     DAVID RUSSMAN, ESQ. and CHRISTINE N. PARISE, ATTORNEY,
 3   225 Franklin Street, 16th Floor, Boston, Massachusetts
     02110-2804; for the Plaintiffs;
 4
         Astigarraga Davis, by JOSE' I. ASTIGARRAGA, ESQ. and
 5   CRISTINA CARDENAS, ATTORNEY, 701 Brickell Avenue,
     16th Floor, Miami, Florida  33131-2847; for the Defendant;
 6
         Wilmer, Cutler, Pickering, Hale and Dorr, LLP, by
 7   RICHARD A. JOHNSTON, ESQ., 60 State Street, Boston,
     Massachusetts  02109; for the Defendant.
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CONVER~1

3

1          THE CLERK:  All rise.  Case of Converse,
2   Incorporated versus Alon International SA, Civil Action
3   No. 04-12591 will now be heard before this court.  Will
4   counsel please identify themselves for the record.
5          MR. GILLERAN:  Your Honor, Mike Gilleran on behalf
6   of Converse.  With me is Christine Parise and David
7   Russman.
8          THE COURT:  Let me turn on the microphone.
9          MR. JOHNSTON:  Your Honor, my name is Richard
10  Johnston from Wilmer, Cutler, Pickering, Hale and Dorr.
11  With me is Jose' Astigarraga from Astigarraga Davis from
12  Florida.  I have filed papers earlier today to move his
13  admission Pro Hac Vice.
14         THE COURT:  That's allowed.
15         MR. JOHNSTON:  Cristina Cardenas is with us from
16  the same law firm from Florida.
17         THE COURT:  Thank you.  Let me start off by asking
18  whether or not the new arbitrator has been selected.
19         MR. GILLERAN:  Your Honor, if I might, we heard
20  from the IDCR yesterday that they intended to proceed with
21  arbitration, and they had, I believe, their e-mail to us
22  indicated that they had taken steps to invite the new
23  arbitrator to accept the appointment.  We have not heard as
24  of this morning, as of this afternoon that in fact happened.
25         Your Honor, if I might, most of what we sought

Page 3

CONVER~1

4

1    last week has now been mooted, and that issue which we

2    raised last week in our emergency motion, at least not last

3    week but, in fact, the emergency motion filed yesterday

4    morning is now mooted.

5         We sought an immediate Order from this Court

6    yesterday morning to clarify Judge Tauro's Order, his Status

7    Quo Order because on Friday the IDCR acted on their stay

8    upon their ability to choose government arbitration, and

9    their action yesterday indicates that, and Mr. Astigarraga

10   sent an e-mail to them I believe it was Monday night

11   indicating, I believe, that Alon did not believe that the

12   Order, the Status Quo Order prohibited an appointment of a

13   new arbitrator, so they've indicated that they're going to

14   proceed in appointing a new arbitrator, so that would be

15   moot. We won't need a relief.

16        A further relief we've sought is also now mooted

17   which we learned about last evening. One of the motions

18   filed last week, your Honor, was for an Order perhaps

19   characterized as an antisuit injunction against further

20   conduct by Alon from the supreme court in Porto Alegre,

21   Brazil. That is now mooted. What happened is --

22        THE COURT: Can I just interject, if you're

23   completely happy, can we just say goodbye?

24        MR. GILLERAN: I'm almost completely happy, I

25   think.

CONVER~1

5

1        THE COURT:  Go ahead.

2        MR. GILLERAN:  I'm not going to go on very long.

3   There's been an appeal taken by Converse in Brazil filed by

4   our counsel in Brazil, and it was an appeal to a single

5   justice, and the single justice upon receiving the appeal

6   immediately, immediately suspended the effect of the

7   interpleader's Court Order, which is the Supreme Court,

8   suspended the effect of the Order last week barring first to

9   obtain any further royalty payments into the interpleader

10  and permitted further payment into the interpleader, and I

11  have a copy of this Order if the Court would like to see it,

12  but the effect is that that issue is mooted.

13        The situation in Brazil has been reversed, and the

14  issues are they are continuing to make the payments and the

15  funds that are currently approximately $6.1 million are to

16  be held in.  So, that issue has passed for us.  There is

17  only one last issue that I believe has resulted in a

18  discussion with Mr. Astigarraga a few minutes ago is perhaps

19  also mooted, and that was the issue of the standstill Order

20  issued by Mr. Theroux earlier this month before he was

21  removed by the ICDR last week on May 24th.

22        That was what we called the standstill Order which

23  was the Order to Alon not to appoint a new manufacturer

24  sublicensee and not to threaten to do so to Coopershoes, and

25  that was the Order that was to be heard the very day that

Page 5

CONVER~1

6

1    Mr. Theroux was removed by the ICDR which Order said it was
2    a stay, which was to remain in effect until further decision
3    by the arbitrator on our opinion in the main motion in the
4    arbitration, which was to preserve our damage remedy.
5           In any event, we maintain that Order is still in
6    effect, and as a result of discussion with Mr. Astigarraga,
7    I'll let him speak for himself, he's indicated to me that
8    it's their intention to continue to abide by that Order, and
9    our view would be that once a new arbitrator, they're free
10   to seek a motion with the new arbitrator to vacate the prior
11   standstill Order, and the issue can be dealt with in that
12   way.
13          THE COURT:  So, the bottom line is you don't need
14   me to do anything?
15          MR. GILLERAN:  Unless Mr. Astigarraga, if
16   Mr. Astigarraga takes the position that the existing Order,
17   standstill Order is not effective and is invalid and they
18   will not obey it, then I would proceed today on our motion
19   to Order that interim Order of the arbitrator, that be
20   enforced pursuant to the arbitrated factual Sections 9 and
21   10 which say this Court must enforce arbitration orders
22   except certain contentions contained in Article 10 in the
23   Federal Arbitration Act, but I don't believe we're going to
24   need to deal with that, I believe they will abide by the
25   Order pending a new Order of the new arbitrator.

1           THE COURT:  Is that correct?

2           MR. ASTIGARRAGA:  I take it, your Honor, that that

3    motion for Pro Hac Vice is granted emeritus tort?

4           THE COURT:  Yes.

5           MR. ASTIGARRAGA:  Thank you very much, your Honor.

6    May I address the Court?

7           THE COURT:  Yes, you're welcome.

8           MR. ASTIGARRAGA:  Thank you, your Honor.  That is

9    correct, that is correct with respect to the intention to

10   abide by the Order to be very precise, your Honor, both

11   today and previously we have indicated that although Alon

12   certainly feels that that Order was not appropriate,

13   properly entered and so on and reserves all of its right

14   with respect to that Order, nevertheless it is Alon's

15   intention, which we have confirmed in writing and now

16   confirming on the record, that Alon intends to abide by the

17   terms of that Order until the arbitrator is able to address

18   that.

19           What we would object to, your Honor --

20           THE COURT:  That's the end of it, right?

21           MR. ASTIGARRAGA:  My only point, Judge, there's

22   two aspects which I may bring to you, one is we did not want

23   that embodied in an Order of this Court.

24           THE COURT:  I'm not going to issue an Order.

25   What's the next one?

CONVER~1

1              MR. ASTIGARRAGA:  Very good. Your Honor, the

2    reason, if I may address the Court on the first two points

3    that Mr. Gilleran addressed --

4              THE COURT:  It's over, right?

5              MR. ASTIGARRAGA:  No, your Honor.  May I address

6    the Court?

7              THE COURT:  Yes.

8              MR. ASTIGARRAGA:  Let me explain, the reason that

9    we're now so-called moot, your Honor, is because they have

10   taken that Status Quo Order and violated the status quo and

11   litigated in Brazil, and, your Honor, if I may --

12             THE COURT:  Excuse me, whose status quo, Judge

13   Tauro's or mine?

14             MR. ASTIGARRAGA:  I'm sorry, I was not aware of

15   it.

16             THE COURT:  I did something a long time ago.

17             MR. ASTIGARRAGA:  Yes, your Honor.

18             THE COURT:  I was at a United States Sentencing

19   Institute on Friday.  Judge Tauro held it over till Tuesday.

20   That's all he did.  He didn't do anything other than to say

21   don't do anything until Tuesday.

22             MR. ASTIGARRAGA:  They went into court on Monday,

23   your Honor, used the Order to reverse the orders that were

24   entered by the Brazil Court.

25             THE COURT:  I'll tell you what, fight it further

CONVER~1

▯

9

1    with the Brazil Court. As far as I'm concerned, at this
2    point I'm not vacating Judge Tauro's Order. That was simply
3    to hold it through until I got here.
4         MR. ASTIGARRAGA: Understood, your Honor.
5         THE COURT: As far as I'm concerned, I am not
6    interfering on either part's side, either Brazil or
7    Argentinian judicial proceedings which seem to be giving
8    everybody plenty of due process rights, so I am not going to
9    be involved in that.
10        Now, what I'm worried about is why this
11   arbitration is taking so long to get off the ground. I feel
12   as you must have spent so much money litigating on one
13   emergency motion after another on just frankly a commercial
14   dispute where there is no irreparable harm which should be
15   litigated through arbitration, so have you got the name of
16   the new arbitrator?
17        MR. ASTIGARRAGA: Not yet, your Honor.
18        THE COURT: Should we hold a status in about two
19   weeks and see if things are chugging along?
20        MR. ASTIGARRAGA: Your Honor, of course, we'd be
21   pleased to do that, and, your Honor, I urge the Court,
22   please allow me an opportunity to address you as to what
23   they have done with respect to the Order. We truly need the
24   relief, your Honor.
25        THE COURT: I'm not going to do it. I'm not going

CONVER~1

1    to enjoin the Brazil Court.

2              MR. ASTIGARRAGA:  I'm not asking that.

3              THE COURT:  What are you asking for?  There's been

4    so much briefing on this in the last three days.  There's

5    been a tsunami of paper has come in the front door.  What

6    are you asking for?  I thought it was always their motion.

7              MR. ASTIGARRAGA:  It was until 30 minutes ago,

8    your Honor, when on the way here, I found out that on Monday

9    Converse went into Brazil Court, used the Order and said the

10   American judge is prohibiting the Alon and in effect

11   instructing the interpleader of the funds in Brazil.  They

12   have used this District Court's Order, your Honor, after on

13   Friday in papers that are before you saying to Alon, you may

14   not go into the interpleader court and went into court on

15   Monday ex parte to change the status quo.  Your Honor, I

16   urge you --

17             THE COURT:  Overruled.  If you want to file a

18   separate piece of paper with me, I've got a pile of papers

19   this high, this high, and none of them is a request to do

20   this because you just found out about it a half an hour ago.

21   I'm not doing anything, I'm not overturning a Brazil's Court

22   opinion, I'm not doing anything.

23             If you want simply a vacation of the Status Quo

24   Order of Judge Tauro, I will grant that because all he did

25   was grant a status quo from Friday to Tuesday, that's all he

CONVER~1

☐

11

1    did.  If they just misrepresented that, you can take that

2    and do it.  If you want a simple Order vacating Judge

3    Tauro's Order, I will do that.

4              MR. ASTIGARRAGA:  Thank you very much, your Honor.

5              THE COURT:  I am not intervening with the very

6    fine Brazilian proceedings.  They seem to be on top of it.

7    I want to respect their proceedings the way they're

8    respecting our proceedings, so if you want a draft Order,

9    submit it today and I will get it just vacating that Order,

10   but I'm not going to intervene.  I want to make it crystal

11   clear I think the Brazilian Court is doing fine.  What I'm

12   really worried about is it's been months and months and

13   months.

14             MR. ASTIGARRAGA:  The arbitration was underway,

15   your Honor.  The arbitration was underway.  There was a

16   discovery proceeding.  A conflict was discovered with the

17   arbitrator, so the arbitrator was removed, but the

18   arbitration is in fact underway.  There's discovery

19   proceeding.

20             THE COURT:  When is the trial or the hearing?

21             MR. ASTIGARRAGA:  October.

22             THE COURT:  That's a long time.  Basically neither

23   party should deprive one another of the fruits of the

24   ongoing contract until you hit the arbitration and either

25   they terminated you properly or they didn't.

CONVER~1

12

1          MR. GILLERAN:  Your Honor, I feel that they would

2     take what you just said, their last sentence.

3          THE COURT:  No, my clear intent is not to

4     interfere with the Brazilian Court proceeding.  I'm not

5     issuing any Order other than vacating Judge Tauro's Status

6     Quo Order which was simply meant to hold a status quo from

7     Friday until Tuesday, and, for the record, Monday in the

8     United States of America was Memorial Day because the

9     parties went screaming historically to him that there was an

10    emergency when there wasn't.  It was not an emergency

11    matter.  It could have waited until I came back.  Right?  It

12    would have been cleaner if it waited until I came back.  It

13    was an improper emergency motion, it wasn't an emergency.

14          Judge Tauro doesn't know this case and so doesn't

15    know that everything that is filed is an emergency motion in

16    this case, so it's just a commercial dispute that needs to

17    be resolved through arbitration.  I will not, as I have not

18    consistently, interfered with the South America proceedings,

19    and I think both sides have litigated fully there, and I

20    will do what you want so that there is no misinterpretation

21    of the Status Quo Order.

22          MR. ASTIGARRAGA:  Thank you, your Honor.

23          MR. GILLERAN:  The point of coming back for a

24    status, I believe the ICDR, as they indicated yesterday,

25    will appoint an arbitrator today or tomorrow, and,

CONVER~1

1    therefore, there wouldn't be any further status; if they

2    don't, may we contact your clerk and perhaps ask for a

3    status quo?

4            THE COURT:   Arbitration is supposed to be faster

5    than a trial.

6            MR. GILLERAN:  Yes.  My point is there's no need

7    for a status.

8            THE COURT:   I don't want a status either.  Let me

9    just say to you, the next person who files an emergency

10   motion when it's not really an emergency, I'm just going to

11   write deny and impose sanctions.  Most of these motions can

12   go motion, 14 days, opposition.  If I'm out of town, it can

13   wait till I get back.

14           I know the rhythm of this case, and it was

15   unfortunate that you went to another judge screaming

16   emergency when Judge Tauro probably thought something was

17   happening and Judge Saris creates a misimpression in

18   South America.  No more emergency motions.  Emergency is

19   when someone is about to be taken off of life support,

20   evicted from their home.

21           MR. ASTIGARRAGA:  Judge, we didn't file it.

22           THE COURT:   I know you didn't, I'm looking at

23   you.

24           MR. GILLERAN:  Your Honor, it wasn't an

25   emergency.

CONVER~1

[]

14

```
 1              THE COURT:  It was not an emergency.
 2              MR. GILLERAN:  We hear you.
 3              THE COURT:  So you file a proposed Order, I'll
 4      sign it.
 5              MR. ASTIGARRAGA:  Thank you, your Honor.
 6              THE COURT:  You can go to South America for
 7      whatever reasons you want.
 8              MR. GILLERAN:  Your Honor, the Order would simply
 9      vacate the Order of Judge Tauro?
10              THE COURT:  I orally vacate the Order, and if you
11      want something in writing to bring to them.
12              MR. ASTIGARRAGA:  It would be necessary, your
13      Honor.
14              THE COURT:  One or two lines.
15              MR. ASTIGARRAGA:  Thank you very much, your
16      Honor.
17              MR. GILLERAN:  Thank you, your Honor.
18              THE COURT:  So, I take it I will not be seeing you
19      again until someone moves to vacate the Arbitrator's Order,
20      one side or the other?
21              MR. ASTIGARRAGA:  Your Honor, I'm confident you
22      probably don't want to hear this.  I heard this information
23      30 minutes after literally flying all night in order to come
24      to the hearing.  I have not had a chance to talk to my
25      client about what it is Converse did.  We sincerely believe
```

CONVER~1

0

15

1   that it is a violation of the Order that was entered that
2   hasn't been close to the standards and that in fact would be
3   addressable by contempt of court.
4         Your Honor, we have enough to do in the
5   arbitration, we have enough to do in South America, given
6   what your Honor said, I'm not going to see you again, I just
7   did want you to know I've not had a chance to talk to my
8   client about whether or not a contempt of court procedure
9   would be proper.
10        THE COURT:  Why were you flying all night, I
11  thought you were from Florida?
12        MR. ASTIGARRAGA:  Your Honor, I was at a meeting,
13  invited to a meeting of the Central American Nobel Peace
14  Prize winner.
15        THE COURT:  You came back for this?
16        MR. ASTIGARRAGA:  Yes, your Honor.
17        THE COURT:  Welcome to Boston.
18        MR. ASTIGARRAGA:  Literally on a charter plane,
19  and it was that important to our client.
20        THE COURT:  You're welcome to be here.    I'm not
21  sure how critical it was, Wilmer Hale is such a good firm.
22        MR. ASTIGARRAGA:  That's very true, your Honor.
23        THE COURT:  You're welcome to be here.  It does
24  add to the significance that your client places on you.  I'm
25  happy to grant that judgment, vacating it, but, once again,

CONVER~1

0

16

1    if you file something, I view this as a commercial dispute
2    that is not of an emergency dimension, and it's almost like
3    someone crying wolf when I see it too many times.
4            MR. GILLERAN:  Your Honor, just one last thing, if
5    I might say, this transcript will now be taken to the
6    Brazilian Court and Mr. Astigarraga's statement that he
7    believes Converse has committed a contempt, he will now use
8    in the courts down there to indicate that this court may
9    very well --
10           THE COURT:  I did not say anything about whether
11   or not I would entertain a motion for contempt.  I took no
12   position on it.
13           MR. GILLERAN:  Thank you, your Honor.
14           MR. ASTIGARRAGA:  Thank you, your Honor.
15           THE CLERK:  The Court is in recess.
16           MR. ASTIGARRAGA:  Your Honor, just as a matter of
17   privilege, I didn't want to embarrass somebody, but Hale and
18   Dorr and Wilmer Cutler is indeed a very, very fine lawfirm,
19   but I wanted you to know we felt it incumbent on us to bring
20   a budding young lawyer, Mr. Johnson's daughter, I wanted an
21   opporunity to present her.
22           THE COURT:  Whose daughter?
23           MR. JOHNSTON:  Mine.
24           THE COURT:  Oh, where is she?
25           MR. JOHNSTON:  She's interning for Judge Wolf this

CONVER~1

17

1    summer.

2           THE COURT:  If you told me, I would have brought

3    you right up there.  All right, that's fine.

4           (Whereupon, the hearing was suspended at

5    2:25 p.m.)

6

7

8    UNITED STATES DISTRICT COURT )

9    DISTRICT OF MASSACHUSETTS     )

10   CITY OF BOSTON                )

11

12          I, Valerie A. O'Hara, Registered Professional

13   Reporter, do hereby certify that the foregoing transcript

14   was recorded by me stenographically at the time and place

15   aforesaid in No. 04-12591, In Re:  Converse, Inc. vs. Alon

16   International S.A., and thereafter by me reduced to

17   typewriting and is a true and accurate record of the

18   proceedings.

19          In witness whereof, I have hereunto set my hand

20   this _____ day of _____, 2005.

21

22

23          _____

24                    VALERIE A. O'HARA

25                    REGISTERED PROFESSIONAL REPORTER

CONVER~1

**Exhibit C**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONVERSE INC., | ) |
| | ) |
| Plaintiff, | )  CIVIL ACTION NO. 04-12591-PBS |
| | ) |
| vs. | ) |
| | ) |
| ALON INTERNATIONAL S.A., | ) |
| | ) |
| Defendant. | ) |

## AFFIDAVIT OF MICHAEL C. GILLERAN, ESQ.

I, Michael C. Gilleran, Esq., do hereby depose and state as follows:

1.  I am counsel for the plaintiff, Converse, Inc. ("Converse"), and I make this affidavit upon my own personal knowledge. I have been a member of the bar of Massachusetts in good standing since 1981.

2.  I argued on behalf of Converse at the June 1, 2005 hearing before this Court (the "Hearing").

3.  At the Hearing, there was an exchange between the Court and me whereby the Court stated that the motions that Converse had filed and that were then-pending did not constitute an emergency.

4.  In response to the Court's statement, I stated that we believed that it was an emergency. In response, the Court reiterated its belief that, "It was not an emergency."

5.  I have reviewed the transcript of the Hearing, and it reads that I said, "Your Honor, it wasn't an emergency." That transcription is wrong. In fact, if the exchange occurred as the transcript reads, there is no way that the Court would have responded to the contrary when it insisted, "It was not an emergency." In other words, if I had said, "Your Honor, it wasn't an emergency" (as the transcript reads), it would be non-sensical for the Court to have responded by saying the same thing, "It was not an emergency." The fact that the Court responded with a reiteration that it was not an emergency confirms that I said the opposite.

6.    The mistake needs to be corrected because if the transcript stands as it is, it suggests that Converse, through counsel, has filed motions labeled an emergency when none exists.  Given the history of this case, I have no doubt that Alon will attempt to use the typo to gain an unfair advantage over Converse in the South American litigation.

Signed and sworn under the pains and penalties of perjury this 10th day of June, 2005.

Michael C. Gilleran, Esq.

2