UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACSHUSETTS

|  |  |
|---|---|
| CONVERSE INC., ) | CASE NO. 04-CV-12591 - PBS |
| Plaintiff, ) |  |
| vs. ) |  |
| ALON INTERNATIONAL S.A., ) |  |
| Defendant. ) |  |

**CONVERSE'S EMERGENCY MOTION TO SET A BRIEFING
SCHEDULE WITH RESPECT TO ITS MOTION TO VACATE
ARBITRATION AWARD OR, ALTERNATIVELY, TO PERMIT LATER
FILING OF MEMORANDUM IN SUPPORT OF MOTION TO VACATE**

Plaintiff Converse Inc. ("Converse") hereby moves this Court for an Order setting a briefing schedule for Converse's Motion to Vacate the arbitral award in this case, and the anticipated Motion to Confirm the award by Defendant Alon International, S.A. ("Alon"). Specifically, Converse requests that the Court approve the following schedule: Converse will file its Motion to Vacate thirty days after the arbitrator resolves all pending matters; Alon will file its response within thirty days of the filing of the Motion to Vacate; and Converse, if appropriate, shall file a reply within ten days after the filing of Alon's response. In the alternative, Pursuant to Local Rule 7.1(B)(3),Converse proposes that the Court direct Converse to identify fully the grounds for its vacatur by motion filed no later than June 9, 2006, but to submit full briefing thirty days after the arbitrator resolves all pending motions.

Converse brings this request before the Court as an emergency matter because, in the event the Court does not approve the above-schedule, Converse's Motion to Vacate arguably

BOS111 12029377.3

would be due on June 9, 2006.

## BACKGROUND

Converse is a worldwide manufacturer, distributor, and licensor of athletic and leisure footwear and accessories. Alon was in part in the business of acting as a licensee for global footwear brands in South America. Converse and Alon, effective on September 1, 2001, entered into a Manufacture, Distribution and Licensing Agreement (the "Agreement") for Alon to act as Converse's licensee in the Mercosur region of South America (Brazil, Argentina, Paraguay and Uruguay). The stated term of the Agreement was December 31, 2004, but it also contained an option clause providing that Alon could renew for the period of 2005-2007 but that "any extension of the Agreement was to be effective only upon the execution of a written agreement signed by Converse and the Licensee." The Agreement also contained a provision prohibiting sublicensing.

The Agreement further contained an arbitration clause. That clause, among other things, stated that all disputes were to be resolved by arbitration, that the arbitration was to take place in Boston, Massachusetts, that Massachusetts law was to be applied with respect to interpretation of the Agreement, and that "the arbitrators shall apply the laws of the Commonwealth of Massachusetts."

On November 30, 2004 Converse sent Alon a letter notifying Alon that Converse believed Alon had breached the Agreement by sublicensing to a party in Brazil and that Alon had engaged in other breaches of the Agreement. In the letter Converse further said it would not agree to a new contract whereby Alon could continue as Converse's licensee for the years 2005-2007.

Alon responded by indicating that it would file suit in the courts of the Mercosur region

to enjoin Converse from engaging any other licensee. On December 10, 2004 Converse filed this action seeking declaratory and injunctive relief requiring Alon to arbitrate all claims between the parties and enjoining it from bringing any actions against Converse in the courts of the Mercosur region. On December 16, 2004 Alon filed its Demand for Arbitration and Statement of Claim with the International Center for Dispute Resolution ("ICDR") in New York City. Alon also commenced actions in Brazil and Argentina seeking orders barring Converse from terminating Alon and forcing Converse to deal only with Alon.

Alon filed in this Court its opposition to Converse's motion for an injunction. Alon, which had its principal place of business in Hallandale, Florida, did not contest that this Court had personal jurisdiction over it. A hearing was held in this Court on January 6, 2005 on Converse's motion for what was essentially an anti-suit injunction based on the arbitration clause, which motion was denied. At the conclusion of that hearing the Court stated that "my full intent here is to essentially have this arbitrated" and "I'll stay the case pending arbitration."[1] Transcript of Hearing on Motion for Temporary Restraining Order, docket entry #16, pertinent sections attached hereto as Exhibit A, at 23:4-5, 8-9.

Finally an arbitrator was selected in the person of Mr. James W. Constable with offices in Baltimore, Maryland. The arbitration proceeding began in Boston in October 2005. Both parties filed voluminous pre-hearing briefs and submitted pre-filed exhibits and written testimony. Alon's pre-filed exhibits ran into the thousands. Examinations of witnesses proceeded over 29 hearing days until February 2006. Closing arguments took place in early March 2006. Closing briefs were filed on April 7, 2006. By that time the transcript of the proceedings ran over 7,000 pages.

---

[1] Defendant acknowledged the Court's continued jurisdiction in a recent letter to arbitrator. *See* Letter to James W. Constable, dated June 3, 2006, attached hereto as Exhibit B, at 2, ¶ 6.

The ICDR sent the arbitrator's award to the parties on May 9, 2006, and Converse's counsel received the award on May 10, 2006. In the award, the arbitrator determined, among other things, that Alon had prevailed on its claims and was entitled to recover its reasonable attorneys' fees and costs, which were to be fixed by the arbitrator after submissions by Alon and a response by Converse.[2] Alon filed its submission in support of its fee award on Wednesday, May 31. The arbitrator has given Converse an opportunity to file any response by June 16 and may hold a hearing on the fees after that date.

Converse on May 19, 2006 filed with the arbitrator a motion to correct the award. Specifically the motion to correct stated that the award of punitive damages to Alon violated Rule 28(5) of the ICDR. That Rule provides: "Unless the parties agree otherwise, the parties expressly waive and forgo any right to punitive, exemplary or similar damages unless a statute requires that compensatory damages be increased in a specified manner." ICDR 28(5).

Converse intends to file a motion with this Court to vacate the award. In that motion Converse will argue, among other things, that the award contravenes the plain language of the Agreement barring any extension of the Agreement into the years of 2005-2007 without an agreement signed by both parties. It was undisputed that there was no such agreement. The First Circuit Court of Appeals indicated in its recent decision of *Cytic v. Deka Product*, 439 F.3d 27 (1st Cir.) on March 1, 2006 that one of the key standards for a motion to vacate an arbitration award is a showing that the award contravenes the plain language of the contract between the parties. 439 F.3d at 32, 33-34.

However, Converse's brief in support of a motion to vacate is not yet ready to be filed. Converse has engaged an appellate specialist in the person of the Thomas Goldstein of the

---

[2] Converse has not filed a copy of the award herewith. Under ICDR rules the award is to be made public only under certain circumstances. Converse will file with its motion to vacate a motion seeking to have the award held under seal.

Washington, D.C. law firm of Akin Gump Strauss Hauer & Field, LLP. Mr. Goldstein has not yet completed his review of the pre-filed testimony, the 7,000-page transcript of witness examinations, the thousands of hearing exhibits, the many pre- and post-hearing briefs and the relevant cases.

There is an issue of the deadline for Converse to file its motion to vacate. As noted above the Agreement contained a generic choice of law clause specifying Massachusetts law, without reference to the Massachusetts Arbitration Act ("MAA"), G. L. c. 251, or the thirty-day time limit after delivery of the award for the filing of a motion to vacate. As the Court is aware, the Federal Arbitration Act ("FAA"), 9 U. S. C. § 1 et seq., provides at § 12 that "[n]otice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

## ARGUMENT

Converse believes that adopting the briefing schedule requested herein will address two uncertainties as to the appropriate vacatur procedures for this matter. First, there is an uncertainty as to whether the Federal Arbitration Act ("FAA") or the Massachusetts Arbitration Act ("MAA") govern the vacatur procedures where the parties' contract includes a generic choice-of-law provision selecting Massachusetts. Second, there is a question as to whether a "final" award has been issued in this matter, thereby starting the clock on the time to file motions to confirm or vacate, given the fact that issues remain before the arbitrator.

### I.   CONVERSE BELIEVES THE FAA GOVERNS THE TIMING OF FILING MOTIONS TO VACATE IN THIS MATTER.

Under federal law, the motion to vacate an arbitration award is due ninety days after a final award is filed or delivered. 9 U.S.C. § 12. Under state law, a motion to vacate is due thirty

days after delivery of an award. G. L. c. 251, § 12. Converse believes that the FAA governs in this matter.

The contract between Converse and Alon includes a generic choice-of-law clause within the arbitration agreement. Although this Court previously held that such a clause also imports state law governing review of arbitral awards, *New England Utilities v. Hydro-Quebec*, 10 F. Supp. 53, 59 (D. Mass. 1998), the First Circuit has since held to the contrary. "[A] 'generic choice of law clause, standing alone, is insufficient to support a finding that the contracting parties intended to opt out of the FAA's default regime' for vacatur of arbitral awards." *Puerto Rico Tel. Co. v. US Phone*, 427 F.3d 21, 29 (1st Cir. 2005) (quoting *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287, 289 (3rd Cir. 2001)). Similarly, other federal appellate authority uniformly holds that federal, not state, arbitral law governs in this circumstance. *UHC Mgm't Co. v. Computer Sciences Corp.*, 148 F.3d 992, 994, 997 (8th Cir. 1998); *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209, 1212-13 (9th Cir. 1998); *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 927-28, 937 (6th Cir. 1998); *Porter Hayden Co. v. Century Indemnity Co.*, 136 F.3d 380, 382 (4th Cir. 1998); *National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 132, 134-35 (2d Cir. 1996).

In *Puerto Rico Tel.*, the First Circuit clarified that the application of a state's arbitration law, absent an explicit agreement to opt out of the FAA, "is appropriate only when there is no conflicting federal policy." 427 F.3d at 28-29. *See also Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 685 (1996) (the proper inquiry is whether the state law requirement "undermine[s] the goals and policies of the FAA." (internal quotation marks omitted)). "This is particularly so when the state law at issue is 'specifically and solely applicable to arbitration agreements.'" *Puerto Rico Tel.*, 427 F.3d at 29 (quoting *PaineWebber*, 87 F.3d at 593)). The FAA's provision of three

months to move to vacate an arbitral award evinces federal policy to strike an appropriate balance between the desire to limit the time for contesting awards and the need to allow adequate process. This assurance that a party will be permitted sufficient time to assess its position and contest mistaken awards, particularly where interstate and international commerce is implicated, advances the FAA's pro-arbitration objective. Thus, because the policies of the FAA are implicated, the parties' generic choice-of-law clause is insufficient to indicate an intent to contract for the Commonwealth's statute of limitation. *See id.* at 28-29.

## II.  CONVERSE BELIEVES THAT A FINAL ARBRITRAL AWARD HAS NOT YET ISSUED IN THIS MATTER.

Although the arbitrator denominated his award as "final" in the signature block, the first page contains no title indicating whether the award is final or not and two matters remain pending before the arbitrator: the question of attorney's fees, and the appropriateness of the punitive damage awards. Finality turns on the substance of the decision, not labels. *Publicis Communciation v. True North Comms., Inc.*, 206 F.3d 725, 728 (7th Cir. 2000); *see also Jett v. Kiddler Peabody & Co.*, 671 N.Y.S.2d 582 (N.Y. Sup. Ct. 1997) ("[T]he arbitration panel's decision to reserve final determination of the issue of attorneys' fees and interest to reopen the proceedings for 3 hearing days establishes that a final determination of all the issues has not occurred. Since the panel's December 19, 1996 Award and its subsequent orders, despite contradictory language about finality, do not resolve all issues submitted to them, judicial review is premature."). That is particularly true where, as here, the arbitrator's representations give the parties a reasonable expectation that the matter remains open.

Moreover, the First Circuit, in *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F. 3d 231, 233 (1st Cir. 2001), stated that in applying the vacatur provisions of the FAA that, "'we have followed the principle that it is essential for the district court's jurisdiction that the arbitrator's

decision was final, not interlocutory.'" The First Circuit in *Hart Surgical*, at 233, further said, "[w]e have noted that 'normally, an arbitral award is deemed 'final' provided it evidences the arbitrator's intention to resolve all claims submitted in the demand for arbitration.'"

In addition, Alon has acknowledged that the arbitration award is not truly a final award, characterizing it as a "partial final award" in its recent letter to the arbitrator. *See* Exhibit B, at 2 ¶ B.

It makes little sense to construe the statutes to require the filing of Motions to Vacate or Confirm the award in these circumstances. Moreover, Converse is barred from filing a motion to vacate until there is a final award. The arbitrator's disposition of the pending matters may substantially inform, or even moot, the judicial proceedings. For example, any Motion to Vacate filed now by Converse would include the argument that the punitive damages award is contrary to the parties' contract (which incorporates the arbitral rules) and contrary to law. But the arbitrator's disposition of Converse's motion in the arbitration to set aside the punitive award could moot that issue entirely. Similarly, it remains entirely uncertain whether Converse will challenge the award of attorney's fees, because the arbitrator has not yet specified what fees will be awarded. Finally, if Converse is required to file a motion to vacate now, before an award of the attorneys' fee and resolution of other pending issues, Converse will have to file further motions to vacate after further arbitrator action resolving those issues.[3]

## III. RELIEF SOUGHT BY CONVERSE

The briefing schedule proposed by Converse will accommodate the interests underlying both the state and federal statutes in the prompt disposition of judicial proceedings relating to

---

[3] The First Circuit in *Hart Surgical*, at 236, stated that important consideration in creating any exceptions to the concept of final judgment in arbitration proceeding was that "we may create situations at the arbitration level in which the losing side may forfeit an appeal . . . by waiting until arbitration proceedings are complete."

arbitral award, as well as this Court's interest in not addressing arbitration awards serially or before it has the benefit of all of the arbitrator's final rulings. Borrowing the thirty-day timetable of Massachusetts law, Converse proposes that its Motion to Vacate the arbitral award be filed thirty days after receipt of the final ruling of the arbitrator resolving all pending matters. Converse proposes that Alon file its response thirty days later, and that Converse reply within ten days.

In the event this Court concludes instead that the thirty-day deadline of Massachusetts law controls and that the award previously entered by the arbitrator is indeed already "final," Converse alternatively, under Local Rule 7.1(B)(3), proposes that the Court direct Converse to identify fully the grounds for its vacatur by motion filed no later than June 9, 2006, but to submit full briefing thirty days after the arbitrator resolves all pending motions. The additional time for full briefing is warranted to give the Court and the parties the benefit of the arbitrator's final views. In addition, an extension of time would be warranted in any event because Converse's counsel have been substantially occupied with briefing the punitive damages issue before the arbitrator.

## IV.    GROUNDS FOR EMERGENCY RELIEF

There is a risk that Converse's motion to vacate the award is due under the MAA to be filed by Friday, June 9, 2006. Converse needs to know as early as possible before that date whether the 30 day deadline of the MAA applies or, instead, the three month deadline of the FAA. Alternatively, Converse must know before that deadline if the Court cannot decide the first question and if instead Converse had permission to file its motion to vacate by June 9, but file its brief in support at a later date.

## CERTIFICATION OF CONSULTATION WITH OPPOSING COUNSEL

Counsel for Converse hereby certifies, pursuant to Local Rule 7.1(A)(2), that the undersigned counsel has today called one of the opposing counsel and explained on the telephone all of the relief sought in this motion as well as briefly stated the grounds for the relief sought. About one-and-a-half hours later opposing counsel emailed the response that they did not have enough information to agree to the relief sought at this time.

## CONCLUSION

For the reasons set forth above, Converse respectfully requests that the Court order that Converse file its Motion to Vacate the arbitral award thirty days after receipt of the final ruling of the arbitrator resolving all pending matters, Alon file its response thirty days later, and that Converse reply within ten days. In the alternative, Converse respectfully requests that the Court order that Converse file its motion to vacate by June 9, but file its brief in support at a later date.

Respectfully submitted,

**CONVERSE INC.**
By its Attorneys,

Dated: June 5, 2006

/s/ Michael C. Gilleran
Michael C. Gilleran (BBO# 192210)
Christine O'Connor (BBO #647535)
EDWARDS ANGELL PALMER &
DODGE, LLP
111 Huntington Avenue
Boston, MA 02119
617-439-4444

### Certificate of Service

I hereby certify that I caused a true copy of the above document to be served upon local counsel for defendant by hand on June 5, 2006.

_____/s/ Michael C. Gilleran_____

**EXHIBIT A**

```
                                                                          1


 1                       UNITED STATES DISTRICT COURT
                          DISTRICT OF MASSACHUSETTS
 2

 3

 4     CONVERSE, INC.,                  )
                         Plaintiff,     )
 5                                      )
                                        )
 6     vs.                              ) CA No. 04-12591-PBS
                                        )
 7                                      )
       ALON INTERNATIONAL S.A.,         )
 8                       Defendant.     )

 9

10     BEFORE:  The Honorable Patti B. Saris

11

12              HEARING ON MOTION FOR TEMPORARY RESTRAINING ORDER

13

14

15            John Joseph Moakley United States Courthouse
                              Courtroom No. 19
16                           One Courthouse Way
                              Boston, MA 02210
17                        Thursday, January 6, 2005
                                 2:24 P.M.
18

19

20
                          Cheryl Dahlstrom, RPR, RMR
21                          Official Court Reporter
                  John Joseph Moakley United States Courthouse
22                    One Courthouse Way, Room 3209
                              Boston, MA 02210
23               Mechanical Steno - Transcript by Computer

24

25
```

```
 1          MR. GILLERAN:  We did.  Under our contract, we were
 2     required to send them a notice and wait 30 days.  We sent the
 3     notice.
 4          THE COURT:  Then they filed a notice of arbitration.
 5          MR. GILLERAN:  Right.
 6          THE COURT:  Then you have to arbitrate it.  See,
 7     that's where you and I are disagreeing.
 8          MR. GILLERAN:  I'm sorry, your Honor.  I disagree
 9     with you, that I think our contract rights as a result of this
10     are lost and that's the result.
11          THE COURT:  They're lost for 60 days anyways.  That's
12     all.  If it goes longer, then it's six months.  But it's not
13     forever.  If you win under this contract, you have a right to
14     do whatever you want, right?
15          MR. GILLERAN:  We thought we did with this contract,
16     but I guess that's not the case.
17          THE COURT:  No, you didn't under this contract
18     because you gave -- because you agreed to arbitrate on the
19     renewal.
20          MR. GILLERAN:  They agreed to arbitrate and we --
21          THE COURT:  I understand that.  Anyway, that's where
22     I'm going right now.  I'm going to stay this case -- he keeps
23     saying it's not going to happen in 60 days.
24          Let me put it this way:  From your point of view,
25     you, obviously, have a very uncomfortable relationship.
```

22

```
 1   work --
 2           THE COURT:  You have an express provision in the
 3   contract saying you can't do that?
 4           MR. GILLERAN:  Yes.
 5           THE COURT:  Why does it take more than 60 days to
 6   litigate that?
 7           MR. GILLERAN:  Just the process, your Honor.  You've
 8   got to get an arbitrator appointed.  You've got to exchange
 9   documents.  You've got to set up a hearing date.  Often in
10   these arbitrations, I'll give you a date here, I'll give you a
11   date there.  You don't get a full trial like in this court.
12   So the time period becomes scattered.  Then you've got to wait
13   for a decision.  The time line, I would say, would be at least
14   April 1 or May 1 before we have a decision.
15           THE COURT:  Actually, that's pretty quick.
16           MR. GILLERAN:  That's not too bad.  In the meantime,
17   we don't get the benefit of our arbitration clause.
18           THE COURT:  All right.  What should I do with this
19   case?  You want me to stay pending the arbitration?  And then,
20   of course, this is without prejudice to them doing
21   something --
22           MR. GILLERAN:  Does it matter?  I want the
23   opportunity -- if they're going to be using what you've done
24   here to club us down there, which I fully expect --
25           THE COURT:  You can use it to club them back if they
```

```
 1   do something unfair.
 2          MR. GILLERAN:  They're going to do that.  I wanted
 3   the opportunity to come back here as quick as I can.
 4          THE COURT:  I'll stay the case pending the
 5   arbitration.  If you want to reopen it, you can do that.
 6          MR. JOHNSTON:  That's agreeable to Alon.
 7          THE COURT:  If you need to reopen it, if you think
 8   something has happened down there -- my full intent here is to
 9   essentially have this arbitrated.  That exact issue you were
10   talking about there, was there fraud on their part,
11   misrepresentation on their part, or was there latches,
12   estoppel on your part, that's really a pretty narrow issue.
13          Hopefully -- I know that usually you don't get much
14   discovery other than document exchanges.  You should be able
15   to do it pretty fast.  Let an arbitrator decide it, and then
16   I'm assuming I will have jurisdiction to enforce this
17   arbitration agreement one way or another.  Hopefully, you --
18   if you win and the injunction remains and stays in Latin
19   America, at that point I think there might very well be a good
20   suit.
21          I'm going to stay it but you can reopen it.
22          MR. GILLERAN:  Thank you, your Honor.
23   (Whereupon, at 2:50 p.m. the hearing concluded.)
24
25
```

**EXHIBIT B**

**EXHIBIT B**

# ASTIGARRAGA DAVIS

701 Brickell Avenue • 16th Floor
Miami, Florida 33131-2847

June 3, 2006

*Via Email*

James W. Constable, Esq.
Wright Constable & Skeen
100 N. Charles Street,
16th Floor
Baltimore, MD 21201

Re:  *Alon International, S.A. v. Converse, Inc.*
     **(Arbitration # 50 133 T 00579 04)**

Dear Mr. Constable:

We refer to your award dated May 5, 2006 ("Award").

Article 30(1) of the ICDR rules provides, "Within 30 days after the receipt of an award, any party, with notice to the other parties, may request the tribunal to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award." ICDR Rule 30(1).

Pursuant to that Rule, Alon requests the following:

A. **The award should state that it was made in Boston, rather than Baltimore.**

  1. ICDR Rule 27 provides that the award should state the place where it was made.

  2. At page 35, the Award states for "purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Baltimore, Maryland."  (emphasis added).

  3. The "prevailing view in most jurisdictions" is that "the award is generally regarded as having been made at the seat of arbitration for the purposes of the New York Convention" **"regardless of the place** where the arbitration hearings were held or the place **where the award was signed and delivered."** Okezie Chukwumerije, Reform and Consolidation of English Arbitration Law, 8 Am. Rev. Int'l Arb. 21, 31 (1997) (emphasis added).

  4. Although the Award may have been signed in Baltimore, and two or so hearings were held in Baltimore by agreement of the parties, the great

James Constable, Esq.
June 3, 2006
Page 2

       majority of the hearings were held in Boston in accordance with Paragraph 33 of the parties' Manufacturing, Distribution and License Agreement.

5. The Federal Arbitration Act provides that jurisdiction with respect to an arbitral challenge belongs in the district "within which such award was *made.*" 9 U.S.C. § 9 (1982) (emphasis added).

6. As the Tribunal might recall, the Federal Court in Boston already has jurisdiction over a pending action.

7. Alon requests that, to make the record clear, the declaration that the Award was "made in Baltimore, Maryland" be corrected to reflect that the Award was made in Boston, Massachusetts.

8. This is consistent with case law explaining that:

> "[t]he law states that jurisdiction [to challenge an award] belongs in the district 'within which such award was *made.*' 9 U.S.C. § 9 (1982) (emphasis added). **The Act does not state that jurisdiction belongs where the award was 'written' or 'filed.' The location of the instant dispute was in Florida, the parties operate out of Florida, and the repercussions of the arbitrator's decision will be felt exclusively in Florida; we thus hold, for the purpose of venue, that the award was 'made' in Florida."** Motion Picture Laboratory Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc., 804 F.2d 16, 18 (2d Cir. 1986) (emphasis added).

**B.   The Award should be interpreted to make clear with a title heading on its first page that it is a "Partial Final Award"**

1. Converse has asserted that the Award is not final because issues (Alon's fee petition and Converse's so-called Motion to "Correct" the Award) are still pending. According to Converse, Alon must await the resolution of all remaining issues before Alon may petition the court to enforce the Award.

2. At page 35, the Award states that for "purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Baltimore, Maryland." (emphasis added).

3. Under Rule 27(7), this Tribunal is and was empowered to render "partial awards."

2

James Constable, Esq.
June 3, 2006
Page 3

4. Through its express language ("... this Final Award is made in ..."), through the nature of the relief granted (damages and statutorily required enhancement), and through the findings and rulings it makes (for example, disposing of claims on the merits), the Award makes clear that it is an "award" and not a mere "order," and is imbued with finality, thus making it a final award. The fact that the award does not dispose of *all* issues does not make it something other than an "award" nor rob it of its finality with respect to the issues it resolves.

5. The Award does not set forth on its first/title page a title or other indication of the document's nature ("Partial Final Award"). That is, it does not state that it is an "*award*" (as opposed to a mere order), that it is intended to be *final* with respect to the issues it resolves, and is a ***partial*** final award in that it disposes of most issues but leaves some (fees and costs) for a separate, subsequent determination.

6. Given that:

   a. The Award already expressly states that it is a "Final Award";

   b. It is undisputed that the amount of fees has yet to be fixed and that Converse's Motion to Correct is pending;

   c. The Award does not have a title on its first page; and

   d. Converse does not intend to comply with the Award voluntarily,

   Alon requests that the Award be interpreted by placing its title, "Partial Final Award," on the first page.

### Conclusion

Converse has made clear that it intends to challenge the Award; claims it is not final; and that it does not intend to comply with it, not even with that portion requiring that the escrowed funds be delivered to Alon immediately.

Converse's repudiation of the Award is a violation of ICDR Rule 27(1), which provides that "[a]wards shall be final and binding on the parties [and that] the parties undertake to carry out any such award."

Given Converse's expressed intention to challenge the Award, Alon requests that, although probably immaterial and unnecessary:[1]

---

[1] Alon requests the relief herein for clarification in view of Converse's positions. Alon's position is that the Award is, in any event, immediately enforceable. The fact that the amount of attorneys' fees was not already awarded does not prevent the Award from being final. See Hart

James Constable, Esq.
June 3, 2006
Page 4

      A) The requested correction ("made in Boston, Massachusetts") be made to the Award;

      B) The Award's title ("Partial Final Award") be placed on the Award's first page.

We thank you for your consideration.

                              Respectfully,

                              Jose Astigarraga
                              Counsel for Alon

CC:   Michael Gillleran, Esq.
        John Tumilty, Esq.
        Josh Gardner, Esq.
        ICDR

---

Surgical, Inc. v. Ultracision, Inc., 244 F.3d 231, 233-34 (1st Cir. 2001); see also Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 20 (1st Cir. 2001). Nothing herein should be construed as an acceptance by Alon of Converse's position that that the Award is not enforceable as is.